UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONETTE E. SACCAMENO, | CIVIL ACTION   1:15-cv-1164 |
| Plaintiff, | |
| v. | COMPLAINT |
| OCWEN LOAN SERVICING, LLC, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BASED CERTIFICATES, SERIES 2007 RP1 AND POTESTIVO & ASSOCIATES, PC | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff, MONETTE E. SACCAMENO ("SACCAMENO"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., hereby complains of the Defendants, OCWEN LOAN SERVICING, LLC ("Ocwen"), U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BASED CERTIFICATES, SERIES 2007 RP1 ("US Bank") and POTESTIVO & ASSOCIATES, PC ("Potestivo") as follows:

### NATURE OF THE ACTION

1. Saccameno brings this action for damages from violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (hereinafter "FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "ICFA") and Breach of Contract.

1

2. All of the claims stated herein stem from the wrongful servicing, debt collection, and loss mitigation activities related to Saccameno's mortgage loan.

**JURISDICTION AND VENUE**

3. This action arises under the FDCPA, RESPA, ICFA and Breach of Contract. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d), 12 U.S.C. § 2605 and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as each defendant conducts business in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District.

**PARTIES**

5. Plaintiff, Saccameno, is a natural person who resides at 3324 Calwagner Street, Franklin Park, IL 60131 ("subject property"). The subject property is Saccameno's primary residence.

6. Saccameno was a Debtor under Chapter 13 of Title 11 of the United States Code in Case Number 09-49467 filed December 31, 2009, in the Northern District of Illinois ("the Chapter 13 Bankruptcy case").

7. At all times relevant to the action, US Bank was and is a National Association with its principal place of business in Minneapolis, Minnesota. US Bank conducts and transacts business in the State of Illinois.   US Bank is vicariously  liable for the actions of Ocwen in this matter.

8. At all times relevant to the action, Ocwen was and is a Delaware Limited Liability Company with its principal place of business in West Palm Beach, Florida. Ocwen conducts and transacts business in the State of Illinois.

9. Defendant Potestivo & Associates, PC ("Potestivo") is a law firm authorized to do business in the state of Illinois. Potestivo is in the business of collecting debts from Illinois residents on behalf of third-party creditors, servicers, and debt collectors.

STATEMENT OF FACTS

10. On January 3, 2002, Plaintiff obtained a loan ("subject debt" or "subject loan") from Ameriquest Mortgage Company secured by a mortgage on the property located at 3324 Calwagner Street, Franklin Park, IL 60131 ("subject property"). *See* Exhibit A attached hereto is a true copy of the mortgage, adjustable rate note and assignments.

**a.    Plaintiff's Default and US Bank's Foreclosure Filing**

11. Plaintiff failed to make payments on the subject loan from about November 2008 through January 2009. Thereafter, US Bank declared her in default.

12. Based on Plaintiff's failure to make her November 2008 through January 2009 payments, US Bank filed a foreclosure complaint in the Circuit Court of Cook County, Illinois titled *US Bank v. Monette E. Saccameno, et al.*, Case No. 09 CH 5697, on February 9, 2009 ("foreclosure").

13. US Bank, in the foreclosure complaint, alleged that Plaintiff defaulted on the subject loan in November 2008. Based on the default, US Bank accelerated the entire balance of the subject loan.

**b.    Plaintiff's Chapter 13 Bankruptcy**

14. On December 31, 2009, after the foreclosure was filed, Plaintiff filed the Chapter 13 bankruptcy case to cure all pre-petition defaults on the subject loan.

3

15. US Bank was duly disclosed on Schedule D of Plaintiff's bankruptcy petition as a secured creditor as a result of the mortgage encumbering the subject property. *See* Exhibit B attached hereto is a true copy of Schedule D of the Plaintiff's bankruptcy petition.

16. Also on December 31, 2009, Plaintiff filed her Original Chapter 13 Plan ("Plaintiff's Plan") with the Bankruptcy Court. *See* Exhibit C attached hereto is a true copy of Plaintiff's Original Chapter 13 Plan filed with the Bankruptcy Court.

