**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONETTE E. SACCAMENO, ) | | |
|     Plaintiff, ) | Case No. 15 C 1164 | |
| ) | | |
|     v. ) | Judge Joan B. Gottschall | |
| ) | | |
| OCWEN LOAN SERVICING, LLC, et al., ) | | |
|     Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

In this Fair Debt Collection Practices Act ("FDCPA") case, plaintiff Monette Saccameno raises claims against multiple entities relating to her mortgage loan. With respect to defendant Potestivo & Associates, she claims violations of multiple sections of the FDCPA based on a letter that Potestivo sent to her attorney that contained allegedly false representations about amounts purportedly owed to defendant Ocwen Loan Servicing. Potestivo's motion to dismiss Count III of the amended complaint (the only count that is directed at Potestivo) pursuant to Fed. R. Civ. P. 12(b)(6) is before the court. For the following reasons, the motion is granted.

### I. BACKGROUND[1]

In 2002, plaintiff Monette Saccameno obtained a loan secured by a mortgage on a home located in Franklin Park, Illinois. After the loan was transferred to U.S. Bank National Association, as Trustee (a defendant in this case), Saccameno defaulted. In February 2009, U.S. Bank filed a state court foreclosure action in the Circuit Court of Cook County.

---

[1] The court draws the following facts from Saccameno's amended complaint and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 946 (7th Cir. 2013).

### A. Saccameno's Bankruptcy Case

In December 2009, Saccameno filed a Chapter 13 bankruptcy petition "to cure all pre-petition defaults" on the loan. (Am. Compl., Dkt. 40, at ¶ 14.) In her bankruptcy schedules, Saccameno disclosed that U.S. Bank was a secured creditor. Saccameno subsequently filed a modified Chapter 13 plan that provided that if she cured the pre-petition defaults "while timely making all required post[-]petition payments, the mortgage will be reinstated according to the original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to filing of the petition." (Modified Plan, Dkt. 40-4, at § (B)(2)(a).) The modified plan also specified that Saccameno would pay the mortgage arrears to U.S. Bank by making payments to the Chapter 13 trustee but that beginning in January 2010, she would pay U.S. Bank $1,800 per month directly.

U.S. Bank did not object to its treatment in the modified plan. On February 17, 2010, the bankruptcy court confirmed the modified plan. On June 27, 2013, the bankruptcy court issued an order of discharge and the trustee issued a "notice of payment of final mortgage cure."

### B. Post-Discharge Issues With Saccameno's Loan

At an unspecified time (presumably while the Chapter 13 case was still pending), Litton Loan Services for U.S. Bank, the servicer for Saccameno's loan, "returned several payments made by [Saccameno] in violation of the Confirmed Chapter 13 plan which were later retendered [sic]." (Am. Compl., Dkt. 40, at ¶ 27.) In July 2011, defendant Ocwen Loan Servicing started servicing the loan. Saccameno alleges that Ocwen improperly assessed multiple "fees and

expenses" to her mortgage and escrow accounts even though she had a positive balance. Ocwen never objected to the trustee's "notice of payment of final mortgage cure."[2]

According to Saccameno, Ocwen's demands were baseless because Ocwen was demanding that she pay amounts that had been discharged in her bankruptcy case. Saccameno and her attorneys contacted Ocwen repeatedly in writing and by telephone in an unsuccessful effort resolve the dispute over allegedly missing payments and unpaid fees and expenses. "In order to try and restart the conversation with Ocwen, [Saccameno] had requested reinstatement figures to determine as a final attempt at resolution if Ocwen would provide figures that complied with [Saccameno's] Chapter 13 Discharge." (Am. Compl., Dkt. 40, at ¶ 40.)

