UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONETTE E. SACCAMENO,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC; and<br>U.S. BANK NATIONAL ASSOCIATION,<br>*as trustee for* C-Bass Mortgage Loan Asset-<br>Backed Certificates, Series 2007, RP1,<br><br>Defendants. | Honorable Joan B. Gottschall<br><br>Case No.: 15-cv-01164 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Monette E. Saccameno, (hereinafter "Saccameno"), by and through counsel, and files herewith her memorandum in opposition to the Defendants' (hereinafter, collectively, "Ocwen") motion for partial summary judgment as follows:

**INTRODUCTION**

Saccameno has been subjected to a multi-year hellish nightmare at the hands of Ocwen. This cascade of ongoing needless harm suffered by Saccameno would have been entirely avoided by any competent mortgage servicer by complying with mandatory rules of bankruptcy court, honoring the discharge injunction, accurately reviewing and responding to Saccameno's written and verbal disputes and by employing both systems and personnel capable of handling the most basic mortgage servicing tasks.

At the outset, Saccameno is compelled to point out Ocwen's concession a jury trial will be necessary to resolve the FDCPA, RESPA, and Bankruptcy Discharge violation counts of the complaint regardless of this motion. Further, once Saccameno establishes damages under her ICFA

1

and Breach of Contract counts in this response then a jury trial is proper on all counts of Saccameno's complaint.

## STANDARD OF REVIEW

Summary judgment is only appropriate where "no reasonable jury could find for the party opposing the motion." *Mills v. First Fed. S & L Ass'n*, 83 F.3d 833, 840 (7th Cir. 1996). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Summary judgment does not "authorize[] trial on affidavits." *Anderson*, 477 U.S. at 255. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether she is ruling on a motion for summary judgment or for a directed verdict." *Id.* Summary judgment against any party is warranted where they do not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

## ARGUMENT

### I.  Summary Judgment is not proper on Count III (ICFA) because there is clear evidence of Actual Economic Damages

Ocwen's argument Saccameno has no actual damages is belied by the facts in Saccameno's list of pecuniary losses (Tab "K" - Plaintiff's 56.1(b)(3) statement - Evidence of Saccameno's pecuniary losses). This list itemizes 15 types of harm that demonstrate Ocwen (1) sought thousands of dollars to which it was not entitled; (2) caused her significant emotional distress including anxiety and depression; (3) caused Saccameno to expend significant amounts on prescription costs; (4) caused Saccameno to be terminated from a job; and (5) rejected over $28,615.93 in payments from Saccameno and then sought to hold her liable for those payments.

The harms set out in Tab K are substantial evidence of actual damages that can be tied to a specific dollar amount (the cost of her prescriptions, the demand for inflated amounts, and the demand for payments already made). Saccameno also presents substantial evidence of actual damages that may lack a readily identifiable dollar value such as the loss of a job; and Ocwen's unending failure to properly service Saccameno's mortgage loan account and properly account for her mortgage payments. This evidence is sufficient evidence of actual or pecuniary injury to allow this claim to go to the jury.

"Actual damages under the ICFA must be "calculable and 'measurable by the plaintiff's loss,'" as opposed to the defendant's gain." *Liston v. King.com, Ltd.*, 2017 U.S. Dist. LEXIS 77905, *32 (N.D. Ill. May 23, 2017) (Judge Tharp finding $.20 value of a "donated life" in the game Candy Crush sufficient to show actual damages). Saccameno is not required to show actual damages with mathematic certainty. "We are mindful, however, that damages need not be proven with mathematical certainty (*Kirkpatrick*, 385 Ill. App. 3d at 130) and that the plaintiff need only present evidence to allow the trial court to compute damages within a fair degree of probability (*La Salle National Trust*, 287 Ill. App. 3d at 457)." *Doornbos Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill. App. 3d 468, 487 (Ill. App. Ct. 1st Dist. July 12, 2010).

