# TAB
## "K"

The following evidence is a list of pecuniary losses by Saccameno:

1) Patterson's finding 8 (Tab "A") shows Ocwen applied $1,130.72 improperly to escrow.

2) Patterson's finding 10 (Tab "A") notes Ocwen assessed $780.00 in post-petition fees and applied post-petition funds to these post-petition fees despite Ocwen never seeking approval from the Bankruptcy Court for the assessment and payment of any post-petition fees.

3) Patterson's finding 11 (Tab "A") shows Ocwen applied $275.63 in *post*-petition funds to *pre*-petition fees (proof of claim items).

4) Patterson's finding 12 (Tab "A") shows Ocwen applied $7,551.32 in post-petition payments to suspense / unapplied funds.

5) Patterson's finding 15 (Tab "A") states that despite Saccameno paying all amounts due under the proof of claim and all post-petition payments, including $1,182.87 more than what was owed, Ocwen showed Saccameno to be 7 months delinquent plus owing $2,480.87 in corporate advances due.

6) Saccameno testified she paid her own prescription costs related to antidepressants and anti-anxiety medications she was prescribed as a result of her stress from her dealings with Ocwen. Tab "12" (Saccameno Deposition, p. 101, lines 4-20; p. 113, lines 1-7; pp. 116-117, lines 16-24, 1-16; p. 119, lines 20-24; pp. 126-127, lines 9-21, 1-23; pp. 128-129, lines 21-24, 1-23; p. 130, lines 4-22; p. 133, lines 16-24; pp. 134-135, lines 20-24, 1-11; p. 140, lines 6-14; *p. 142, lines 2-14[1]*; pp. 149-150, lines 24, 1-5).

7) Saccameno and Jill Anderson testified Saccameno lost her job with a dialysis company because of the stress and worry she was experiencing dealing with Ocwen. Tab "12" (Saccameno Deposition, p. 171-172, lines 14-24, 1-5; p. 220, lines 10-24); Tab "J" (Anderson Deposition, p. 21, lines 11-24, pp. 22-23, lines 12-24, 1-13; pp. 33-34, lines 7-24, 1-24); Tab "L" (Declaration of Monette Saccameno).

8) Jay Patterson's expert report denotes at finding 5 (Tab "A") Saccameno paid all 42 payments to Litton and Ocwen in post-petition monthly payments.

9) Patterson's expert report denotes at finding 6 (Tab "A") Saccameno paid $1,182.87 more in post-petition payments than the amount due under the terms of the loan. Those funds were never refunded.

10) Patterson's finding 7 (Tab "A") notes that Ocwen applied trustee funds (pre-petition funds) to post-petition amounts due.

---
[1] Saccameno testified that her insurance does not pay for her prescriptions.

11) Patterson's finding 16 (Tab "A") *plus* Ocwen's own testimony, confirms that Ocwen coded Saccameno's loan as "dismissed" instead of "discharged" at the close of her Chapter 13 bankruptcy and as a result, Ocwen restarted its foreclosure against her property after the entry of the bankruptcy discharge.

12) Patterson's finding 18 (Tab "A") states Ocwen rejected 17 monthly payments from Saccameno after the discharge and before this lawsuit was filed.

13) *Exhibit I* (Tab "I" - DOC 98-9) to the complaint is a letter from Ocwen dated August 14, 2013 in response to Saccameno's Qualified Written Request that demonstrates Ocwen sought payment for at least two months of payments that Saccameno had already paid.

14) Patterson's finding 19 (Tab "A") shows that Ocwen's failure to properly account for funds paid by the Chapter 13 Trustee and Saccameno prevented the loan from accurately reflecting its status as current with a surplus / excess payment of $1,182.87 at the discharge date.

15) *Exhibit J* (Tab "I" - DOC 98-10) of the complaint shows Ocwen sought $36,572.43 from Saccameno to "reinstate" her loan on January 19, 2015. This is despite the fact that the total of contractual payments due from June of 2013 to January of 2015 (19 months) could have only been $31,982.51 (19 x $1,683.29 monthly payment amount). This is an unexplained difference of $4,589.92 which Saccameno would have had to pay to have Ocwen cease its foreclosure against her.