UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONETTE E. SACCAMENO, <br><br> Plaintiff, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC; and U.S. BANK NATIONAL ASSOCIATION, *as trustee for* C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007, RP1, <br><br> Defendants. | Case No.: 1:15-cv-01164 <br><br> Honorable Joan B. Gottschall <br><br> JURY TRIAL DEMANDED |

# [PROPOSED] PRETRIAL ORDER

This matter having come before the court at a pretrial conference held pursuant to Fed. R. Civ. P. ("Rule 16"), and Nick Wooten, Mohammed O. Badwan and Ross M. Zambon, having appeared as counsel for Plaintiff and Alexander D. Bono, Lynne E. Evans and Kelly K. Huff, having appeared as counsel for defendants, the following actions were taken:

**(1)** This is an action for damages from Defendants' Breach of Contract and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Defendants deny the claims and assert various defenses. Jurisdiction of the court is invoked under 15 U.S.C. §1692k(d), 12 U.S.C. §2605, Title 11 of the United States Code, and 28 U.S.C. §§1331, 1337 and 1367. Jurisdiction is not disputed. By separate stipulation the parties agreed to sever the claim for violation of the bankruptcy discharge injunction, 11 U.S.C. §§ 524, 105, from the other claims, reserving the trial of that claim for after the jury trial.

**(2)** The following stipulations and statements were submitted and are attached to and made a part of this Order:

**(a)** a comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in jury trials, may be read to the jury by the court or any party);

**Stipulated Undisputed Facts**

1. Plaintiff Monette Saccameno ("Plaintiff") is a resident of Illinois and resides at 3324 Calwagner Street, Franklin Park, Illinois 60131 (the "Property").

2. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a Delaware Limited Liability Company with its principal place of business in West Palm Beach, Florida.

3. Defendant U.S. Bank as Trustee is a national association with its principal place of business in Minneapolis, Minnesota.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

5. Venue in this judicial district is proper pursuant to 28 U.S.C. ¶ 1391(b)(2) because the Mortgage at issue in this case is secured by property located within this judicial district, and because a substantial part of the alleged events giving rise to Plaintiff's claims occurred in this judicial district.

6. On or about January 3, 2002, Plaintiff executed an Adjustable Rate Note ("Note") in favor of Ameriquest Mortgage Company ("Ameriquest") in the principal amount of $135,000 regarding the purchase of the Property.

7. As security for the Note, Plaintiff granted a mortgage interest to Ameriquest regarding the Property ("Mortgage").

8. The Note included an initial interest rate of 8.50% with the first payment due on March 1, 2002, and provided that the interest rate "may change on the first day of February, 2004, and on that day every sixth month thereafter."

9. Plaintiff defaulted on the loan in November 2008.

10. On February 9, 2009, U.S. Bank filed a Complaint to Foreclose Mortgage against Plaintiff in the Circuit Court of Cook County, Illinois entitled *U.S. Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-Based Certificates Series 2007 RPI v. Monette E. Saccameno, et al.*, Case No. 09 CH 5697.

11. On December 31, 2009, Plaintiff filed for bankruptcy under Chapter 13 of the Bankruptcy Code, Case No. 09-49467, Northern District of Illinois.

12. Plaintiff named U.S. Bank as a secured creditor on Schedule D of her bankruptcy petition.

13. On December 31, 2009, Plaintiff filed an Original Chapter 13 Plan with the Bankruptcy Court.

14. Saccameno was under the protection of the bankruptcy stay from the date of filing, December 31, 2009, to the date of discharge, June 27, 2013.

15. Plaintiff's Chapter 13 Plan sought, in part, to cure the default as it relates to U.S. Bank, in the amount of $25,713.42.

16. On February 1, 2010, Plaintiff filed a Modified Chapter 13 Plan ("Modified Plan").

17. Plaintiff's Modified Chapter 13 Plan provided that Plaintiff would pay the mortgage arrears to U.S. Bank by making payments to the Chapter 13 Trustee, and also resume making regular monthly loan payments to U.S. Bank.

