**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MONETTE E. SACCAMENO, | ) |
| | ) |
| Plaintiff, | ) Case No. 15 C 1164 |
| | ) |
| | ) Judge Joan B. Gottschall |
| v. | ) |
| | ) |
| OCWEN LOAN SERVICING, LLC, and | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| as trustee for C-BASS MORTGAGE LOAN | ) |
| ASSET-BACKED CERTIFICATES, Series | ) |
| 2007 RP1, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Monette Saccameno ("Saccameno") sued Ocwen Loan Servicing, LLC

("Ocwen") and U.S. Bank National Association ("U.S. Bank") (Ocwen and U.S. Bank together,

"defendants"),[1] alleging that they engaged in wrongful loan-servicing and debt-collection

practices. Before the court are motions by the defendants seeking reconsideration of two of the

court's rulings—one denying their motion for partial summary judgment and one denying their

motion for leave to amend their answer. For the reasons discussed below, both motions are

denied.

## I. Background[2]

---

[1] Although the complaint names both U.S. Bank and Ocwen as defendants, Saccameno's claims are based almost entirely on Ocwen's conduct. Insofar as her claims are asserted against U.S. Bank, they are based on a theory of vicarious liability. *See* 2d Am. Compl. ¶ 7. Thus, as in previous opinions, the court here uses "Ocwen" and "defendants" interchangeably.

[2] A more detailed account of the factual background to the litigation can be found in the court's previous opinions. *See Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2017 WL

In 2008, Saccameno fell behind on her mortgage payments and ultimately defaulted on her mortgage loan. This prompted U.S. Bank to accelerate the entire balance of the loan and to begin foreclosure proceedings on Saccameno's home. In December 2009, Saccameno filed for bankruptcy. She received a discharge in 2013. However, Ocwen mistakenly coded Saccameno's bankruptcy discharge as a dismissal. As a result, Ocwen continued attempts to collect from Saccameno amounts that had in fact been discharged in the bankruptcy proceedings. From October 2013 to February 2015, Saccameno sent monthly mortgage payments to Ocwen. Because Ocwen's records indicated that the payments failed to cure Saccameno's default, Ocwen returned the payments. Saccameno contacted Ocwen repeatedly over the course of these months in an effort to rectify the error. Her efforts proved unavailing until shortly after she filed the instant suit. In the meantime, Saccameno says, she suffered from depression and anxiety, living in constant fear that she would lose her home. She further alleges, among other things, that she was so distraught by her ongoing difficulties with Ocwen that she was unable to perform her job and was ultimately fired.

Saccameno asserts claims against the defendants for: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 810 ILCS 505/1 *et seq*; (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*.; (4) breach of fiduciary duty; and (5) violation of a bankruptcy court's discharge injunction.

In June 2017, Ocwen moved for partial summary judgment as to Saccameno's ICFA, breach-of-contract, and breach-of-fiduciary-duty claims, as well as her request for punitive damages. On November 8, 2017, the court granted the motion as to Saccameno's claim for

5171199 (N.D. Ill. Nov. 8, 2017); *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2015 WL 7293530 (N.D. Ill. Nov. 19, 2015).

breach of fiduciary duty but denied the motion in all other respects. *See Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2017 WL 5171199 (N.D. Ill. Nov. 8, 2017).

On November 29, 2017, Ocwen moved to amend its answer to include two additional affirmative defenses to Ocwen's FDCPA claims. *See* Defs.' Mot. to Am. Answer, ECF No. 162. After a hearing, the court denied the motion. *See* Minute Order, Dec. 1, 2017, ECF No. 169. Ocwen subsequently filed separate motions seeking reconsideration of the court's rulings denying its motion for partial summary judgment and its motion to amend. The court addresses each motion in what follows.

## II. Legal Standard

Motions to reconsider are typically brought pursuant to Federal Rule of Civil Procedure 59(e). It is well-settled, however, that Rule 59(e) motions apply only to final orders. *See, e.g.*, *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (noting that "a traditional Rule 59(e) motion to reconsider … can only follow a 'judgment'"). By contrast, the orders at issue in Ocwen's motions to reconsider—the court's denial of its motion for summary judgment and its motion to amend—are interlocutory. *See, e.g.*, *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018) ("It is basic procedural law that a denial of summary judgment is an interlocutory ruling."); *Infra-Metals Co. v. 3600 Michigan Co.*, No. 209-CV-170RM, 2009 WL 5322948, at *8 (N.D. Ind. Dec. 28, 2009) (denial of a motion to amend is an interlocutory order). Motions to reconsider interlocutory orders are governed by Federal Rule of Civil Procedure 54(b), which "provides that any order that does not resolve all claims as to all parties 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *See, e.g.*, *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015) (quoting Fed. R. Civ. P. 54(b)); *Galvan*, 678 F.3d at 587 ("Rule 54(b) governs non-final orders

and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider [interlocutory orders].").