17. Plaintiff's Plan, in pertinent part, sought to cure the default as it relates to US Bank, in the amount of $25,713.42. *Id.*

18. On February 1, 2010, Plaintiff filed a Modified Chapter 13 Plan ("Plaintiff's Modified Plan"). *See* Exhibit D attached hereto is a true copy of Plaintiff's Modified Chapter 13 Plan filed with the Bankruptcy Court.

19. Plaintiff's Modified  Chapter 13 Plan dated February 1, 2010 included language in Section B(2)(a), that if the Plaintiff cured the pre-petition defaults through her bankruptcy payments, "the mortgage will be reinstated according to the original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to filing of the petition." *Id.*

20. Plaintiff's Modified Chapter 13 Plan dated February 1, 2010 included language that Plaintiff would pay the mortgage arrears to US Bank by making payments to the Chapter 13 Trustee, and also resume making regular monthly payments to US Bank beginning in January 2010 in the amount of $1,800.00 per month. *Id.*

21. US Bank did not object to its treatment in Plaintiff's Modified Chapter 13 Plan dated February 1, 2010.

22. Consequently, Plaintiff's Modified Chapter 13 Plan was confirmed by the Honorable Judge John H. Squires on February 17, 2010. *See* Exhibit E attached hereto is a true copy of the Confirmation Order entered by the Honorable Judge John H. Squires.

23. On October 11, 2011, a Notice of Transfer of Claim was filed in the Bankruptcy Court in regards to the Subject Loan and Subject Property from U.S. Bank to Ocwen.

**c.     Plaintiff's Full Performance on Terms of the Confirmed Modified Chapter 13 Plan**

24. Plaintiff made all of her payments as proposed in her confirmed Modified Chapter 13 Plan to Marilyn O. Marshall, Chapter 13 Trustee, which included the payments for the mortgage arrears to US Bank/Ocwen provided for in Section E5 of the Confirmed Chapter 13 Plan.

25. Additionally, the Plaintiff made all of her current monthly mortgage payments directly to US Bank/Ocwen as provided by the Confirmed Chapter 13 Plan.

26. While the Chapter 13 case was pending, US Bank/Ocwen never filed a Motion for Relief from Stay.

27. Prior to the change of servicing of the mortgage loan from US Bank to Ocwen, the previous servicer (Litton Loan Services for US Bank) returned several payments made by the Plaintiff in violation of the Confirmed Chapter 13 Plan which were later re tendered.

28. Although the Notice of Transfer of Claim was filed in October 2011, Ocwen began servicing the Mortgage Loan in approximately July 2011. *See* Exhibit F attached hereto is a true copy of an Ocwen Pay History beginning in July 2011 (when the mortgage loan was acquired by Ocwen) to April 2014 ("the Pay History").

29. According to the Pay History, at the time that Ocwen began serving the Mortgage Loan there were fees assessed to the Mortgage Loan Account in the amount of $2,646.50 (no detail provided as to the breakdown of the fees), an Escrow Account Balance of $0.00 (which was adjusted on July 18, 2011 to $-1,130.72) and a Suspense Balance of $2,774.32.

30. Ocwen, during the course of the Chapter 13 case assessed many fees and expenses which were sometimes assessed to the Plaintiff's mortgage account and/or escrow account by Ocwen. These fees and expenses included but were not limited to: a) Late Charges of $3,322.98 on September 4, 2011; b) Late Charge of $1,302.43 on September 30, 2011; c) Late Charges of $664.30 on October 24, 2011; d) Property Valuation Expense of $110.00 on February 22, 2012; e) Property Taxes of $2,537.18 on February 24, 2012; f) Escrow Account Adjustment of $5.00 on March 5, 2012; g) Late Charges of $63.34 of October 17, 2012; h) Two Late Charges of $63.34 of October 17, 2012; i) Property Taxes of $3,010.80 on July 27, 2012; j) Insurance Disbursement of $742.00 on August 10, 2012; k) Property Taxes of $3,051.31 on February 19, 2013; l) Escrow Account Adjustment of $6.00 on March 28, 2013; m) Foreclosure Sale costs of $780.00 on May 20, 2013; n) Prior Servicer Fees of $275.63 on May 20, 2013; and Foreclosure Sale costs of $780.00 on June 18, 2013;