## C. The Request for Potestivo to Provide a Reinstatement Letter

To obtain the reinstatement figures, David Cohen (Saccameno's attorney) contacted Ocwen's attorneys, Potestivo & Associates. In response to Cohen's request, Potestivo faxed

---

[2] Saccameno alleges that Ocwen's decision not to object to the "notice of payment of final mortgage cure" caused her to become "contractually current" with her mortgage payments as of the date of her discharge. (Am. Compl., Dkt. 40, at ¶ 36.) She further alleges that "[a]ny alleged post-petition bankruptcy default, which did exist, was discharged along with amounts claimed pre-petition in the Proof of Claim of US [sic] Bank/Ocwen . . . In essence, as of the Date of Discharge[,] the Plaintiff (June 27, 2013) was contractually current with Ocwen." (*Id.*) "Allegations that state 'legal conclusions' . . .are not entitled to the assumption of truth." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008)). The court will disregard Saccameno's allegations about the effect of her discharge on U.S. Bank and Ocwen, as they are legal conclusions, not facts.

Cohen a letter containing a reinstatement quote. (Reinstatement Letter, Dkt. 1-10.)³ The letter begins with a banner stating:

> **YOU ARE HEREBY NOTIFIED THAT THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, THOUGH IT IS NOT AN ATTEMPT TO COLLECT MONEY FROM ANYONE WHOSE DEBT HAS BEEN DISCHARGED PURSUANT TO (OR WHO IS UNDER THE PROTECTION OF) THE BANKRUPTCY LAWS OF THE UNITED STATES; IN SUCH INSTANCES, IT IS INTENDED SOLEY [sic] FOR INFORMATIONAL PURPOSES.**

(*Id*., emphasis in original). It then lists the various items that make up the claimed reinstatement amount and states that if the full amount is not paid, a specified partial payment by February 6, 2015, will halt foreclosure proceedings.

Saccameno alleges that the figures in the reinstatement letter "could not possibly be true" and asserts that Potestivo sent the quote without confirming that the amounts that Saccameno alleged owed were correct. (Am. Comp., Dkt. 40, at ¶¶ 42-44.) Although Saccameno alleges that she wrote both Ocwen and Potestivo about the dispute regarding her loan (*id*. at ¶ 49), all of the details regarding the purported contacts relate to contacts with U.S. Bank and Ocwen (*id*. at ¶¶ 49-54.)

### D. Saccameno's Allegations Directed at Potestivo

Count III is the only count directed at Potestivo. It contains quotations from the FDCPA and conclusory assertions that Potestivo violated various provisions of the FDCPA. Saccameno also alleges that Potestivo "engaged in abusive and oppressive conduct by sending a

---

³ Saccameno provided the court with a complete courtesy copy of her amended complaint, including exhibits. However, she did not e-file the exhibits to the amended complaint. Thus, the court will cite to the e-filed exhibits to the original complaint.

reinstatement letter that (i) refuses to correct Ocwen's accounting errors or adequately respond to [her] repeated disputes over several years with Ocwen that Potestivo was aware of; (ii) allowed the misapplication and rejection of payments; and (iii) reflects the assessment of illegal fees." (*Id*. at ¶ 88.) Next, she alleges that Potestivo violated the FDCPA because:

> [t]he reinstatement letter includes: (i) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) [a declaration that the loan is] in delinquent or default status; (v) [a threat of] a foreclosure sale, (vi) [assessment of] illegal foreclosure fees; (vii) [assessment of] escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters; (viii) [a report of] false information and [a statement that the loan was reported as] delinquent to credit bureaus.

(*Id*. ¶ 90.)

Finally, Saccameno alleges that Potestivo:

> took legal action that cannot legally be taken by not dismissing the foreclosure case as a result of the Chapter 13 Discharge and subsequently made (1) misrepresentations of the status of the debt; (ii) attempts to collect illegal fees and costs not authorized by law or the contract; (iii) misrepresentations of the amounts owed for escrow; (iv) [declarations that] the loan [was] in delinquent or default status; (v) [threats of] a foreclosure sale, (vi) [assessments of] illegal foreclosure fees; and (vii) [assessments of] escrow overdraft charges and improper corporate advances, fees, and costs in their dunning letters, acceleration notices, restatement letters, and payoff letters.

(*Id*. ¶ 92.)