The Seventh Circuit held in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. Ill. Mar. 7, 2012) allegations a plaintiff incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit,… and was denied the opportunity to take the path of "efficient breach" sufficiently stated a claim of pecuniary injury under ICFA. Following *Wigod,* another court in the northern district held pleadings alleging "[ICFA] violations resulted in damage to [plaintiff's] credit, the "repossession" of his home, and the inability to "fairly negotiate a plan to stay in [his] home[]"… sufficient to plead actual damages under ICFA. *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 754 (N.D. Ill. Apr. 12, 2011). This authority allows Saccameno to submit

any pecuniary harm arising from Ocwen's ICFA violation to the jury even if it lacks a specific dollar value so long as the harm is *not solely* emotional distress.

> **II.     Summary Judgment is also not proper on Count I because there is substantial evidence of injury from the Breach of Contract**

"The required elements of a breach of contract claim in Illinois are the standard ones of common law: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. Ill. Mar. 7, 2012).

Ocwen fails to discuss Saccameno's breach of contract claim related to Ocwen's breach of the confirmed Chapter 13 plan in bankruptcy. "It is a bedrock bankruptcy principal that parties to a chapter 13 plan are bound by it when it is confirmed; for that reason, courts often compare a plan to a contract. *See In re Harvey,* 213 F.3d 318, 321 (7th Cir. 2000) (stating that "a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all creditors")." *Miller v. Ameriquest Mortg. Co. (In re Laskowski)*, 384 B.R. 518, 534-535 (Bankr. N.D. Ind. Feb. 27, 2008).

Here, the Chapter 13 plan constituted an offer and acceptance upon its confirmation. There was adequate consideration through Saccameno's agreement to cure the mortgage arrears through the plan, the terms are definite and certain, Saccameno paid all payments due (Tab "A" - Plaintiff's 56.1(b)(3) statement - Patterson Expert Report, finding 5); Ocwen breached the plan by misapplying trustee funds and mishandling the application of payments, according to Plaintiff's expert, Jay Patterson, Ocwen misapplied $921.43 of Chapter 13 Trustee payments (Tab "A" - Plaintiff's 56.1(b)(3) statement - Patterson Expert Report, finding 7), failed to properly account for the $22,552.08 in Chapter 13 Trustee payments to Ocwen (Tab "A" - Plaintiff's 56.1(b)(3) statement - Patterson Expert Report, finding 4 and findings 15 and 19), and benefitted from those

4

funds while continuing to seek foreclosure against Saccameno and showing her loan to be more than $14,000 delinquent at discharge (Tab "A" - Plaintiff's 56.1(b)(3) statement - Patterson Expert Report, finding 15). Lastly, Saccameno was damaged by this conduct as set out in this response and specifically at Tab "K" - Plaintiff's 56.1(b)(3) statement - Evidence of Saccameno's pecuniary losses under the additional statement of facts). Ocwen doesn't even discuss this claim in its motion. Ocwen's conduct clearly meets the elements of breach of contract as to the confirmed Chapter 13 plan.

Ocwen's basis for seeking summary judgment on the breach of contract claim also rests on the argument Saccameno cannot prove damages. Saccameno points to her evidence of pecuniary losses (Tab "K" - Plaintiff's 56.1(b)(3) statement - Evidence of Saccameno's pecuniary losses) which clearly show Saccameno suffered economic damages in the form of (1) Ocwen's demand for inflated amounts that were not due, (2) Ocwen's improper accounting of her loan, (3) Ocwen's restart of foreclosure proceedings when her loan was contractually current, and (4) Ocwen's improper rejection of 17 loan payments tendered by Saccameno prior to her filing suit and (5) Ocwen's continuous failure to correct its multitude of errors in her mortgage account. All of these actions led to extreme emotional distress including serious anxiety and depression, the loss of a job, and the overpayment of amounts due to Ocwen prior to Ocwen's refusal to accept her payments. All of these damages are recoverable for breach of contract.