18. Ocwen became the mortgage loan servicer for Saccameno September 1, 2011.

19. While Plaintiff's bankruptcy was pending, Plaintiff made payments to both the bankruptcy trustee and to Ocwen.

20. On June 27, 2013, the Notice of Final Cure Payment was served on Ocwen.

21. Ocwen did not file a response to the Notice of Final Cure.

22. On June 27, 2013, the Bankruptcy Court entered an Order of Discharge in Plaintiff's Chapter 13 Bankruptcy case.

23. At the time Plaintiff received her bankruptcy discharge, Ocwen's records showed that the loan was two payments behind.

24. Ocwen's bankruptcy department coded Saccameno's bankruptcy as a dismissal of the case instead of a discharge.

25. Ocwen did not take its normal course of a discharged loan versus a dismissed bankruptcy case.

26. The miscoding of the loan caused the loan to be returned to the foreclosure department.

3

27. Ocwen mailed collection letters to Saccameno on July 10, 2013 and July 11, 2013.

28. On July 23, 2013, Ocwen received documentation regarding Saccameno's Bankruptcy per PACER, confirming that Saccameno received a "standard discharge" on June 27, 2013.

29. On July 23, 2013, Ocwen flagged Saccameno's account as "discharged in bankruptcy."

30. According to Ocwen's business records, Saccameno's loan was not ever contractually current post discharge.

31. Ocwen did not accept Saccameno's payments from October 2013 through February 2015.

32. The foreclosure case was eventually dismissed on March 14, 2016.

33. The Defendants never sought to force Plaintiff out of her home.


**(b)** for jury trials a short agreed description of the case to be read to prospective jurors;

**<u>Stipulated Case Description</u>**

This trial involves a mortgage loan and how that loan was handled, or serviced.

MONETTE SACCAMENO is the plaintiff in this action. She is a resident of Villa Park, Illinois.

There are two defendants:

The first defendant is OCWEN LOAN SERVICING LLC. In this trial, it will be called OCWEN. It is a national mortgage servicer. Ocwen's principal business operations are located in Florida.

The second defendant is U.S. BANK NATIONAL ASSOCIATION, *as trustee for* C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007, RP1. In this trial, it will be called U.S. Bank. It owns Saccameno's mortgage. US Bank hired Ocwen to service Saccameno's mortgage loan.

SACCAMENO alleges 4 claims based on OCWEN's conduct while servicing the mortgage loan:

First, that OCWEN and US Bank breached the mortgage loan contract with Saccameno.

Second, that Ocwen violated the Fair Debt Collection Practices Act. Sometimes this law is called the FDCPA.

Third, that Ocwen violated the Illinois Consumer Fraud and Deceptive Business Practices Act. Sometimes this law is called the ICFA.

Fourth, that Ocwen and US Bank violated the Real Estate Settlement Procedures Act. Sometimes this law is called RESPA.

OCWEN and US Bank deny all of SACCAMENO's claims. The two defendants also raise several defenses.

The Jury in this action will be called on to decide this dispute.

**(c)** except for rebuttal exhibits, schedules in the form set out in the attached Schedule (c) of—

    (1) all exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charges and other items expected to be offered in evidence and

    (2) any demonstrative evidence and experiments to be offered during trial;

**Exhibit Lists:**

Exhibit "A" contains Saccameno's proposed exhibit list along with Defendants' objections.

Exhibit "B" contains Defendants' proposed exhibit list along with Saccameno's objections.

**(d)** a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objection to calling, or to the qualifications of, any witness identified on the list;