Nevertheless, the standard applicable to motions to reconsider under Rule 54(b) is largely identical to that of Rule 59(e). *See, e.g.*, *Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09 C 4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011) ("The standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b)."). "In general, motions for reconsideration are 'viewed with disfavor,' and they are granted 'only in the rarest of circumstances and where there is a compelling reason.'" *United States v. Givens*, No. 12 CR 421-1, 2016 WL 6892868, at *2 (N.D. Ill. Nov. 23, 2016) (quoting *HCP of Ill., Inc. v. Farbman Grp. I, Inc.*, 991 F. Supp. 2d 999, 1000 (N.D. Ill. 2013)). "Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008) (quotation marks omitted). Courts have repeatedly admonished litigants that a "motion to reconsider is not at the disposal of parties who want to 'rehash' old arguments that previously were made and rejected, or to raise new arguments or evidence that could have been previously offered." *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 766 (N.D. Ill. 1998) (citation and quotation marks omitted). In short, "[a] party moving for reconsideration bears a heavy burden." *Caine v. Burge*, 897 F. Supp. 2d 714, 716–17 (N.D. Ill. 2012) (citing *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

### III. Discussion

#### A. Ocwen's Motion to Reconsider the Court's Summary Judgment Ruling

The court first addresses Ocwen's motion to reconsider the court's ruling denying its motion for partial summary judgment. Ocwen contends that the court erred in two main respects:

(1) by concluding that Saccameno had presented evidence of actual damages to support her

ICFA and breach-of-contract claims; and (2) by failing to consider certain issues pertaining to

Saccameno's request for punitive damages. The court considers these contentions in turn.

## 1. Actual Damages

In its motion for summary judgment, Ocwen argued that Saccameno had failed to present

sufficient evidence that she had incurred actual damages (i.e., damages entailing a pecuniary

loss) as a result of Ocwen's conduct. Because there can be no recovery for violation of the ICFA

or for breach of contract without a showing of actual damages, *see, e.g.*, *Camasta v. Jos. A. Bank

Clothiers, Inc*., 761 F.3d 732, 739 (7th Cir. 2014), Ocwen contended that it was entitled to

summary judgment on these claims. The court disagreed, holding that Saccameno had adduced

sufficient evidence from which a jury could conclude that she suffered actual damages in the

form of: (1) the loss of her job; and (2) her out-of-pocket costs for prescription medications.[3]

Ocwen's overarching contention in its motion to reconsider is that the court failed to offer

any "evaluation of the admissibility of Saccameno's evidence of [her] 'pecuniary losses.'" Defs.'

Mot. Reconsideration Denial Partial Summ. J. ("MTR Mot. Summ. J.") 6, ECF No. 170. Ocwen

is correct that the court did not address the admissibility of Saccameno's evidence. The reason

for this, quite simply, is that it was unnecessary to do so. Ocwen's motion for summary judgment

raised few objections based on admissibility. Instead, Ocwen's objections principally challenged

the *sufficiency* of Saccameno's evidence. To the extent that Ocwen raised any admissibility

objections, these were directed at evidence irrelevant to the court's ruling.

---

[3] In her response to Ocwen's summary judgment motion, Saccameno presented a list that
included what she regarded as several additional examples of actual damages. *See* Pl.'s Ex. K,
ECF No. 140-11. Having found that Saccameno's evidence of lost income and medication
expenses were sufficient to survive summary judgment, the court did not address the other items
on her list. *See Saccameno*, 2017 WL 5171199, at *4 n.4.

For example, Ocwen objected to Saccameno's citation to consent judgments that Ocwen had entered into with the New York State Department of Financial Services. In her Local Rule 56.1 Statement of Additional Material Facts, Saccameno cited the consent judgments, which identified deficiencies in Ocwen's infrastructure and loan-servicing practices, to show that "Ocwen has a history as a recidivist violator of the discharge injunction." Pl.'s L.R. 56.1 Stmt. Add'l Material Facts ¶ 40, ECF No. 142. In addition to challenging the relevance of the consent judgments, Ocwen claimed that the evidence was inadmissible under Federal Rule of Evidence 404(b) because it represented an attempt to use "admission of other wrongs in order to show conformity therewith." Defs.' Reply Br. Supp. Mot. Summ. J. 14 ECF No. 141. Ultimately, however, the consent judgments played little role in Saccameno's opposition to the summary judgment motion; and in any case, the judgments played no role in the court's ruling on the motion.

Ocwen also objected to an exhibit to Saccameno's response brief designated as "Tab K," a list created by Saccameno's counsel purporting to summarize various kinds of actual damages that she claims to have suffered. *See* Pl.'s Ex. K, ECF No. 140-11. As Ocwen pointed out, Tab K is not evidence. *See* Defs.' Reply Br. Supp. Summ. J. 2 n.2, ECF No. 141.[4] Once again, however,

---

[4] Ocwen also challenged a declaration submitted by Saccameno as part of her opposition to the summary judgment motion. *See* Pl.'s Resp. Defs.' Mot. Summ. J., Ex. M, ECF No. 140-13. In the declaration, Saccameno avers, among other things: "I was terminated from my position at Affiliated Dialysis when I couldn't focus on my work because of having to deal with Ocwen and make them understand that I was current on my loan." Saccameno Decl. ¶ 5. As an initial matter, like the consent judgments and Tab K, the court did not rely on Saccameno's declaration in denying the motion for summary judgment. Nor, in any case, did Ocwen's summary judgment briefing argue that the declaration was *inadmissible*. Rather, Ocwen maintained only that the declaration was insufficient to withstand summary judgment because it was self-serving and because it contradicted Saccameno's deposition testimony. *See* Defs.' Reply Br. Supp. Summ. J. 5-6. These objections to Saccameno's declaration are unpersuasive. The fact that the declaration may have been self-serving is not a basis for disregarding it. *See, e.g.*, *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Our cases for at least the past fifteen

the court did not rely on Tab K in deciding the motion. Rather, the court relied largely on the deposition testimony of various witnesses. It is true that the deposition testimony was cited in Tab K; but that of course does not mean that the depositions themselves are inadmissible.