31. The Pay History reflects that during the entire time the Chapter 13 was pending and Ocwen was servicing the Mortgage Loan that there existed a large positive balance in Suspense. The highest balance was $12,601.19 but the average was at least $7,000.00 to $8,000.00. Holding funds in suspense and not properly applying those suspense funds allowed Ocwen to charge fees such as late fees, foreclosure sales and property valuation

expenses which could not and should not have been charged. In addition to all the improper charges, Ocwen also returned and/or reversed several payments to create alleged defaults and to make alleged defaults higher when in fact the Plaintiff was current or had obligations as set for by her confirmed Chapter 13 Plan.

32. On June 20, 2013, Marilyn O. Marshall, Chapter 13 Trustee filed a Notice of Completion of Plan Payments.

33. On June 27, 2013, the Chapter 13 Bankruptcy Trustee, Marilyn O. Marshall, issued a Notice of Payment of Final Mortgage Cure Under Rule 3002.1(f) as it related to Ocwen. *See* Exhibit G attached hereto is a true copy of the Notice of Payment of Final Mortgage Cure.

34. Ocwen or any other party on behalf of Ocwen failed object or to file a Response to Notice of Payment of Final Mortgage Cure, presumably because Plaintiff was current.

35. On June 27, 2013, the Bankruptcy Court entered an Order of Discharge in Plaintiff's Chapter 13 Bankruptcy case. *See* Exhibit H attached hereto is a true and correct copy of the Bankruptcy Order of Discharge.

*36.* The failure of Ocwen to timely file a Response to the Notice of Payment of Final Cure and the entry of the Plaintiff's Chapter 13 Discharge on June 27, 2013 caused the Plaintiff to be contractually current as of that date (the date the Discharge was issued on June 27, 2013) pursuant to 11 U.S.C. 524, Federal Rule of Bankruptcy Procedure 3002.1 and the language of the Confirmed Plan. Any alleged post-petition bankruptcy default, which did exist, was discharged along with amounts claimed pre-petition in the Proof of Claim of US Bank/Ocwen (Claim 1). In essence, as of the Date of Discharge the Plaintiff (June 27, 2013) was contractually current with Ocwen. *See 11 U.S.C 524,*

*Federal Rule of Bankruptcy Procedure 3002.1 and United Student Aid Funds, Inc. vs. Espinosa*, *559 U.S. 260, 276 (2010)* (specifying that party failing to oppose plan at appropriate time may not obtain post-judgment relief).

**d. Ocwen's Continued Efforts to Collect Paid Pre-Petition Arrears**

37. After the issuance of the Chapter 13 Discharge, the Plaintiff and her representatives contacted Ocwen multiple time in writing and by telephone to discuss the Mortgage Loan. In fact, in July 2013, the Plaintiff provided documents and requested Ocwen to correct the errors in its records in an attempt to refinance the Mortgage Loan and lower her payments as a result of a lower rate (the Mortgage Loan call for interest at 8.5%). In response to a written inquiry (which was in essence a Qualified Written Request) on August 14, 2013, Ocwen stated that only 40 (of 42) current payments were received during the Chapter 13 case and many expenses had been advanced which were unpaid as well. *See* Exhibit I attached hereto is a true copy of the August 14, 2013 Letter from Ocwen with attachments.

38. Despite receiving full payment on its pre-petition arrears claim, Ocwen repeatedly attempted to collect the pre-petition default that was paid to Ocwen through the Bankruptcy process. Specifically, the foreclosure case and continued sending statements and demands for payment for amounts already paid by Saccameno through her bankruptcy.

39. The Plaintiff herself, her original Attorney in the Bankruptcy case and Attorney Susan J. Van Sky communicated with Ocwen about their unlawful continued demands starting in July 2013 with no success. Specifically, Saccameno sent Qualified Written Requests

thus requiring this Complaint and other legal actions to protect the Plaintiff's rights and enforce her Chapter 13 Discharge.