This is Saccameno's second attempt to articulate her claims against Potestivo. Potestivo filed a Rule 12(b)(6) motion to dismiss the original complaint. In response, Saccameno filed a motion for leave to file an amended complaint, explaining that she had "discovered that the facts as plead [sic] lead to confusion as to what was being alleged against Potestivo" so she desired to

"seek[] leave to amend the Complaint to incorporate the new facts as to clarify the allegations." (Pl.'s Mot. for Leave to File Am. Compl., Dkt. 36, at ¶ 3.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. DISCUSSION

All of Saccameno's claims against Potestivo are based on the reinstatement letter that her attorney asked Potestivo to send. The court will disregard Saccameno's quotations from the FDCPA, as well as her assertions that Potestivo violated various provisions of the FDCPA as these allegations are not enough to survive a motion to dismiss. *See Ashcroft*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed- me accusation" so [a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"); *see also Virnich*, 664 F.3d at 212 (a recitation of the elements of a claim is not entitled to a presumption of truth).

With respect to Saccamenos's remaining allegations, to survive Potestivo's motion to dismiss her FDCPA claims based on the letter, Saccameno must assert sufficient facts to support an inference that: (1) Potestivo is a "debt collector" under the FDCPA, (2) the reinstatement letter was sent "in connection with the collection of [a] debt," and (3) Potestivo violated one of the FDCPA's substantive provisions. *Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 WL 4730053, at *2 (N.D. Ill. Aug. 10, 2015) (citing *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010)).

A careful study of the amended complaint, motion, response, and reply shows that the parties appear to disagree about the sufficiency of Saccameno's allegations relating to six issues: (1) whether the FDCPA reaches Potestivo because it (a) acted as a debt collector and (b) attempted to collect a debt when it sent the reinstatement letter; (2) whether the information in the reinstatement letter is actionable because it is inaccurate; (3) whether Potestivo improperly attempted to collect a debt that had been discharged in bankruptcy;[4] (4) whether the letter is actionable under the "unsophisticated consumer" and "competent lawyer" standards;[5] (5)

---

[4] This argument appears in multiple iterations, some of which are not clearly articulated. Specifically, Saccameno contends that (1) U.S. Bank's failure to respond to the "notice of payment of final mortgage cure" meant that her loan was current so Potestivo could not legally attempt to collect the amounts asserted in the reinstatement letter and (2) pursuant to Fed. R. Bankr. P. 3002.1, she was "contractually current" with her loan as of the date of her bankruptcy discharge so Potestivo could not try to collect on the loan. Confusingly, Saccameno also argues that "the Reinstatement Quote is plainly wrong and as these amounts were demanded by Potestivo to reinstate a loan that was already reinstated by the Chapter 13." (Pl.'s Resp., Dkt. 64, at 6.)

[5] The court has provided its interpretation of Saccameno's argument. Her description of the "unsophisticated consumer" versus "competent lawyer" issue is as follows: "Potestivo has stated in its [motion to dismiss] that the unsophisticated consumer should not apply to its communications but instead the "competent lawyer" standard should apply. This does change the fact that party who determines whichever standard is the trier of fact, and since a jury has

whether the letter violates the FDCPA because it is "abusive and oppressive";[6] and (6) whether the FDCPA required Potestivio to verify the accuracy of the figures provided by Ocwen before sending the letter. As discussed below, the court finds that Saccameno's often conflicting and conclusory allegations about Potestivo fail to support an inference that the reinstatement letter was an attempt to collect a debt. As this is a threshold issue that is necessary for all of her FDCPA claims, it controls the resolution of Posetivo's motion to dismiss.

A.      **Is the Reinstatement Letter Within the Ambit of the FDCPA?**

Pursuant to the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). In turn, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

---

been demanded a jury. Although the below statement [from *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999)] was made in regards to an unsophisticated consumer standard it is equally applicable if the competent lawyer standard is at issues [sic]." (Pl.'s Resp., Dkt. 64, at 7.)