Ocwen has made much of its offers to modify Saccameno's loan while ignoring controlling law on the point. Whatever its offers were, Saccameno was not required to accept them and Ocwen cannot use these offers to claim good faith. "Under the duty to mitigate, an injured party need only avoid those damages he can "without undue risk, burden, or humiliation."…. However, an injured party is not required to accept performance from a breaching party on new or modified terms." *Insureone Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1035 (Ill. App. Ct. 1st Dist. June

5

27, 2012). Further, "offers to modify [Plaintiff's] loan do not as a matter of law establish [Defendant's] "good faith" with respect to [Plaintiff's] claim[.]" *Hammer v. Residential Credit Solutions, Inc.*, 2015 U.S. Dist. LEXIS 162636, *76 (N.D. Ill. Dec. 3, 2015).

Ocwen's arguments Saccameno is better off because she retained the payments Ocwen rejected while waiting to address her mortgage loan with Ocwen also ignores the law. The Seventh Circuit already found such conduct to be a breach of contract holding "[t]o swallow GMAC Mortgage's argument, we would have to accept, as a matter of law, that a lender is free to refuse a tendered payment and then to hold the borrower responsible for having failed to make the payment." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 690 (7th Cir. Ill. Jan. 10, 2011).

As to the damages available for breach of contract, the law is clear Saccameno is entitled to actual damages, including emotional distress damages in appropriate circumstances. "[C]ompensation for emotional distress is allowed where the breach of contract was wanton or reckless and caused bodily harm or where the defendant had reason to know, when the contract was made, that its breach would cause more than pecuniary loss." *(Internal citations omitted) Hammer v. Residential Credit Solutions, Inc.*, 2014 U.S. Dist. LEXIS 128104, *24-26 (N.D. Ill. Sept. 11, 2014).

Saccameno may also be entitled to punitive damages under her breach of contract claim depending on the evidence presented at trial, see *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.,* 313 F.3d 385, 390 (7th Cir. 2002) holding: "[C]ourts will sometimes award punitive damages for breach of contract in bad faith….[T]he plaintiff must show that the breach of contract involved tortious misconduct, such as duress or fraud or abuse of fiduciary duty." See also *Morrow v. L.A. Goldschmidt Associates, Inc.*, 492 N.E.2d 181, 184 (Ill. Apr. 18, 1986) holding "[A]n exception to the general rule that punitive damages are not recoverable for breach of contract is when the conduct causing the breach is also a tort for which punitive damages are recoverable.

6

That is, punitive damages are recoverable "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression."'" (internal citations and ellipsis omitted).

### III. Summary Judgment is not proper on Count V because there is substantial evidence of Damages resulting from the Breach of Fiduciary Duty

*Typpi v. PNC Bank*, *N.A.*, 2014 WL 296035, at *24 (N.D. Ill. 2014) found a mortgage servicer could be liable for breach of fiduciary duty for mishandling an escrow account. Jay Patterson found in his expert report at finding 8 (Tab "A" - Plaintiff's 56.1(b)(3) statement - Patterson Expert Report), that Ocwen mishandled the escrow account of Saccameno by misapplying $921.43. Ocwen also admitted mishandling payments received from the Bankruptcy Trustee and misapplying those funds as well. (Tab "11" - Defendants' 56.1(a)(3) statement - Gina Feezer deposition at pages 100-102, lines 8 - 24, 1-24, 1-4; pages 130-131, lines 18-24, 1-9).