**Plaintiff's Witness List**

**Witnesses who will be called**:

1. **Monette Saccameno** – Saccameno will testify as to her actions with respect to the mortgage loan and the allegations in the complaint, Ocwen's conduct and actions with respect to the mortgage loan and allegations in the complaint, and the effect of Ocwen's conduct on Saccameno. Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion *in limine*.
2. **Michael Saccameno** – Michael Saccameno is Monette Saccameno's son. Michael Saccameno observed Monette Saccameno's physical and emotional health during the relevant time period and how Ocwen's conduct affected his mother, the Plaintiff. Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion *in limine*.
3. **Alana Saccameno Farmer** – Alana Farmer is Monette Saccameno's daughter. Alana Farmer observed Monette Saccameno's physical and emotional health during the relevant time period and how Ocwen's conduct affected her mother, the Plaintiff. Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion *in limine*.
4. **William Sarantos, M.D.** – Dr. Sarantos is Saccameno's primary care physician. Dr. Sarantos will testify as to his observations, diagnosis, and treatment of Saccameno including prescriptions issued during the course of her treatment and care of Saccameno; Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion *in limine*.
5. **Jill Anderson** – Jill Anderson was Saccameno's co-worker. Anderson observed Saccameno's stress caused by Ocwen's conduct and the effect it had on Saccameno's job performance during the relevant time period. Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion *in limine*.
6. **Susan Van Sky** – Susan Van Sky was Saccameno's co-worker. Van Sky, an attorney and a nurse, reviewed Saccameno's mortgage and bankruptcy documents. Van Sky contacted Ocwen, on Saccameno's behalf, regarding Ocwen's handling of Saccameno's mortgage loan during her Chapter 13 and post-discharge. Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion *in limine*.
7. **Gina Feezer** – Feezer is Ocwen Loan Servicing's corporate representative. Feezer was a senior loan analyst during the time Ocwen serviced Saccameno's mortgage loan and has information as to Ocwen's conduct and handling of Saccameno's account.
8. **Bernard Jay Patterson** – Patterson is Saccameno's expert witness. Patterson performed a forensic investigation, examination and analyses of Ocwen's

    mortgage loan servicing transactions from the servicing system of record during the life of Saccameno's mortgage loan. Ocwen objects to this witness for the reasons explained in Ocwen Loan Servicing's motion in limine.

9. Any individual designated by Ocwen as its corporate representative, even if for appearance purposes only, or any employees of Ocwen on Ocwen's witness list.
10. Any witness needed solely for rebuttal.

**Witnesses who may be called**:

11. **Potestivo & Associates** –Potestivo & Associates was the law firm who filed the foreclosure on Saccameno's real property on behalf of U.S. Bank.
12. Any person listed on Ocwen's witness list but not named on Saccameno's witness list.

**Witnesses whose testimony Plaintiff will present by deposition or other testimony**:

13. **Gina Feezer** - Feezer is Ocwen's 30(b)(6) deponent. Saccameno may use portions of Feezer's 30(b)(6) testimony via video for impeachment purposes.
14. **Ocwen Loan Servicing, LLC** – Saccameno may use affidavits of Ocwen to authenticate its business records or for rebuttal purposes.

Defendants object to the testimony of Bernard Jay Patterson**,** William Sarantos, M.D., Jill Anderson, Susan Van Sky, Monette Saccameno, Michael Saccameno and Alana Saccameno Farmer. *See* motions *in limine*.

**Defendant's Witness List**

    **Witness who will be called:**

1. **Gina Feezer** – Feezer is Ocwen Loan Servicing's corporate representative. Feezer was a senior loan analyst during the time Ocwen serviced Saccameno's mortgage loan and has information as to Ocwen's business practices generally, as well as Saccameno's account.

**(e)** stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stands;

7

>Defendants object to the qualifications of Bernard Jay Patterson and William Sarantos, M.D. *See* motion *in limine*.
>
>In the event Defendants motion is denied plaintiff will provide this information in a supplement to the Court.

**(f)** list of all depositions, and designated page and line numbers, to be read into evidence and statements of any objections thereto;

>**Plaintiff's designations:** Plaintiff does not anticipate offering evidence by deposition except for impeachment purposes.
>
>**Defendants' designations:** None.

**(g)** an itemized statement of damages;

>Subject to the Court's rulings on Defendant's motions in limine, Saccameno will claim the following items as actual damages or pecuniary losses at the trial of this matter:
>
>1) $1130.72 applied improperly to escrow.
>2) $780.00 post-petition fees charged by Ocwen and paid by Ocwen from Saccameno's post-petition payments.
>3) $275.63 in *post*-petition funds to *pre*-petition fees (proof of claim items).
>4) $7,551.32 in post-petition payments to suspense / unapplied funds.
>5) $1,182.87 more than what was owed under the proof of claim and post-petition payments prior to Ocwen refusing to accept tendered payments.
>6) $2,480.87 in corporate advances claimed to be owed by Ocwen.
>7) Loss of Saccameno's job with Affiliated Dialysis because of the stress and worry she was experiencing dealing with Ocwen. (Saccameno has not placed a value on this item, if Defendants wish this number to be itemized Saccameno would value this as two weeks out of work, her salary was approximately $90,000, the math results in $1730.77 per week [Salary / 52 weeks] or $3461.54 for this item)
>8) Ocwen rejected 17 monthly payments from Saccameno after the discharge and before this lawsuit was filed which Ocwen still holds Saccameno responsible for in an approximate amount of $28,615.93.