In short, the court's opinion did not rely on any of the evidence whose admissibility Ocwen challenges. That the court did not address the admissibility of the evidence, therefore, affords no basis for reconsidering its opinion.

Ocwen's motion to reconsider raises a number of objections based on the admissibility of Saccameno's evidence. As emphasized above, however, "motions to reconsider [are] not an opportunity to present arguments that could have been raised previously." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). Consequently, any such objections have been forfeited for purposes of this motion. *See, e.g.*, *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017) (arguments raised for the first time in a motion to reconsider are waived). These objections may appropriately be raised in motions in limine—and Ocwen has done just that.[5] Nonetheless, for completeness, the court will address the objections raised in Ocwen's motion to reconsider insofar as they bear on the question of summary judgment.

1.      **Loss of Employment**

Saccameno claims that she lost her job due to difficulties with Ocwen. In her deposition, she testified that during the time in question she was deeply distressed about Ocwen's continued

---

years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment. We have tried often to correct the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion.") (quotation marks and citations omitted). And, as the court's opinion previously explained, Saccameno's declaration did not contradict her deposition testimony. *See Saccameno*, 2017 WL 5171199, at *3.

[5] Ocwen has filed nine motions in limine. The court will address these separately in a subsequent order.

collection efforts and her inability to resolve the situation. She testified that she brought to work each day a bag full of correspondence and other documents she had received from Ocwen, and that instead of focusing on her job, she spent much of her time at work reviewing these documents, asking for advice, and discussing the problem with her coworkers. According to Saccameno, her firing during this period was the result of her inability to focus on her work. Saccameno claims that she suffered actual damages in the form of lost income when her employment was terminated.

Ocwen first objects that Saccameno's deposition testimony regarding the reason for her termination is "speculative." According to Ocwen, "Saccameno herself was unsure why she was terminated, and testified that her employer did not give her a reason." MTR Mot. Summ. J. 8. Ocwen cites a portion of Saccameno's deposition where, after being asked what reason her employer gave her for terminating her employment, she stated: "They didn't really. It's not working out." Saccameno Dep., Pl.'s Ex. 12, 172:9-11, ECF 133-11.

Ocwen's characterization of Saccameno's testimony is only partially correct: while Saccameno states that her employer "didn't really" give a specific reason for her termination, she does not say that she was unsure why she was terminated. It is true that, without an explicit statement by her employer as to why she was fired, it requires an inference to conclude that Saccameno was fired because of her inability to focus on her work. But that does not render her contention "speculative" in any pejorative sense. *See, e.g.*, *Senner v. Northcentral Tech. Coll.*, 113 F.3d 750, 757 (7th Cir. 1997) (cautioning against equating "reasonable inference" with "speculation"). An inference is properly deemed "speculative" if it is unsupported by facts or evidence. *See, e.g.*, *Lavender v. Kurn*, 327 U.S. 645, 653 (1946) (holding that "[w]henever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a

measure of speculation and conjecture is required," and that such "speculation" is impermissible only "when there is a complete absence of probative facts to support the conclusion"); *Visser v. Packer Eng'g Assocs., Inc*., 924 F.2d 655, 659 (7th Cir. 1991) ("[A]ll knowledge is inferential—and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.") (citations omitted).

Here, it is simply inaccurate to say that there is "a complete absence of probative facts" to support Saccameno's claim that she was fired because of her problems with Ocwen. Saccameno has presented evidence (particularly, her testimony and the testimony of her coworker, Jill Anderson ("Anderson") that the distress caused by her ongoing difficulties with Ocwen left her unable to concentrate on her job, and that, during the same period, she was terminated. On summary judgment, the evidence must be viewed, and all reasonable inferences must be drawn, in Saccameno's favor. *See, e.g.*, *Reid v. Wal-Mart Stores, Inc*., 274 F. Supp. 3d 817, 821–22 (N.D. Ill. 2017) ("When reviewing a motion for summary judgment, the Court examines the record in the light most favorable to the non-moving party and makes all reasonable inferences in her favor."). Saccameno is not required to prove her case at the summary judgment stage. *See, e.g.*, *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) ("To survive summary judgment, [the non-moving party] need not prove his claim; he need only show that there is a genuine issue of material fact."). Nor is the court permitted on summary judgment to weigh evidence or make credibility determinations. *See, e.g.*, *Valentine v. Joliet Twp. High Sch. Dist. No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). ("[I]n ruling on a motion for summary judgment the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence or the credibility of witnesses."). When the evidence is

viewed in this light, the court is satisfied that a jury could reasonably conclude that Saccameno lost her job due to her ongoing problems with Ocwen.

Ocwen insists that Saccameno's testimony alone cannot be "a sufficient basis upon which a jury could reasonably find she suffered damages." Defs.' Reply Mot. Supp. Summ. J. 3. Simply put, that is not the law. The Seventh Circuit has repeatedly held that a plaintiff may defeat summary judgment based solely on his or her own testimony, whether in a deposition, *see, e.g.*, *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) ("We have long held that a plaintiff may defeat summary judgment with his or her own deposition."), or an affidavit, *see, e.g.*, *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Our cases for at least the past fifteen years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment. We have tried often to correct the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion.") (quotation marks and citations omitted).