40. In order to try and restart a conversation with Ocwen regarding amounts alleged due by Ocwen, Plaintiff had requested reinstatement figures to determine as a final attempt at resolution if Ocwen would provide figures that complied with the Plaintiff's Chapter 13 Discharge.

41. On October 2, 2014, Ocwen, by and through its attorneys, Potestivo & Associates ("Potestivo"), sent Plaintiff reinstatement figures relating to the subject loan. *See* Exhibit J attached hereto is a true copy of the Reinstatement Quote.

42. Amounts requested for payments have similar problems based on the Discharge Order and the fact that Ocwen has continued to accept payments and apply these payments and other amounts received to amounts that were discharged.

43. Plaintiff's attorneys (several different attorneys) have made repeated requests via Qualified Written Requests to Ocwen and its attorneys, to recognize Plaintiff's bankruptcy payments and to apply post-petition to post-discharge months. Ocwen has ignored, criticized, and refused to recognize Plaintiff's requests as valid, including her requests for accurate reinstatement figures.

44. Ocwen is seeking to collect pre-petition debts from Plaintiff, which were paid through her Chapter 13 bankruptcy in violation of the discharge injunction and Federal Rule of Bankruptcy Procedure 3002.1.

45. Beginning in July 2013 through December 2014, Plaintiff sent numerous RESPA Qualified Written Requests ("QWR") to Ocwen. Some of the QWRs were sent by Plaintiff and some were sent by on her behalf by Attorney David Cohen (who

represented Plaintiff previously in the Chapter 13 Bankruptcy case) or by Attorney Susan J. Van Sky. As stated above the issues related to payments and the Escrow Account. Ocwen responded to some QWRs (as described above).

46. In fact, Ocwen did not investigate anything of substance in response to the QWRs. Ocwen did not address (a) its mismanagement of the escrow; (b) reasons for the monthly payment increases or the escrow "shortages;" (c) the overcharging of taxes and insurance; (d) the assessment of pre-modification charges to post-modification statements; (e) withholding escrow funds in excess of the 1/6th cushion; or (f) the assessment of "foreclosure charges" during a Chapter 13 Bankruptcy.

47. Plaintiff has been forced to retain counsel to enforce her rights and has expended time consulting with her attorneys as a result of US Bank and/or Ocwens' actions.

48. US Bank and/or Ocwen's own attorneys were aware that the foreclosure proceeding sought to collect a discharged debt, yet proceeded with the action.

49. Plaintiff has suffered from emotional distress, depression, mental anguish, anxiety, and incurred medical expenses as a direct result of US Bank and Ocwen's actions as she was led to believe that she would lose her family's residence if she failed to pay the satisfied pre-petition arrears and post-petition current payments already discharged and/or paid through her bankruptcy.

50. The post-discharge collection attempts were blatant violations of the Chapter 13 Discharge Order and Saccameno's rights under Federal and State law.

51. Plaintiff has since applied for and been denied credit (including but not limited to the refinancing of the subject mortgage loan) due to the status of the subject loan on her credit report.

52. An example of the problems with the Reinstatement Quote is that the Reinstatement Quote seeks payment for "Escrow Due" in the amount of $13,180.86. This is a factual impossibility as only two types of Escrow Expenses have come due post Chapter 13 Discharge. The first type is for real estate taxes for July 2013, March 2014 and July 2014 and total no more than $9,000.00. Insurance is the second type of Escrow Expenses which was paid in October 2013 and 2014 for no more than a total of $1,600.00. However, the Escrow Account had a positive balance up through and including the end of the Pay History in April 2014. At that time, the positive balance was $1,115.79.

### COUNT I – BREACH OF CONTRACT
### (AGAINST OCWEN AND US BANK)

53. Saccameno restates and realleges paragraphs 1 through 52 as though fully set forth herein.

54. Saccameno fully performed her duties under the note and/or mortgage as modified by Chapter 13 Plan by tendering all monthly payments to the US Bank and/or Ocwen.