[6] Specifically, Saccameno argues that by sending the letter, Potestivo "(i) refuse[d] to correct Ocwen's accounting errors or adequately respond to Plaintiff'[s] repeated disputes over several years with Ocwen that Potestivo was aware of; (ii) allowed the misapplication and rejection of payments; and (iii) [assessed] illegal fees." (Pl.'s Resp., Dkt. 64, at 11.) Saccameno further asserts that "[o]n its face, the letter does not appear to be abusive. However, when looking into the complete fact pattern, it would become apparent why §1692d was pled in the Complaint. Accounting errors and been found repeatedly. The errors had not been corrected or adequately responded to." (*Id.*)

Potestivo asserts that even though it acts as a debt collector in certain instances, the FDCPA does not cover each and every communication that it sends. This is correct, as "[c]ommunications from a debt collector must be made in connection with the collection of a debt to be covered by the FDCPA." *Bonfiglio v. Citifinancial Servicing, LLC*, No. 14 C 9254, 2015 WL 5612194, at *5 (N.D. Ill. Sept. 23, 2015) (citing *Gburek*, 614 F.3d at 384-86 (although a communication need not explicitly demand payment, it must be "made specifically to induce the debtor to settle her debt")).

The Seventh Circuit has not decided whether the FDCPA reaches communications related to mortgage foreclosures. *Kabir*, 2015 WL 4730053, at *2. Potestivo points to authority holding that a mortgage foreclosure action is outside the ambit of the FDCPA because it is an effort to foreclose on an interest in real property, as opposed to an attempt to collect a debt by obtaining a money judgment. *See*, *e.g.*, *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 460 (6th Cir. 2013) (collecting cases). The amended complaint does not specify whether Ocwen sought to recover a deficiency judgment in its state court foreclosure action and thus sought to recover a money judgment. If so, Posetivo's argument would fail.

In any event, the court is persuaded by Judge Ellis' recent decision surveying the split in authority and concluding that the FDCPA reaches actions taken in connection with foreclosure proceedings because (among other reasons), "[f]inding otherwise 'would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." *Kabir*, 2015 WL 4730053, at *3 (quoting *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373,

376 (4th Cir. 2006)). Thus, Saccameno has sufficiently alleged that the FDCPA reaches a communication relating to a debt secured by real property.

**B.      Was Potestivo Trying to Collect a Debt When It Sent the Reinstatement Letter?**

The existence of a connection between Potestivo's reinstatement letter and the state court mortgage foreclosure proceeding does not necessarily compel the conclusion that Potestivo sent the letter "in connection with the collection of any debt." 15 U.S.C. § 1692; *see also Preuher v. Seterus, LLC*, No. 14 C 6140, 2014 WL 7005095, at *2 (N.D. Ill. Dec. 11, 2014) (citing *Gburek*, 614 F.3d at 384-85) ("While [the defendant] does not dispute that it is a debt collector, this characterization does not require the conclusion that the Hazard Letter was sent in connection with the collection of a debt.").

There is no bright line test to determine if a communication was sent in connection with the collection of a debt. *Gburek*, 614 F.3d at 384. Thus, the presence of an explicit demand for payment is not dispositive. *Id*. Instead, the court must conduct a "commonsense inquiry" by considering whether a communication contains a demand for payment, "the nature of the parties' relationship," and "the purpose and context of the communications." *Id*. at 385 (citing *Ruth v. Triumph P'ships*, 577 F.3d 790, 799 (7th Cir. 2009)). "In the context of a motion to dismiss," the court must determine if the complaint and the communication at issue "sufficiently allege that the communication was made in connection with the collection of a debt." *Preuher*, 2014 WL 7005095, at *2 (citing *Gburek*, 614 F.3d at 386).

Saccameno's position, at its heart, appears to be that Ocwen's foreclosure case against her is wrongful because she was current with her mortgage as a result of her bankruptcy case. Saccameno contends that Potestivo—Ocwen's counsel— wrongfully attempted to force her to

-10-

pay money to Ocwen that she did not owe. The first problem with this argument is that the reinstatement letter, which was addressed to Saccameno's attorney and sent at the attorney's request, begins with a paragraph in bolded capitals that states:

> **YOU ARE HEREBY NOTIFIED THAT THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, THOUGH IT IS NOT AN ATTEMPT TO COLLECT MONEY FROM ANYONE WHOSE DEBT HAS BEEN DISCHARGED PURSUANT TO (OR WHO IS UNDER THE PROTECTION OF) THE BANKRUPTCY LAWS OF THE UNITED STATES; IN SUCH INSTANCES, IT IS INTENDED SOLEY [sic] FOR INFORMATIONAL PURPOSES.**

(Reinstatement Letter, Dkt. 1-10, emphasis in original.) This paragraph addresses Saccameno's precise argument, as she claims that her debt to Ocwen was "discharged pursuant to . . . the bankruptcy laws of the United States." (*Id*.) In that situation, the letter explicitly states that "it is intended soley [sic] for informational purposes." (*Id*.)

But even if the letter can be read as a demand for payment, Saccameno is not out of the woods. Despite the disclaimer in the reinstatement letter, she stands by her contention that Potestivo was actively trying to collect a debt, not provide information. She asks, "[w]hat other purpose could it have? Clearly, the purpose was for Posestivo to collect the amount listed on the Reinstatement Quote. To suggest that is not debt collection is to deny what the purpose of the Reinstatement quote was. The [amended complaint] alleges that is debt collection in paragraphs 80-95. That is a fact in this proceeding." (Pl.'s Resp., Dkt. 64, at 15.)

There are multiple problems with this contention. Saccameno herself has answered the question she posed about why Potestivo sent the letter – "to try and restart the conversation with Ocwen, [Saccameno] had requested reinstatement figures to determine as a final attempt at resolution if Ocwen would provide figures that complied with [Saccameno's] Chapter 13

-11-

Discharge."  (Am. Compl., Dkt. 40, at ¶ 40.)  A plaintiff "can plead [her]self out of court by including factual allegations that establish that [she] is not entitled to relief as a matter of law." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).  Saccameno is bound by her allegation that her attorney asked Potestivo for the letter to help Saccameno deal with Ocwen.

The allegation that *Saccameno asked Potestivo* to send the communication that forms the basis of her claims against Potestivo is critical.  As detailed in the amended complaint, Potestivo did not decide to send the letter in a vacuum; it did so because Saccameno requested the very letter that she now claims is dunning for her own purposes.  These circumstances are clearly germane to the court's "commonsense" assessment of the "nature of the parties' relationship" and the "purpose and context of the communication[]."  *See Gburek*, 614 F.3d at 384.

Second, Saccameno contends that paragraphs 80-95 of her amended complaint contain factual allegations supporting an inference that Potestivo's letter was an attempt to collect a debt.  Three of these paragraphs quote the FDCPA.  (Am. Compl., Dkt. 40, at ¶¶ 85-87.)  As discussed above, unadorned quotations from a federal statute do not state a claim for which relief may be granted.  *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true, [they] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly*, 550 U.S. at 555); *see also Laba v. Chicago Transit Auth.*, No. 14 C 4091, 2014 WL 5822336, at *3 (N.D. Ill. Nov. 10, 2014) ("threadbare recitation of the elements of a Section 1983 cause of action . . . are insufficient to withstand a motion to dismiss under Rule 12(b)(6)").

The rest of the paragraphs cited by Saccameno are completely inconsistent with the only specific non-conclusory factual allegation in the complaint about Potestivo:  that it sent the

reinstatement letter at the request of Saccameno's counsel so Saccameno could "try and restart the conversation with Ocwen" and convince Ocwen to "provide figures that complied with [her] Chapter 13 Discharge." (Am. Compl., Dkt. 40, at ¶ 40.) A plaintiff may assert conflicting legal theories. *See*, *e.g.*, *Ziccarelli v. Phillips*, No. 12 CV 9602, 2013 WL 5387864, at *5 (N.D. Ill. Sept. 25, 2013) (citing *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001)). A plaintiff may also "plead inconsistent facts" if she is "legitimately in doubt about the facts in question." *Carlson v. Nielsen*, No. 13 CV 5207, 2014 WL 4771669, at *3 (N.D. Ill. Sept. 24, 2014). These rules do not help Saccameno as the so-called facts supporting her FDCPA claims against Potestivo bear no discernable relationship to her allegations about the chain of events that resulted in the issuance of the reinstatement letter.