### IV. Saccameno's demand for Punitive Damages should go to the Jury

#### a. <u>Illinois law looks to whether the cause of action allows for punitive damages and then determines whether the facts support submitting the claim to the jury</u>

Ocwen cites *Parker v. Four Seasons Hotels, Ltd*., 845 F.3d 807, 812 (7th Cir. Ill. Jan. 6, 2017) for the premise "[t]he preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." While *Parker* does in fact contain that language, the case does not stand for the proposition Ocwen seems to infer. *Parker* at 816 points to the *Barton* case for the premise "[w]hether punitive damages can be awarded for a particular cause of action is a matter of law, but the question of whether a defendant's conduct was sufficiently willful or wanton to justify imposing punitive damages is generally for the jury to decide." *Barton v. Chicago & N. W. Transp. Co*., 757 N.E.2d 533, 555 (Ill. App. Ct. 1st Dist. Sept. 14, 2001). The threshold question is simply whether a cause of action allows for an award of punitive damages. In Saccameno's complaint, the ICFA count, the Bankruptcy Discharge

7

Violation, the breach of fiduciary duty count, and, depending on evidence adduced, the breach of contract count, allow for punitive damages.

b. **Punitive damages should go to the jury on the Breach of Fiduciary Duty count**

Illinois Courts have held "punitive damages are permissible where a duty based on a relationship of trust is violated, the fraud is gross, or malice or willfulness are shown; such an award is not automatic." *Martin v. Heinold Commodities*, 163 Ill. 2d 33, 81 (Ill. Sept. 22, 1994). Based upon the *Martin* holding, Saccameno contends that submitting the issue of punitive damages to the jury on the breach of fiduciary duty claim is appropriate when considered together with the evidence of breach found by Jay Patterson and submitted in Section III above.

c. **Punitive damages should go to the jury on the ICFA count**

"Punitive damages may be awarded for violations of the Illinois Consumer Fraud Act based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference. *Wendorf v. Landers*, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010)." *Hammer v. Residential Credit Solutions, Inc.*, 2015 U.S. Dist. LEXIS 162636, *75 (N.D. Ill. 2015). In the *Hammer* case, Judge Durkin found a number of practices to be unfair under the ICFA, and worthy of punitive damages being submitted to the jury:

1) [Defendant] admitted in the loan records that mistakes had been made, which had never "been corrected." [Defendant] instructed its personnel to prepare documentation to establish correction of "the past errors." It did so, however, *not* because it wanted to right its previous wrong, but instead to allow [Defendant] to "pursue a second foreclosure action." *Hammer* *70. (Analogous to Ocwen not correcting the loan accounting records, post-discharge, to show loan was current, to continue foreclosure that was on hold until bankruptcy case concluded).

2) [A]dmission that [defendant] had committed an unfair business practice by waiting five months before recognizing [plaintiff]'s rights under the state court order. *Hammer* *71. (Analogous to Ocwen not correcting the mortgage servicing records for two months to show bankruptcy discharge and never correcting loan accounting records, post-discharge, to show loan was current, and continuing foreclosure after discharge).

8

3) [Defendant] filed a second foreclosure action against [plaintiff] (1) even though [plaintiff] had attempted to make every payment owed under the Loan Modification Agreement since it took effect in June 2010, (2) even though [Defendant] had rejected and sent every one of those payments back to [plaintiff], and (3) even though [Defendant] never asked [plaintiff] prior to declaring her in default under the Loan Modification Agreement to resubmit the payments she had been making but [Defendant] had been rejecting. *Hammer* \*72. (Analogous to Ocwen refusing 17 post discharge payments and pursuing foreclosure despite fact that Saccameno was current post-discharge and Ocwen wrongfully rejected her payments in direct contempt of the bankruptcy discharge).

4) The jury reasonably could have found that [Defendant] committed an unfair business practice when it "refuse[d] [ ] tendered payment[s]" and then "h[e]ld [plaintiff] responsible for having failed to make the payment[s]." *Catalan*, 629 F.3d at 690. *Hammer* \*72. (Ocwen refused 17 post-discharge payments from Saccameno).

5) [W]hile purporting to "honor" the state court order, [Defendant] never actually intended to do so other than technically and for the sole purpose of allowing [Defendant] to proceed with a second foreclosure action against [plaintiff]. *Hammer* \*73. (Analogous to Ocwen's "correction" of its records which did not result in Ocwen honoring the bankruptcy discharge, properly accounting for the loan and continuing to pursue foreclosure despite its own errors).