8

9)      Ocwen's demand for $3,366.58 in letter Ocwen dated August 14, 2013 in response to Saccameno's Qualified Written Request that demonstrates Ocwen sought payment for at least two months of payments that Saccameno had already paid.

10)     Demand from Ocwen for an unexplained difference of $4,589.92 which Saccameno would have had to pay to "reinstate" her loan on January 19, 2015. (DOC 98-10)

11)     $4,420 paid to Sulaiman Law Group to investigate Saccameno's loan situation with Ocwen and determine an appropriate course of action. $420 of those funds are for the firm's expenses of the investigation.

12)     $90 per month for prescription costs associated with anti-anxiety and antidepressant medications prescribed by Dr. Sarantos beginning in September 2013.

13)     Time spent by Saccameno in an effort to resolve her dispute with Ocwen (Saccameno's testimony on this point will be in accord with her deposition, if Defendants require her to "guesstimate" with some degree of specificity her calculations would be approximately 20 hours a month average (accounting for days with no time and days in which she worked on it for several hours) for approximately 16 months or 320 hours. She would ask, if forced to do so, for the jury to award her time at the same rate she would earn for an hour of work (1730.77 / 40 hours = $43.27) yielding $43.27 x 320 or $13,846.40 for time spent dealing with Ocwen.

14)     Postage for certified mailings to the Credit Bureaus regarding her Ocwen mortgage account $7.46 ea x 3 = $22.38

As to general unliquidated damages:

Compensatory Damages:

The plaintiff will seek an amount as the jury deems reasonable and may award. If the plaintiff determines to ask for a specific amount from the jury plaintiff will provide the dollar amount to defendant's counsel prior to the start of trial.

Punitive Damages:

>The plaintiff will seek an amount as the jury deems reasonable and may award. If the plaintiff determines to ask for a specific amount from the jury plaintiff will provide the dollar amount to defendant's counsel prior to the start of trial.
>
>Defendants object to the admissibility of proposed evidence on damages. *See* motions *in limine*.

**(h)** for a jury trial, each party shall provide the following:
   (i)   trial briefs except as otherwise ordered by the court;
   (ii)  one set of marked proposed jury instructions, verdict forms and special interrogatories, if any; and
   (iii) a list of the questions the party requests the court to ask prospective jurors in accordance with Fed.R.Civ.P. 47(a);

The parties have been instructed not to file trial briefs.

The parties have made substantial headway in completing a full set of exhibit lists, jury instructions and additional voir dire questions while considering the proposal of a jury questionnaire and verdict forms. The parties believe they can make one submission of these documents setting out all items agreed to by the parties while discretely framing any areas of disagreement for the Court's consideration no later than Wednesday December 20. To that end, the parties have agreed not to file their respective exhibits to this Pretrial Order today to eliminate any redundant filings. The parties represent to the Court it is their good faith belief that delaying the submissions of these exhibits will result in a significant percent of all the materials ultimately submitted being agreed to by the parties.

### *Voir Dire* **Questions**

Exhibit "C-1" contains Saccameno's *voir dire* questions and Defendants' objections. Exhibit "C-2" contains Ocwen's proposed *voir dire* and Saccameno's objections.

Exhibit "D" contains Saccameno's proposed Jury Questionnaire.
Defendants object to Saccameno's proposed Jury Questionnaire for several reasons, including because it attempts to elicit feelings, beliefs and opinions that are stated in a prejudicial or biased fashion, is not an accurate or complete statement of the law, and includes requests duplicated in proposed *voir dire*.

### **Jury Instructions**

Exhibit "E-1" contains Saccameno's proposed jury instructions and Defendants' objections.   Exhibit "E-2" contains Ocwen's proposed jury instructions and Saccameno's objections.

10

**Verdict Forms**

Exhibit "F-1" contains Saccameno's proposed verdict forms and Exhibit "F-2" contains Defendants' proposed jury verdict forms

(i) a statement that each party has completed discovery, including the depositions of expert witnesses (unless the court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted; and

Defendants state that discovery has been completed, but note that if their motion for reconsideration of the denial of leave to amend answer is granted, then Defendants will promptly produce documents supporting their additional defenses.