Ocwen also takes issue with the court's reliance on Anderson's testimony. Ocwen points out, for example, that Anderson did not supervise Saccameno and was not responsible for evaluating her job performance; that Anderson never testified to having been involved in the managerial decision to terminate Saccameno; and that she never testified to having personally witnessed Saccameno's firing. As a result, Ocwen concludes that "Anderson completely lacks any personal knowledge of the official reason" for Saccameno's termination. MTR Mot. Summ. J. 7.

This is true as far as it goes; but nothing in the court's opinion suggested that Anderson was competent to testify regarding the "official reason" for Saccameno's termination. The court noted that Anderson had personally witnessed Saccameno's behavior at work—she testified, for

example, that Saccameno talked about the Ocwen situation on a daily basis while at work, and that she (Anderson) admonished Saccameno that she wasn't getting any work done. The court opined that Anderson was "perfectly competent to testify to regarding such matters." *Saccameno*, 2017 WL 5171199, at *3. Anderson's testimony is significant because her personal observations regarding Saccameno's behavior at work provide some corroboration for Saccameno's testimony, not because she is purported to have been privy to "official information" regarding the reason for Saccameno's termination.

Next, Ocwen objects that Saccameno's testimony regarding the reason for her firing constitutes "rank hearsay." Once again, given that Ocwen did not raise this objection in its motion for summary judgment, it cannot now be offered as a basis for reconsidering the court's ruling on the motion. *See, e.g.*, *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (noting that motions to reconsider are not an opportunity to present arguments that could have been raised previously). Under other circumstances, the court might nevertheless be inclined to address the issue. For several reasons, however, the court believes that doing so would not be fruitful. For one thing, Ocwen raises the hearsay issue in its motions in limine. *See, e.g.*, Defs.' Mot. in Limine Preclude Testimony Regarding Loss of Job, ECF No. 183. Since the court will have occasion to address the issue in ruling on that motion, it is unnecessary to do so here.

In addition, the parties' treatment of the hearsay issue in their briefing on the motion to reconsider leaves much to be desired. For example, Ocwen's primarily relies on *Stephens v. Erickson*, 569 F.3d 779 (7th Cir. 2009). However, Ocwen does not discuss the opinion in any depth, and on examination, it bears little resemblance to the present case. The plaintiff in *Stephens* sought to prove that her firing had been retaliatory by relying on a coworker's

testimony about what other employees had said about what the plaintiff's supervisor had said about the plaintiff. *Id*. at 792-93.

Saccameno's discussion of the hearsay issue is even more cursory. In order to determine whether the testimony is question is hearsay, the court must know the purpose for which Saccameno intends to use it. It is hearsay only if Saccameno intends to use the testimony for the truth of the matter asserted. *See, e.g.*, *Malin v. Hospira, Inc.*, 762 F.3d 552, 555 (7th Cir. 2014) (statement does not constitute hearsay where it is not offered to prove the truth of matter asserted). Saccameno's briefing on the motion to reconsider does not address this question.

For present purposes, what the court can say is that its ruling on summary judgment would stand regardless of whether Saccameno's testimony regarding her employer's explanation for her termination ultimately is deemed hearsay. Even by Saccameno's own account, her employer's comments are vague. Indeed, Saccameno suggests that her employer's explanation that "things [weren't] working out" was no real answer at all. While the employer's alleged comments are consistent with Saccameno's account of why she was fired, they neither strongly support her position nor strongly undermine it. As explained above, and in the court's summary judgment opinion, Saccameno's and Anderson's testimony are sufficient to allow a jury reasonably to conclude that Saccameno was fired as a result of her difficulties in dealing with Ocwen.

Ocwen's final argument is that "even if there was admissible evidence on why she lost her job, there is no evidence that the job loss caused Saccameno any pecuniary loss or actual damages." MTR Mot. Summ. J. 8. Ocwen points out that the record contains no evidence of "lost wages, accepted or rejected unemployment claims, or other itemized, documented damages." MTR Mot. Summ. J. 8-9. Even without such documentary evidence, however, it is entirely

reasonable to infer that Saccameno lost income, and thus incurred actual damages, when she lost her job. The lack of documentary evidence might be used at trial to challenge Saccameno's testimony that she incurred pecuniary loss as a result of her firing; but such evidence is not necessary to defeat a motion for summary judgment.

Also beside the point is Ocwen's contention that Saccameno found another job shortly after her termination.[6] If true, this might be used to show that Saccameno's pecuniary loss was minimal, but it would not entitle Ocwen to summary judgment. In order to prevail on summary judgment, Ocwen would need to show that there was no evidence that Saccameno suffered *any* pecuniary loss as a result of her termination (or any other event allegedly caused by Ocwen). Thus, the length of time during which Saccameno remained unemployed is irrelevant to the court's denial of Ocwen's motion for summary judgment.

For these reasons, the court declines to reconsider its conclusion that Saccameno has offered evidence sufficient to survive summary judgment that she suffered actual damages due to her loss of employment.

### 2.       Prescription Costs

As a second type of actual damages, Saccameno cites amounts she spent on prescription medications to treat the anxiety and depression that she alleges she has experienced as a result of her difficulties with Ocwen. Ocwen's motion for reconsideration asserts that the court erred in concluding that Saccameno had presented sufficient evidence that she in fact incurred such costs. Ocwen surmises that any medication costs might have been covered by Saccameno's health insurance.