55. Sccameno's loan was fully reinstated to its original payment schedule on the date of the Chapter 13 Discharge.

56. US Bank and/or Ocwen unlawfully charged and maintained deposits in Saccameno's escrow account above the limits allowed by Saccameno's mortgage contract or the 1/6th cushion under RESPA.

57. US Bank and/or Ocwen are in further material breach of contract for their:

    a. failure to accept Saccameno's mortgage payments;
    b. failure to credit and apply Saccameno's payments as required by the contract;
    c. assessment of unauthorized late fees, legal fees, costs, & property inspection fees;
    d. failure to apply payments to interest and principal before escrow and fees;

e.   failure to dismiss the foreclosure action for thirteen months;

f.   failure to provide accurate repayment and reinstatement figures;

g.   failure to accurately respond to Saccameno's correspondence and other disputes;

h.   overcharging Saccameno's escrow account for taxes and insurance;

i.   modifying monthly payments without notification to Saccameno;

j.   placing the loan in default and negatively reporting Saccameno to credit bureaus;

k.   converting escrow funds to unauthorized fees and costs; and

l.   failure to conduct its affairs in good faith.

WHEREFORE, Plaintiff MONETTE SACCAMENO respectfully requests that this Honorable Court to:

a.      find that US Bank and OCWEN have materially breached the mortgage contract;

b.      award Plaintiff her actual damages to be proven at trial;

c.      award Plaintiff her reasonable attorney fees and costs; and

d.      award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST OCWEN)

58. Saccameno restates and realleges paragraphs 1 through 53 as though fully set forth herein.

59.  Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

60.  The subject debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

61.  Ocwen is a "debt collector" as defined by § 1692a(6) because Ocwen regularly collect debts and uses the mail and/or the telephone to collect delinquent consumer accounts. Ocwen is a "debt collector" under the FDCPA because the Mortgage Loan was in default at time the Mortgage Loan was acquired by Ocwen.

62. The FDCPA prohibits the use of "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

63. The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

64. The FDCPA prohibits the use of "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f.

65. Defendant violated 15 U.S.C. §§1692 d, e(2), e(5), e(8), e(10), f and f(1) through its debt collection efforts.

**Violations of § 1692d**

66. Ocwen violated 15 U.S.C. §1692d when Ocwen engaged in abusive and oppressive conduct within one year of the filing of the Complaint through (i) unethical mismanagement of the escrow account; (ii) refusal to correct their accounting errors or adequately respond to Plaintiff' repeated disputes over several years; (iii) misapplication and rejection of payments; and (iv) assessment of illegal fees.

**Violations of §§ 1692e & f**

67. Ocwen's actions violated 15 U.S.C. §§ 1692e & f by unfairly, unconscionable, falsely and deceptively (i) misrepresenting the status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresenting the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their

dunning letters, acceleration notices, restatement letters, and payoff letters; (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

68. Ocwen violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the subject debt by (i) attempting to collect illegal fees and costs not authorized by law or the contract; (ii) misrepresenting the amounts owed for escrow; (iii) declaring the loan in delinquent or default status; (iv) threatening a foreclosure sale, (v) assessing illegal foreclosure fees; and (vi) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

69. Ocwen violated 15 U.S.C. §1692(e)(5) when it took legal action that cannot legally be taken by not dismissing the foreclosure case as a result of the Chapter 13 Discharge and subsequently (1)making misrepresentations of the legal status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) making misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

70. Ocwen violated 15 USC § 1692e(8) by reporting false information to a third parties when it reported Saccameno loan as delinquent to the three credit bureaus.

71. Ocwen violated 15 U.S.C. §1692(e)(10) when it employed deceptive means by (i) misrepresenting of the status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresenting the amounts owed for

escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

72. Ocwen violated 15 U.S.C. §1692f by employing unfair and unconscionable means to collect the subject debt by (i) attempting to collect illegal fees and costs not authorized by law or the contract; (ii) misrepresenting the amounts owed for escrow; (iii) declaring the loan in delinquent or default status; (iv) threatening a foreclosure sale, (v) assessing illegal foreclosure fees; (vi) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; and (vii) reporting false information and by reporting the loan delinquent to credit bureaus.