For example, in Count III, Saccameno alleges that Potestivo violated the FDCPA by "refus[ing] to correct Ocwen's accounting errors," "declar[ing] the loan in delinquent or default status," "report[ing] the loan delinquent to credit bureaus," and "threatening a foreclosure sale." (Am. Compl., Dkt. 40, at ¶¶ 88, 90-91.) How could Potestivo have refused to correct Ocwen's alleged errors when it purportedly sent the letter to Saccameno at her request so she could continue to try to resolve her dispute directly with Ocwen? How could the reinstatement letter be a declaration that Saccameno had defaulted on her loan or a threat to file a foreclosure lawsuit when Ocwen had already advised Saccameno that she was in default, threatened to file a foreclosure action, and eventually (the timing of events is unclear) filed suit? How could the letter to Saccameno's attorney in response to his request to provide a reinstatement letter summarizing the amount that Ocwen claimed that Saccameno owed be read as a communication

to a credit bureau to declare Saccameno's loan as delinquent? These examples are illustrative, but Saccameno's remaining "factual allegations" are equally questionable.

Elsewhere in the complaint, Saccameno alleges that her counsel "made repeated requests via Qualified Written Requests to Ocwen and Potestivo, to recognize [her] bankruptcy payments and to apply post-petition to post-discharge months. Ocwen has ignored, criticized, and refused to recognize Plaintiff's requests as valid, including her requests for accurate reinstatement figures." (Am. Compl., Dkt. 40, at ¶ 49.) A complaint must "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Accepting Saccameno's complaint at face value, the contact between Saccameno's counsel and Potestivo appears to have consisted of a request to provide a reinstatement letter. A request for a letter to be used when negotiating with Ocwen is not a complaint to Potestivo about the status of Saccameno's loan. Moreover, Saccameno does not explain how the FDCPA makes Potestivo liable for Ocwen's alleged failure to "recognize [her] requests as valid."

It is unclear how Saccameno could be "legitimately in doubt" about these facts and thus have a basis to submit an internally inconsistent pleading. *See Carlson v. Nielsen*, 2014 WL 4771669, at *3. To the extent that the amended complaint was intended to cure what she described as "confusion as to what was being alleged against Potestivo," it does not do so. (Pl.'s Mot. for Leave to File Am. Compl., Dkt. 36, at ¶ 3.) Saccameno's current factual allegations supporting her FDCPA claims against Potestivo, against the backdrop of her allegation that her attorney asked Potestivo to send the reinstatement letter, are so disjointed and conclusory that they fail to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at

555-56. Thus, the court will not delve into the specific elements necessary to plead colorable claims based on the cited sections of the FDCPA.

In the interests of justice, the court will give Saccameno another chance to amend her FDCPA claims against Potestivo. Counsel must consider whether there is a colorable factual basis underlying each FDCPA claim, and any amended complaint must contain factual allegations that sufficiently support an inference that Potestivo is liable under the specified sections of the FDCPA. Sweeping assertions of wrongdoing and conclusory claims of malfeasance are not enough to satisfy Rule 12(b)(6), are inconsistent with counsel's Rule 11 obligations, and are an inappropriate use of the court's and Potestivo's resources.

### IV. CONCLUSION

For the reasons stated above, Potestivo's motion to dismiss the amended complaint [49] is granted. The court is contemporaneously issuing an order denying a motion to withdraw the reference filed by Ocwen and U.S. Bank and setting a status on December 11, 2015, at 9:30 a.m. to discuss scheduling in light of the bankruptcy proceedings. At the status hearing, the parties should address whether the filing of a second amended complaint against Potestivo should be stayed pending the outcome of the bankruptcy proceedings. The court also notes that Saccameno failed to e-file the exhibits to the amended complaint [40], although she provided the court with a complete courtesy copy. She must promptly e-file the exhibits. To avoid confusion, she should e-file the entire amended complaint so the amended complaint and its exhibits are together under a single number on the docket.

Date:  November 19, 2015                     /s/
                                             Joan B. Gottschall

/cc                                          United States District Judge