6) Acting in contravention of Hammer's rights as determined by a final State Court order. *Hammer* \*65. (Analogous to acting in contravention of the discharge order from the bankruptcy court).

7) Demanding inflated amounts from Hammer including charges and fees improper under the prior State Court ruling. *Hammer* \*65-66. (Same).

8) Treating Hammer *after* the state court dismissed RCS's foreclosure suit as if she were still in default and subject to foreclosure under the original unmodified loan. *Hammer* \*67. (Same).

9) Failing to promptly comply with a lawful court order. (Same).

10) No absolute privilege of a debt collector to engage in collection actions that are inconsistent with, fail to recognize, or contravene, a final court order. *Hammer* \*68. (Same).

The *Hammer* Court found all of these actions sufficient to submit the issue of punitive damages to the jury. Each of the wrongs noted above in *Hammer* are present here in this case by analogizing the prior State Court order directing RCS to honor Hammer's loan modification to the discharge injunction in this case. In each instance, the wrongdoer failed to honor the prior final

9

court order and then spent years terrorizing the borrower because of the mortgage servicer's inability to follow the law and honor a prior final court order. These actions constitute sufficient grounds to submit the issue of punitive damages under the ICFA to the jury in this case.

### d. **Punitive damages should go to the jury on the violation of the Discharge Injunction count**

As to the violation of the discharge injunction, Saccameno believes it is important for the Court to understand just how deliberate this conduct had to be for this type of discharge injunction violation to occur. First, the Court must know this very factual scenario, mortgage servicers mishandling the accounting of Chapter 13 bankruptcy cases post-discharge, was so prevalent the Federal Bankruptcy Courts implemented Federal Rule of Bankruptcy Procedure 3002.1 in 2011 specifically to remedy this problem. Rule 3002.1 requires every mortgage servicer to respond to the Trustee's notice of final cure. The fact that this Rule had been in place for two years when Ocwen failed to respond to the Trustee's Rule 3002.1 notice and took no action to determine whether the failure to respond was systemic or isolated is indicative of the recklessness of Ocwen with respect to its failure to comply with the Bankruptcy Code and Rules in a systemic fashion. Tab "10" (Defendants' 56.1(a)(3) statement - Feezer Deposition at page 23, line 14 through page 24, line 1); Tab "N" (Plaintiff's 56.1(b)(3) statement – Cases re: Ocwen Violation of Discharge Injunction).

"Rule 3002.1 attempts to address the problem faced by many Chapter 13 debtors who would "emerge from bankruptcy only to face a substantial and previously undisclosed arrearage" resulting from unpaid late fees or other charges arising from their residential mortgage." *In re Sheppard*, 2012 Bankr. LEXIS 1696, 2012 WL 1344112, *2 (Bankr.E.D.Va. Apr. 18, 2012). "Bankruptcy Rule 3002.1 (the "Rule") was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully

completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees — a result clearly at odds with a debtor's right to a fresh start." *In re Gravel*, 556 B.R. 561, 568 (Bankr. D. Vt. Sept. 12, 2016).

To combat this problem, "[u]nder Rule 3002.1(g), the creditor is obligated to itemize all arrearages still due and owing if the creditor contends that the debtor has not made all post-petition payments." *In re Baca*, 2012 Bankr. LEXIS 5874, *13-14 (Bankr. D.N.M. Dec. 20, 2012). "Rule 3002.1(g), in turns, obligates the holder of the claim to file a response within 21 days after the filing and service of the notice under Rule 3002.1(f). The holder must indicate, in its response, whether (a) it agrees that any defaults have been cured and (b) whether the "debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." *In re Thibeault*, 2015 Bankr. LEXIS 3432, *4-6 (Bankr. D. Me. Oct. 8, 2015). "Rule 3002.1 contemplates two possible outcomes after the service of a response under subdivision (g):[….] second, the failure of the claim holder to provide certain information. *See* Fed. R. Bankr. P. 3002.1(i)(1) and (2). In the [second] event, the Court is authorized, in certain circumstances, to preclude the holder of the claim from introducing the information it should have provided, but failed to provide. The Court is also authorized to "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3002.1(i)(2). If, following the service of a response by the creditor, the debtor or the trustee files a motion, the dispute is presented to the Court for determination. *See* Fed. R. Bankr. P. 3002.1(h)." *In re Thibeault*, 2015 Bankr. LEXIS 3432, *6-7 (Bankr. D. Me. Oct. 8, 2015).