(j) subject to full compliance with all the procedural requirements of Rule 37(a)(2), a brief summary of intended motions in *limine*. Any briefs in support of and responses to such motions shall be filed as directed by the Court.

**Saccameno and Ocwen have agreed:**

a. Not to reference any motions *in limine*;
b. Not to reference any settlement discussions in this matter;
c. To bar non-party witnesses from the courtroom prior to their testimony;
d. Not to reference the Court's prior orders in this case on motions to dismiss, motions in limine, and discovery motions;
e. Not to mention whether a party refused to stipulate to a fact;
f. Not to mention any prior versions of the complaint other than the operative complaint;
g. Not to reference a fee-shifting statute or that Saccameno may have a contingency attorney's fee agreement;
h. Not to use the following phrases: (a) McDonald's coffee cup case and its derivatives; (b) Runaway jury verdict; (c) Lawsuit lottery; (d) Frivolous lawsuit; (e) Jackpot Justice, or (f) Comparisons of the case to gambling.
i. Not to mention the size of Ocwen's attorney's law firm;
j. Not to mention liability insurance;
k. Not to mention what Saccameno would do with the proceeds from a judgment;
l. Not to mention Saccameno's religious faith;
m. The Golden Rule;
n. Not to present evidence of loss of equity in Saccameno's home;
o. Not to present a day in the life evidence for Saccameno;
p. Not to reference or present evidence of Saccameno's suicidal ideations;
q. Not to reference or present evidence of Saccameno's cancer diagnosis.

**Defendants' Motions *in Limine*:**

1. Motion *in Limine* to Preclude Testimony Regarding Job Loss
2. Motion *in Limine* to Preclude Regulatory Action Documents
3. Motion *in Limine* to Preclude Punitive Damages Request
4. Motion *in Limine* to Preclude Outside Litigation
5. Motion *in Limine* to Preclude Evidence or Testimony on Actual Damages
6. Motion *in Limine* to Preclude Evidence or Testimony From Fact Witnesses on Medical Causation

**Defendants' Pre-trial Motions:**

1. Motion to Exclude Testimony of Bernard Jay Patterson
2. Motion to Exclude Testimony of Dr. William Sarantos
3. Motion for Bifurcation

**(k)** an agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to;

The parties will not be submitting the optional statement of contested issues of fact and law.

**(l)** waivers of any claims or defenses that have been abandoned by any party.

**(3)** Trial of this case is expected to take five (5) days. It will be listed on the trial calendar for April 2, 2018, to be tried when reached.

**(4)** [*Indicate the type of trial by placing an X in the appropriate box*]

[X] Jury          [ ] Non-jury

**(5)** The parties recommend that 12 jurors be selected at the commencement of the trial.

**(6)** The parties do not agree that the issues of liability and damages should be bifurcated for trial. On motion of any party or on motion of the court, bifurcation may be ordered in either a jury or a non-jury trial. Defendants have moved to bifurcate punitive damages.

12

**(7)** [*Pursuant to 28 U.S.C. § 636(c), parties may consent to the reassignment of this case to a magistrate judge who may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case. Indicate below if the parties consent to such a reassignment.*]

    [_] The parties consent to this case being reassigned to a magistrate judge for trial.

**(8)** This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

**(9)** Possibility of settlement of this case was considered by the parties.

    The parties do not believe the case can be settled.


                                                                        Joan B. Gottschall
                                                                        United States District Judge

Date: December 15, 2017

*/s/ Nick Wooten*
Nick Wooten
Nick Wooten, LLC
4935 Bay Hill Drive
Conway, Ar. 72034
(334) 497 – 2132 (mobile)
nick@nickwooten.com

Mohammed O. Badwan
Ross M. Zambon (*Of Counsel*)
Ahmad Tayseer Sulaiman
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8181 (office)
mbadwan@sulaimanlaw.com
rzambon@sulaimanlaw.com
ahmad.sulaiman@sulaimanlaw.com

*Attorneys for Plaintiff*

*/s/ Alexander D. Bono*
Alexander D. Bono
Lynne E. Evans
Kelly K. Huff
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1181 (office)
abono@duanemorris.com
leevans@duanemorris.com
kkhuff@duanemorris.com

*Attorneys for Defendants*