---

[6] In the pretrial order, Saccameno states that she was unemployed for two weeks and estimates a loss of $3,461.54. *See* Proposed Pretrial Order, ECF No. 174, at 8.

The court disagrees. During her deposition, Saccameno testified that she currently had no insurance. *See* Saccameno Dep. at 142:9-15 ("A. I'm -- it's -- I mean, that's -- my insurance doesn't pay for my pills….Q. Your health insurance doesn't provide prescription coverage? A. No. I currently don't even have health insurance.").[7] True, Saccameno's testimony leaves unclear whether she might have been covered by health insurance at an earlier point during the relevant time period, and if so, whether and to what extent her insurance might have covered her prescription costs. Nevertheless, viewing the testimony in the light most favorable to Saccameno, it can reasonably be inferred that she incurred out of pocket expenses for her medications (either because she was uninsured or because any insurance she might have had did not cover the full cost of the prescriptions).

The court therefore denies Ocwen's motion to reconsider insofar as it claims that the court erred in its analysis of Saccameno's evidence of actual damages.

**3. Punitive Damages**

Finally, Ocwen asks the court to reconsider its holding regarding the evidence cited by Saccameno in support of her claim for punitive damages.[8]

Ocwen first contends that the court erred by failing to address the question of whether, for purposes of Saccameno's bankruptcy discharge claim, the issue of punitive damages is

---

[7] In the declaration that she submitted in opposition to Ocwen's summary judgment, Saccameno likewise avers that she pays for her own prescription costs. *See* Saccameno Decl. ¶ 3 ("I pay my own prescription costs and incur approximately $90 per month in costs associated with filling my prescriptions for my anti-anxiety and antidepressant medications prescribed by Dr. Sarantos."). Like her deposition testimony, however, the declaration is unclear as to whether Saccameno has paid out of pocket for her medications during all of the relevant time period.

[8] Although Saccameno seeks punitive damages in connection with both her claim under the ICFA and her claim that Ocwen violated her bankruptcy discharge order, the arguments in Ocwen's motion to reconsider center on Saccameno's claim for punitive damages based on the discharge order.

properly decided by the court or by a jury. It is true that the court's summary judgment opinion did not resolve this question. Indeed, the court expressly declined to address the issue, explaining that the question had been raised only in Ocwen's reply brief and therefore had not been adequately briefed.[9] The court further explained that it was unnecessary to decide the issue for purposes of Ocwen's summary judgment motion. Rather, the summary judgment motion raised the question only of whether the record contained evidence of conduct on Ocwen's part that was egregious enough to warrant the imposition of punitive damages. *Saccameno*, 2017 WL 5171199, at *8 n.8.

Ocwen's motion to reconsider nevertheless insists that the court "should address, as a matter of law, and before trial to avoid a manifest error, the basis for permitting a jury to award punitive damages for alleged violation of the statutory injunction." MTR Mot. Summ. J. 13. Ocwen is correct that this issue should be resolved before trial; but that is what motions in limine are for. Raising the issue in a motion to reconsider is improper because the issue simply has no bearing on the court's summary judgment ruling. The question of whether Ocwen's conduct is sufficient to justify an award of punitive damages is completely distinct from the question of

---

[9] Ocwen says that in holding that the issue had not been adequately briefed, the court "incorrectly ignore[d] that Defendants had to raise [the issue] in their reply because Saccameno incorrectly suggested in her opposition, for the first time, that punitive damages should go to the jury on the ICFA count." MTR Mot. Summ. J. 12 (quotation marks omitted). The court agrees that Ocwen could not have been expected to address the issue earlier. The court's point, however, was not that Ocwen should be penalized for failing to raise the issue earlier. It was merely that, given that briefing on the issue was limited to Ocwen's reply, the court did not have the benefit of hearing from both parties on the question, and that, accordingly, ruling on the issue would have been premature.

whether the final determination on the issue of punitive damages must be made by the court or a jury.[10]

Ocwen's motion to reconsider additionally argues that the court's opinion contained "no legal analysis or cited authority supporting how a jury could find that evidence of delay or error met [the] elevated standard of misconduct" necessary to award punitive damages for violation of a bankruptcy discharge order. MTR Mot. Summ. J. 14. Even is this charge were true, however, it would not necessitate reconsideration of the court's opinion. Ocwen's objection on this point makes no reference to an error of apprehension, a change in the law, or new evidence. Its complaint is that the court's treatment of the issue is insufficiently verbose, which is assuredly not a basis for seeking reconsideration.

In any case, a more extensive discussion of the punitive damages issue was not necessary. For one thing, the court was not making a final determination as to whether punitive damages should be awarded. The issue before the court was only whether the record in this case could possibly support such an award. The answer to the latter question is not terribly complicated. As Ocwen observes, "'[p]unitive sanctions for violations of the discharge injunction require actions taken with either a malevolent intent or a clear disregard and disrespect of the bankruptcy laws and . . . it is not sufficient to merely show that the actions were deliberate.'" MTR Mot. Summ. J. 14 (quoting *Romanucci & Blandin, LLC v. Lempesis*, No. 16 C 9710, 2017 WL 4401643, at *7 (N.D. Ill. May 4, 2017)). Based on the record in this case, it would be reasonable to conclude that