73. Ocwen violated 15 U.S.C. §1692f (1) by attempting to collect and collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) that were not expressly authorized by the agreement creating the debt (Note and/or Mortgage) or permitted by law via the Chapter 13 Bankruptcy Discharge by (1) misrepresenting of the status of the debt; (ii) attempting to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresenting of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; and (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

WHEREFORE, Plaintiff DONNA SACCAMENO requests that this Honorable Court:

a. enter judgment in favor of Plaintiff and against Ocwen;

b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

c. award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d. order the deletion of all adverse credit reporting related to the loan;

e. award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

f. award any other relief as this Honorable Court deems just and appropriate.

## COUNT III– VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST POTESTIVO)

74. Saccameno restates and realleges paragraphs 1 through 53 as though fully set forth herein.

75.  Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

76.  The subject debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

77.  Potestivo qualify as a "debt collector" as defined by § 1692a(6) because Potestivo regularly collect debts and use the mail and/or the telephone to collect delinquent consumer accounts.

16

78. As alleged above, Potestivo prepared and sent a Reinstatement Statement on January 19, 2015 (Exhibit J). This and other actions by Potestivo violated 15 U.S.C. §§1692 d, e(2), e(5), e(10), f and f(1) through its debt collection efforts within one year of the filing of the Complaint in this case.

79. The FDCPA prohibits the use of "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

80. The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" 15 U.S.C. §1692e.

81. The FDCPA prohibits the use of "use unfair or unconscionable means to collect or attempt to collect any debt" 15 U.S.C. §1692f.

**Violation of § 1692d**

82. Potestivo violated 15 U.S.C. §1692d when Potestivo engaged in abusive and oppressive conduct by (i) refusing to correct Ocwen's accounting errors or adequately respond to Plaintiff' repeated disputes over several years with Ocwen that Potestivo was aware of; and (ii) not correcting and allowing the misapplication and rejection of payments; and (iii) not correcting and allowing the assessment of illegal fees.

**Violation of §§ 1692e & f**

83. Potestivo 's actions under 15 U.S.C. §§ 1692e & f within one year of the filing of the Complaint were unfair, unconscionable, false and deceptive as a result of Ocwen's (i) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a

foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

84. Potestivo violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the subject debt by (i) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

85. Potestivo violated 15 U.S.C. §1692(e)(5) when it took legal action that cannot legally be taken by not dismissing the foreclosure case as a result of the Chapter 13 Discharge and subsequently made (1)misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

86. Potestivo violated 15 U.S.C. §1692(e)(10) when it employed deceptive means by (i) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs

not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; and (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

87. Potestivo violated 15 U.S.C. §1692f by employing unfair and unconscionable means to collect the subject debt misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

88. Potestivo violated 15 U.S.C. §1692f (1) by attempting to collect and collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) that were not expressly authorized by the agreement creating the debt (Note and/or Mortgage) or permitted by law via the Chapter 13 Bankruptcy Discharge by (1) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) declaring the loan in delinquent or default status; (v) threatening a foreclosure sale, (vi) assessing illegal foreclosure fees; (vii) assessing escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters,

acceleration notices, restatement letters, and payoff letters; (viii) reporting false information and by reporting the loan delinquent to credit bureaus.

WHEREFORE, Plaintiff, MONETTE E. SACAMENO, requests that this Honorable Court:

a.      enter judgment in her favor and against Potestivo;

b.      declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

c.      award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d       order the deletion of all adverse credit reporting related to the loan;

e.      award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

f.      award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### (AGAINST OCWEN)

89. Saccameno restates and realleges paragraphs 1 through 53 as though fully set forth herein.

90.  Plaintiff meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

91.  US Bank and/or Ocwen violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in their attempts to collect a debt.

**Unfairness**

92.  Ocwen's conduct in relation to Plaintiff' loan was willful, malicious, unfair, arbitrary, and desigened to place Plaintiff' account in a perpetual state of default.