As set out above, the entire purpose of Rule 3002.1's mandatory process is to prevent any debtor from suffering through the hellish nightmare Monette Saccameno has lived through for multiple years. Ocwen short-circuited Rule 3002.1's mandatory process which had been hard-

wired into the Chapter 13 completion and discharge process since 2011 by filing *no response* to the notice issued by the Chapter 13 Trustee in Saccameno's case and then never treating Saccameno's loan as being contractually current post-discharge. Tab "10" (Defendants' 56.1(a)(3) statement - Feezer Deposition at page 147, lines 2-5).

Had Ocwen complied with this mandatory rule of bankruptcy procedure all harms inflicted upon Saccameno by Ocwen since June of 2013 would have been avoided *prior to the discharge being entered*. Ocwen *chose* non-compliance with this mandatory rule instead subjecting Saccameno to the abusive, inexcusable treatment described in the complaint and this motion for multiple years in an effort to collect discharged debt from Saccameno in violation of the discharge injunction.

Even if Rule 3002.1 were not in place to remedy this situation *before the discharge was entered*, the discharge injunction unquestionably should have prevented Ocwen's conduct here. Ocwen had actual and constructive knowledge of the bankruptcy discharge. (Tab "10" - Defendants' 56.1(a)(3) - Notice of Final Discharge). Ocwen testified it maintains two different automated computer systems to receive each filing in a bankruptcy case. (Tab "11" - Defendants' 56.1(a)(3) - Feezer Deposition, page 34, lines 22-24). Ocwen miscoded the loan as dismissed instead of discharged. (Tab "11" - Defendants' 56.1(a)(3) - Feezer Deposition, page 14, lines 7-12). Ocwen was then provided the discharge order by Saccameno as part of a QWR approximately 18 days post discharge but still failed to correct its records. (Tab "B" - Plaintiff's 56.1(b)(3) - Ocwen's "Transaction History", Ocwen.Sacc.002312); Tab "10" - Defendants' 56.1(a)(3) statement - Feezer Deposition at page 77, lines 1-5). Ocwen also failed to properly account for payments received, failed to conduct a post-bankruptcy audit, began rejecting payments while the loan was contractually current post-discharge, restarted its pending foreclosure action post-discharge, continued that foreclosure action more than a year into the current litigation, sent two

"modification letters" seeking to capitalize amounts of $19,963.23 in February of 2015 and $25,471.83 in July of 2015 respectively.

Ocwen's brief says the test for awarding punitive damages for violations of the discharge injunction is: "courts that have awarded punitive sanctions for violations of the discharge injunction require actions taken with either a malevolent intent or a clear disregard and disrespect of the bankruptcy laws and that it is not sufficient to merely show that the actions were deliberate." *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 231 (Bankr. N.D. Ill. June 16, 1998). Clear disregard and disrespect of the bankruptcy laws were shown in *Vazquez* where the creditor's computer system failed to properly note an account as being discharged.