---

[10] After Ocwen filed its motion to reconsider, the parties submitted a stipulation according to which Saccameno's bankruptcy discharge claim would be severed from her other claims. The stipulation further provides that after the jury trial on the other claims, Saccameno may seek a bench trial for the bankruptcy discharge claim. *See* ECF No. 193. This arrangement would resolve the question of whether punitive damages for Saccameno's bankruptcy discharge claim should be decided by the court or a jury. However, for legal as well as logistical reasons, the court is not prepared to accept the stipulation without further discussion. This matter can be taken up at the pretrial conference.

this standard is met. It is undisputed that, despite receiving notice in July 2013 that Saccameno had received a bankruptcy discharge, Ocwen mistakenly coded the event as a dismissal. Further, despite what would appear to be the elementary nature of the error, and despite Saccameno's repeated attempts to bring the problem to Ocwen's attention, the error went uncorrected for more than a year. Ocwen's initial miscoding of the discharge, together with the length of time that it took Ocwen to correct the error, could reasonably support the conclusion that Ocwen exhibited "a clear disregard and disrespect of the bankruptcy laws."[11]

Ocwen goes on to argue that Illinois law requires the consideration of several additional factors in determining whether to award punitive damages for violation of the discharge injunction: These include: "'(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor.'" MTR Summ. J. 14 (quoting *Romanucci*, 2017 WL 4401643, at *7). Notably, however, Ocwen's own summary judgment motion made no mention of these factors. And while the factors are mentioned in its motion to reconsider, Ocwen offers no substantive discussion as to why they militate against an award of punitive damages in this case. The court thus reminds Ocwen that "it is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (quotation marks omitted); *cf. Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 230 (7th Cir. 1992) ("The responsibility for the identification, framing, and argument of the issues on appeal is that of the lawyers, not that of the judges. If we assume the lawyers' responsibilities, we unbalance the market for legal services

---

[11] The court here expresses no view as to whether the case for punitive damages would be strengthened by evidence of the consent judgments that Ocwen entered into with the New York State Department of Financial Services and with other regulatory agencies; nor does the court express a view as to whether such evidence would be admissible at trial. The latter issue is the subject of a motion in limine, which the court will address in a separate order.

and take time away from our consideration and decision of other cases."). In any case, Ocwen's statement of the law is incorrect. The case on which it relies says only that the factors in question are ones "that *may* be considered in determining whether punitive damages are appropriate for a creditor's violation of the [discharge injunction]." *Romanucci*, 2017 WL 4401643, at *7. It does not state that the factors *must* be considered.

In sum, Ocwen has failed to show that the court erred in denying Ocwen's motion for summary judgment with respect to the issue of punitive damages. Because Ocwen has likewise failed to show that the court erred in rejecting Ocwen's arguments regarding Saccameno's evidence of actual damages, the court denies Ocwen's motion to reconsider the court's denial of its motion for summary judgment.

## B.    Ocwen's Motion to Reconsider the Court's Denial of its Motion to Amend

The court now turns to Ocwen's motion to reconsider the court's decision denying its motion for leave to amend its answer. Defs.' Mot. Reconsideration Denial Mot. Leave to Am. Ans. ("MTR Mot. to Am."), ECF No. 161. On November 28, 2017—more than a year after Saccameno's operative complaint had been filed, months after the close of discovery (May 19, 2017), and after the court had ruled on Ocwen's motion for partial summary judgment—Ocwen sought to amend its answer pursuant to Federal Rule of Civil Procedure 15(a)(2).[12] Ocwen's motion sought to assert two new statutory defenses to Saccameno's FDCPA claim. The first is the FDCPA's so-called "bona fide error" defense, which absolves debt collectors of liability if they can "show[] by a preponderance of evidence that the violation [of the act] was not

---

[12] Although the court had ruled on Ocwen's motion for summary judgment before Ocwen filed its motion to amend, Ocwen apparently believed that the summary judgment motion was still pending. *See, e.g.*, Mot. to. Am. 10 ("Because there is no trial schedule yet in place, and Defendants' motion for partial summary judgment is still pending, reopening limited discovery for a narrow window of time, for example 30-45 days, will not cause any undue delay to this litigation.").

intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The second defense is based on the FDCPA's $1,000 cap on statutory damages, 15 U.S.C. § 1692k, and seeks to limit Saccameno's recovery on her FDCPA claim to this amount.

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15. Rule 15(a)(2) provides that (after the deadline has passed to amend as a matter of course under Rule 15(a)(1)) "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although Rule 15(a)(2) provides that the "court should freely give leave [to amend] when justice so requires," *id.*, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice …, or where the amendment would be futile," *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

On December 1, 2017, the court held a hearing on Ocwen's motion to amend. *See* Hr'g Tr., ECF No. 217. The court denied the motion, explaining that adding the defenses at this late stage of the litigation would require the court to reopen discovery, delaying trial and causing prejudice to Saccameno. Hr'g Tr. 11:15-16. Additionally, the court observed that Ocwen had not merely neglected to assert the bona fide error defense earlier in the litigation. Ocwen in fact had specifically *refused* Saccameno's discovery requests for Ocwen's policies and other documents that would have been relevant to the defense on the ground that such materials were not relevant. Hr'g Tr. 11:7-9. In a minute order entered following the hearing, the court summed up its ruling thusly: "Defendants have not shown good cause to modify the scheduling order to reopen discovery, see Fed. R. Civ. P. 16(b)(4), and adding the bona fide error defense would result in undue delay and prejudice (and may be futile) given defendants' history of contending that issues

19

relevant to the defense were irrelevant during discovery, see Fed. R. Civ. P. 15(a)(2)." Minute Order, Dec. 1, 2017, ECF No. 166.