93. Ocwen's conduct offends public policy as it demonstrated an industry-wide practice of charging unearned fees and costs to a borrower in order to make a profit, and to deceive borrowers into paying more than what is owed.

94. Ocwen's actions are immoral because overcharging Plaintiff for unearned fees, overcharging Plaintiff' escrow without providing a refund, and filing a wrongful foreclosure amounts to an undue hardship to the borrower and an equally undue profit for Ocwen.

95. Ocwen's actions caused substantial injury to Plaintiff and to consumers generally, as Plaintiff and consumers reasonably expect their contracts to be honored and their loans and escrow accounts to be properly managed and their payments properly applied.

96. Plaintiff could not avoid these immoral undertakings because Ocwen would not accurately communicate with her in response to her phone calls, letters, and other objections.

97. When taken as a whole over several years, Ocwen's conduct was so unethical and unending, that Plaintiff had no choice but to submit.

**Deception**

98. Ocwen's following actions were deceptive: (i) attempting to collect upon and foreclose upon a debt that was not in default; (ii) sending disclosures, statements, and notices that included unauthorized or unearned costs and fees; (iii) making material misrepresentations of fact regarding the status of the subject loan, the payment history, and the amounts actually owed for taxes and insurance; (iv) overcharging Plaintiff' escrow for taxes and insurance; (v) providing conflicting disclosures to Plaintiff; and (vi) employing communications with Plaintiff that were confusing and specifically

designed to confuse Plaintiff so that she could not decipher the true status of her loan account.

**Misrepresentation**

99.  In addition to the above conduct, Ocwen misrepresented the amounts due so Plaintiff could not understand why her payments were insufficient to bring the loan "current."

100. Plaintiff relied on the amounts that Ocwen stated that she owed to her detriment.

101. Ocwen made material misrepresentations regarding the amounts due under the loan, amounts due for escrow, and how Plaintiff' payments were applied.

102. Due to the misrepresentations, Plaintiff was unable to determine why her payments were "insufficient" to bring the loan "current" or why she was required to overpay her escrow account.

103. The misrepresentations, deception, and unfair practices complained of occurred in the course of conduct involving trade or commerce. Plaintiff relied on the misrepresentations, deception, and unfair practices to her own detriment.

104. Punitive damages are warranted because the Servicers' conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff and consumers in general.

WHEREFORE, Plaintiff MONETTE E. SACAMENO requests that this Honorable Court:

a) enter judgment in her favor and against Ocwen;

b) declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

c) award Plaintiff statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;

d) order the deletion of all adverse credit reporting related to the loan;

e) award Plaintiff costs and reasonable attorney fees as provided under 815 ILCS 505/10a(c); and

f) award any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (AGAINST OCWEN AND US BANK)

105. Saccameno restates and realleges paragraphs 1 through 53 as though fully set forth herein.

106. The subject loan is a "federally related mortgage" under RESPA.

107. US Bank and Ocwen each qualify as a "servicer" under RESPA § 2605(i)(2).

108. While servicing the subject loan, US Bank and/or Ocwen charged Plaintiff improper fees, costs, and charges not legally due under the mortgage contract or applicable law.

109. US Bank and/or Ocwen violated RESPA by requiring Plaintiff to make excessive escrow payments not based on the amount legally due after the Chapter 13 Bankruptcy Discharge and reasonably estimated expenditures or publically available data, tax bills, or insurance bills for the subject property.

110. US Bank and/or Ocwen failed to timely acknowledge receipt of, respond to, or conduct a reasonable investigation in response to Plaintiff' QWRs or requests for information and disputes regarding servicing in violation of RESPA § 2605(e).

111. US Bank and/or Ocwen violated RESPA § 2605(e)(3) by failing to acknowledge receipt of Plaintiff' letters disputing the application of payments, the assessment of illegal fees, and the handling of the escrow account.

112. US Bank and/or Ocwen violated RESPA by reporting Plaintiff as delinquent to credit bureaus within sixty days of receiving a letter disputing the servicing.