Ocwen claims its actions were a simple mistake in miscoding Saccameno's loan. Other bankruptcy courts have rejected similar defenses of "innocent mistake" and "computer error": "Creditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." 4 Collier on Bankruptcy P 524.02[2][b] p. 524-16 (15th revised ed. 1997)." *Faust v. Texaco (In re Faust)*, 270 B.R. 310, 317 (Bankr. M.D. Ga. Apr. 3, 1998). "Courts regularly reject creditors' defenses of mistakes, computer problems, and other showings of alleged good faith when assessing the willfulness of violations of the automatic stay or discharge injunction. *See, e.g., Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1556 (11th Cir. 1996) ("We are not persuaded by IRS's attempts to avoid responsibility for its conduct by blaming its computer system for not properly 'freezing' collection activities and blaming Jove for not calling IRS."). "The testimony by Chase's witness that its software at the time would not accommodate separate accounting and recording of payments coming from the trustee under the plan I find amounts to the "computer did it" defense. That defense is a nonstarter in this Court's judgment since intelligent beings still control the computer and could have altered the programming appropriately." *McCormack v. Federal Home Loan*

13

*Mortg. Corp. (In re McCormack)*, 203 B.R. 521, 524-25 (Bankr. D.N.H. 1996) (categorically rejecting mortgage servicer's "'computer did it' defense" and finding that such large institutions have a duty to ensure its computer programming is proper). "The court concludes that Green Tree cannot rely on their computer problems as a defense to contempt. Green Tree willfully violated the discharge injunction." *McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 847-848 (M.D. Ala. Aug. 25, 2014). Each of these cases either awarded or affirmed punitive damages sanctions for the creditor's conduct despite the creditor's assertion of the "computer did it" or "innocent mistake" defense such as Ocwen asserts in its brief. The evidence in this case is sufficient to meet either prong of the standard announced in *Vazquez* for the imposition of punitive damages and this question should most definitely go to the jury for its resolution.

e.  **Offers to modify Saccameno's loan do not show good faith or lack of evil intent**

Ocwen again argues that its offers of loan modifications to Saccameno show its good faith and lack of evil intent towards her. The *Hammer* court rejected identical arguments by the defendant holding "[defendant] argues that its good faith was demonstrated by its repeated attempts to provide Hammer with an alternative loan modification to cure her default and avoid further collection and foreclosure activity. *Id.* at 18. The Court rejects these arguments. *Ibid.* *74-75, and at *100 also held "evidence of settlement offers did not vitiate the defendant's state of mind for purposes of liability for fraud, and, if allowed, would unfairly paint the plaintiff as unreasonable in pursuing the lawsuit…." Also noting "courts in this district have held that evidence of settlement offers is not admissible to prove a defendant did not act with malicious intent." *Same.*

f.  **Punitive damages should go to the jury on the Breach of Contract count**

Saccameno points to her arguments in Section II above showing that punitive damages are available for breach of contract in appropriate circumstances and adopts that argument herein as if fully restated. The evidence presented in opposition shows Ocwen's knowledge of multiple

14

breaches of contract followed by an outrageous pattern of conduct occurring over a number of years intended to coerce or bully Saccameno into accepting Ocwen's breaches.

As to her FDCPA and RESPA counts, Saccameno agrees that punitive damages are not available.

## V.     CONCLUSION

Ocwen's actions are inexcusable, indefensible and outrageous. When the Court considers the overwhelming evidence showing everything Saccameno has been subjected to was easily avoidable by compliance with basic obligations of law and fair dealing it is apparent Ocwen should be severely punished. Further, because the premise of Ocwen's motion for partial summary judgment is flawed and fails to meet the standards required for entry of partial summary judgment the motion should be denied summarily.

Dated: July 18, 2017.                                         Respectfully Submitted,

*/s/ Nick Wooten*
Nick Wooten, Esq.
Nick Wooten, LLC
4935 Bay Hill Drive
Conway, AR 72034
Phone (334) 887-3000
Email:  nick@nickwooten.com

15

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on July 18, 2017, a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was served upon counsel of record via electronic filing:

Robert Brunner *BrunnerR@bryancave.com*
Jena M. Valdetero *jena.valdetero@bryancave.com*
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
*Attorneys for Ocwen Loan Servicing, LLC and*
*U.S. Bank National Association*

                */s/ Nick Wooten*
                Nick Wooten