Ocwen's motion to reconsider asserts that the court's ruling is erroneous in several respects. Although some of these apply to both of the affirmative defenses Ocwen seeks to include in its amended answer, the court addresses each defense separately.

## 1.     The Bona Fide Error Defense

Ocwen first argues that the court erred in denying it leave to assert the bona fide answer defense. Ocwen contends that in her opposition to the motion to amend, Saccameno failed to raise a sufficient basis for denying the motion. Specifically, Ocwen contends that Saccameno's objection to allowing Ocwen to assert the defense was based entirely on the claim that Ocwen had engaged in undue delay. According to Ocwen, undue delay alone is not enough to justify denying leave to amend. Rather, Ocwen claims, a party opposing a motion to amend must also show that it will suffer prejudice as a result.

As an initial matter, the court notes that while some case authority supports Ocwen's statement of the law on this point, there is also case authority indicating that Ocwen overstates the matter. Some Seventh Circuit cases indeed suggest that "delay alone is not a reason to deny a proposed amendment, and that delay must be coupled with some other reason, such as prejudice to the defendants." *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 791 (7th Cir. 2011). However, other cases have used less categorical language, holding only that undue delay *typically* is insufficient to justify denial of leave to amend. *See, e.g.*, *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("Delay on its own is *usually* not reason enough for a court to deny a motion to amend. But the longer the delay, the greater the presumption against granting leave to amend.") (emphasis added) (citations and quotation marks omitted); *Dubicz v. Commonwealth*

*Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) ("[D]elay by itself is *normally* an insufficient reason to deny a motion for leave to amend.") (emphasis added).

Ultimately, however, it is irrelevant whether undue delay, without more, is a sufficient basis for denying leave to amend. For regardless of whether Saccameno raised the issue of prejudice, the court plainly did so. *See* Minute Order (Dec. 1, 2017); *see also* Hr'g Tr. 11:11-16 ("But at this point, it is highly prejudicial because I cannot imagine how anyone is going to be able to be ready for trial on this issue without substantial complicated discovery. And I just do not think that is fair at that point. That is major prejudice."); *id.* 15:1-3 ("I am not inclined to change my mind. I think this is the essence of prejudice. It is too late."). In its motion to reconsider, Ocwen insists that Saccameno will not be prejudiced because she already had the opportunity to question Ocwen's 30(b)(6) witness, Gina Feezer, regarding the company's policies and procedures. Ocwen raised the same argument during the hearing on the motion, and the court rejected it. *See, e.g.*, Hr'g Tr. 12:5-7 ("[A]ny lawyer who goes to trial based on some questions at a deposition is probably guilty of malpractice on an issue like this."). Giving Saccameno a meaningful opportunity to prepare a case against Ocwen's assertion of a bona fide error defense would require reopening discovery.[13] As the court has explained, discovery will not be reopened at this late stage.

---

[13] In its briefing on its motion to reconsider the denial of its motion to amend, Ocwen states that "[w]here the moving party represents that no additional discovery will be needed, postdiscovery amendments are deemed not to prejudice the non-moving party and, thus, are allowed." MTR Mot. to Am. 6. On its face, this suggests that in deciding a motion to amend, courts should simply accept a party's say so as to whether the amendment will entail any further discovery. Such a proposition is utterly implausible on its face. Nor do either of the cases Ocwen cites in support of this claim—*Grun v. Pneumo Abex Corp.*, No. 90 C 5273, 1993 WL 13411 (N.D. Ill. Jan. 21, 1993), or *Manuel v. Int'l Harvester Co.*, 502 F. Supp. 45, 51–52 (N.D. Ill. 1980)— support such a proposition. In both cases, the courts granted leave to amend based on the possibility of reopening discovery. *See Grun*, 1993 WL 13411, at *3; *Manuel*, 502 F. Supp. at 51–52.

Moreover, Ocwen ignores the fact that, even without prejudice to the parties, the burden on the court, and the judicial system generally, represents an independent basis for denying leave to amend. *See, e.g.*, *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) ("The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party. Because substantive amendments shortly before trial serve to defeat the public's interest in speedy resolution of legal disputes, a district court judge is entitled, in such circumstances, to refuse to allow a plaintiff's amendment.") (citations, quotation marks, and brackets omitted); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988) ("[T]he burden to the judicial system from allowing parties to change theories in midstream is a pertinent factor and may in appropriate cases justify a refusal to allow an amendment even if the amendment would cause no hardship at all to the opposing party."). During the hearing on the motion to amend, the court expressly raised this concern. *See, e.g.*, Hr'g Tr. 8:20-9:1 ("So, you may not want to delay things, but you produced a lot of stuff that I have to decide. And I have a big docket and, you know, it is going to necessarily cause a delay. That is why I am so concerned about getting this briefed on a reasonably quick schedule, so I can do it. I have other trials coming. I have to make sure that it is not going to slow up my schedule.").[14]

Finally, the court reiterates that prior to seeking leave to amend, Ocwen refused to provide Saccameno with discovery that would have been central to the bona fide error defense, claiming that such information was not relevant. *See* Pl.'s Resp. Defs.' Mot. Amend, Ex. 1, ECF

---

[14] Ocwen briefly asserts a number of other arguments in support of its motion to reconsider— e.g., that denying Ocwen leave to amend violates its constitutional right to a fair trial, or that it runs contrary to the policy of deciding disputes on the merits. The court has considered these arguments and has found them to be either insufficiently developed or without merit (or both).