113. US Bank and/or Ocwen violated RESPA by failing to correct Plaintiff' account within sixty days of receiving a letter disputing the servicing in violation of RESPA § 2605(e)(2)(A).

**Escrow, Taxes, and Insurance**

114. US Bank and/or Ocwen violated RESPA by

    a) demanding escrow payments that significantly exceeded the actual amount required for insurance and taxes;

    b) overcharging Plaintiff for taxes and insurance;

    c) assessing fees against Plaintiff without conducting a complete and accurate annual escrow analysis or providing prior notice (12 U.S.C. § 2609(b));

    d) deducting amounts from Plaintiff' account for unrelated fees and costs;

    e) implementing an "escrow shortage or deficiency" without providing notice or producing documentation to substantiate the shortage prior to collection;

    f) failing to send notice of the escrow increase or conduct an accurate annual escrow analysis before imposing fees to Plaintiff' escrow account;

    g) failing to provide any notice of the escrow shortage until *after* it had charged the amount to Plaintiff' account and deducted it from the escrow;

    h) demanding, assessing, charging, and funding Plaintiff' escrow account with more than the 1/6th cushion allowed under RESPA § 2609(2);

    i) failing to refund a escrow surplus over $50; and

    j) failing to correct the wrongful escrow increase, charge, or deductions for taxes and insurance in accordance with RESPA.

WHEREFORE, Plaintiff MONETTE E. SACAMENO requests that this Honorable Court:

    a) grant judgment in her favor and against Ocwen and US Bank;

    b) declare Ocwen and US Banks' perpetual conduct to be a violation of RESPA;

    c) award Plaintiff actual and additional damages pursuant to RESPA § 2605;

    d) award Plaintiff reasonable attorney fees and costs pursuant to RESPA § 2605(f); and

    e) award any other relief this Honorable Court deems equitable and just.

### COUNT VI – BREACH OF FIDUCIARY DUTY
### (AGAINST OCWEN AND US BANK)

115. Saccameno restates and realleges paragraphs 1 through 53 as though fully set forth herein.

116. A fiduciary relationship existed between US Bank and/or Ocwen and Plaintiff with respect to management of Plaintiff's escrow account.

117. US Bank and/or Ocwen owed a fiduciary duty to Plaintiff because they were placed in a position of trust while managing Plaintiff' escrow account.

118. US Bank and/or Ocwen had a duty under the mortgage with respect to the escrow account to apply the amounts held in escrow for proper purposes only.

119. US Bank and/or Ocwen breached their duty by (a) using escrow funds to pay unearned fees and costs and to overpay taxes and insurance; (b) misleading Plaintiff as to the amount of insurance and taxes owed; (c) debiting illegal amounts from the escrow account without authorization; and (d) profiting from undisclosed fees and costs and overpayment of taxes and insurance.

120. US Bank and/or Ocwen failed to manage the escrow account in good faith when they (a) failed to properly account for timely payments; (b) failed to provide sufficient notice of a payment change or escrow change; (c) failed to provide Plaintiff notice for actual amounts due for insurance and taxes; and (d) failed to respond to Plaintiff after repeated requests; and (e) used the escrow account to pay for unauthorized fees unrelated to taxes or insurance.

121. US Bank and/or Ocwen exercised their discretion arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the parties, without a proper motive.

WHEREFORE, Plaintiff MONETTE E. SACAMENO respectfully requests that this Honorable Court to:

    a) find that Ocwen, Nationstar, and Freddie Mac materially breached their fiduciary duties;

    b) award Plaintiff her actual damages and punitive damages to be proven at trial;

    c) award Plaintiff her reasonable attorney fees and costs; and

    d) award Plaintiff any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

By: /s/ Paul M. Bach
**Paul M. Bach**
Attorney for Plaintiff

| | |
|---|---|
| **Name** | Sulaiman Law Group, Ltd. |
| **ARDC #:** | 6279456 |
| **Attorney for:** | Plaintiff |
| **Address:** | 900 Jorie Blvd., Suite 150 |
| **City/State/Zip:** | Oak Brook, IL 60523 |
| **Telephone:** | (630) 575-8181 |