No. 164-1. As if to underscore the point even further, Ocwen failed to raise the bona fide error defense in its motion for summary judgment, even though it advanced the similar contention that Saccameno's request for punitive damages should be denied because its improper coding of her bankruptcy discharge was inadvertent. *See* Defs.' Mot. Partial Summ. J. 2, ECF No. 130. If Saccameno had any doubt as to whether the bona fide error defense might arise in the litigation, Ocwen's failure to assert it at this point would have sufficed to put it to rest. These factors make Ocwen's volte-face at this stage of the litigation particularly egregious.

In short, the court is not persuaded that it has committed a "manifest error of law," or any other error, in denying Ocwen leave to raise the bona fide error defense to Saccameno's FDCPA claim.

## 2.      The FDCPA's Damages Cap

The second affirmative defense that Ocwen seeks to assert is based on a provision of the FDCPA that limits recovery for statutory damages to $1,000. Specifically, the Act provides:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>> (1) any actual damage sustained by such person as a result of such failure;
>> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; … [and]
>> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k. Ocwen sought to amend its answer to plead that "Saccameno's recovery of damages under her FDCPA claim is limited, at most, to the $1,000 in statutory damages." Defs.' Mot. to Am. 8, ECF No. 161.

Unlike the bona fide error defense, there is no reason to think that asserting the damages cap defense would require any additional discovery. There is no dispute, for example, that §

1692k caps statutory damages at $1,000. *See* Pl.s' Resp. Br. Opp. to Mot. to Reconsider Denial

of Leave to Amend 5, ECF No. 206 ("Ocwen's argument it should affirmatively plead that no

more than $1,000 in statutory damages can be recovered for statutory damages under the FDCPA

is patently frivolous. The statute itself clearly states that is the case."); *see also* Tr. 4:16-23

("MR. WOOTEN: Well, my point about the statutory cap, your Honor, is that when Mr. Bono --

when we first talked and he spoke with me -- he wanted to raise the cap to say that the most in

statutory damages we could recover is a thousand dollars…. And I said, 'Wait, if that's your

point, we don't disagree with that.'"). But for precisely this reason, there is no need to amend the

answer to assert the defense. Especially in light of Saccameno's concession on this point, any

statutory damages she is awarded under the FDCPA will necessarily be limited to $1,000.

However, Ocwen is not merely seeking to cap Saccameno's statutory damages at $1,000;

its proposed affirmative defense seeks to limit Saccameno's *total* recovery under the FDCPA to

statutory damages, despite the fact that the Act provides for actual damages in addition to

statutory damages. *See* 15 U.S.C. § 1692k(1) (providing for recovery of "any actual damage

sustained" by individuals as a result of a debt collector's failure to comply with the FDCPA's

provisions). Ocwen does not dispute as a general matter that FDCPA plaintiffs may recover both

actual damages and statutory damages. *See* Hr'g Tr. 7:18-20 ("MR. BONO: In fairness -- in

fairness  -- we concede the statute -- the FDCPA -- allows compensatory damages above the

statute."). Ocwen nonetheless argues that Saccameno's FDCPA damages should be limited to the

$1,000 statutory cap because she has presented no evidence that she has suffered actual damages.

As discussed above, the court rejects this position. Of course, at trial, Ocwen may seek to prove

that Saccameno has not suffered actual damages, which, if effective, would effectively limit

Saccameno's recovery under the FDCPA to $1,000. But adopting such a strategy does not require Ocwen to amend its answer.

In sum, Ocwen has failed to show what purpose would be served by amending its complaint to add as an affirmative defense the contention that Saccameno's damages under the FDCPA should be limited to the $1,000 statutory amount. Consequently, the court declines to reconsider its decision denying Ocwen leave to amend its answer to assert the statutory damages cap defense.

**C.      Rule 16(b)(4)**

As a final basis for its motion to reconsider, Ocwen argues that the court applied the wrong legal standard in ruling on its motion to amend. Specifically, Ocwen contends that the court applied the "good cause" standard set forth in Federal Rule of Civil Procedure 16(b)(4)— which governs modifications to scheduling orders—rather than Rule 15(a)(2), which governs amendments to pleadings. This argument appears to rest on a misreading of the court's December 1, 2017 minute order denying Ocwen's motion to amend. The court cited Rule 16(b)(4) in holding that Ocwen had failed to provide a sufficient basis *for reopening discovery* (which would be required if Ocwen were granted leave to amend its answer); however, the court's order plainly cited to Rule 15 in denying *leave to amend*. *See* Minute Order (Dec. 1, 2017), ECF No. 169 ("Defendants have not shown good cause to modify the scheduling order to reopen discovery, see Fed. R. Civ. P. 16(b)(4), and adding the bona fide error defense would result in undue delay and prejudice (and may be futile) given defendants' history of contending that issues relevant to the defense were irrelevant during discovery, see Fed. R. Civ. P. 15(a)(2).").

Because Ocwen has failed to show that the court erred in denying its motion for leave to amend its answer, Ocwen's motion to reconsider is denied.

## IV. Conclusion

For the reasons discussed above, the court denies Ocwen's motion to reconsider the court's denial of its motion for summary judgment [170] and its motion for leave to amend its answer [172].

Date: March 9, 2018

_____/s/_____
Joan B. Gottschall
United States District Judge