# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MONETTE E. SACCAMENO, | ) |
| | ) |
| Plaintiff, | ) Case No. 15 C 1164 |
| | ) |
| | ) Judge Joan B. Gottschall |
| v. | ) |
| | ) |
| OCWEN LOAN SERVICING, LLC, and | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| as trustee for C-BASS MORTGAGE LOAN | ) |
| ASSET-BACKED CERTIFICATES, Series | ) |
| 2007 RP1, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendants have moved to bar the testimony of Bernard Jay Patterson ("Patterson"), whom Saccameno has named as an expert witness. Patterson performed a forensic examination of Ocwen's servicing of Saccameno's mortgage loan. This involved examining various documents, including raw data from Ocwen's REALServing loan servicing platform, comparing this information with the requirements of Saccameno's bankruptcy plan, and noting any discrepancies or irregularities in the application and recording of payments received from Saccameno or the Chapter 13 bankruptcy trustee. Patterson prepared a report purporting to identify, among other issues, various instances in which Ocwen misapplied funds from payments made by Saccameno or the Chapter 13 trustee—for example, where Ocwen applied funds earmarked for one purpose (e.g., pre-petition payments) for a different purpose (e.g., payment of post-petition charges).

Defendants' motion contends that Patterson's testimony and report should be excluded because he fails to qualify as an expert under Federal Rule of Evidence 702 and *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons below, the motion is denied.

> Rule 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The party seeking to introduce expert testimony bears the burden of demonstrating that the proposed testimony satisfies this standard by a preponderance of the evidence. *Lees v. Carthage Coll.*, 714 F.3d 516, 522 (7th Cir. 2013). The rule on expert testimony is liberal, and doubts about the usefulness of an expert's testimony are generally resolved in favor of admissibility." *Bellas v. Orthofix, Inc.*, No. 14-CV-9623, 2017 WL 621770, at *1 (N.D. Ill. Feb. 15, 2017).

**1.      Patterson's Knowledge, Experience, and Training**

Defendants first argue that Patterson lacks the knowledge necessary to offer expert opinions in the specific areas for which his testimony is proposed. They assert that Patterson has "no personal knowledge working in ... REALServicing." Defs.' Br. at 6. Defendants also argue that Patterson is not qualified to offer expert testimony because he has never worked for a mortgage company, loan servicer, bank, or accounting firm, and because he has no formal training in bankruptcy law.

The court disagrees. Patterson holds an accounting degree and is the owner of Full Disclosure, LLC, a company that provides "forensic and investigative accounting/auditing

relating to[, among other things,] mortgage loan servicing functions." Bernard Jay Patterson, Curriculum Vitae, ECF No. 140-1. He has practiced as a forensic accountant since 2007 and has been certified as a fraud examiner since 2009. *Id*. He has been qualified as an expert in several federal cases, including several matters involving loan-servicing practices. *See, e.g.*, *Neel v. Fannie Mae*, No. 1:12CV311-HSO-RHW, 2014 WL 1117247, at *3 (S.D. Miss. Mar. 20, 2014) ("The Court is of the opinion that Mr. Patterson's background, training, and experience in forensic accounting pertaining to the area of mortgage loan servicing provides sufficient specialized knowledge to qualify him to offer testimony consistent with the Report related to the accounting analysis he has performed in this case."); *see also Ishee v. Fed. Nat. Mortg. Ass'n*, No. 2:13-CV-234-KS-MTP, 2015 WL 224800, at *6 (S.D. Miss. Jan. 15, 2015). An exhibit attached to Patterson's curriculum vitae lists numerous other cases in which he has served as an expert, at least ten of which are other federal cases involving loan-servicing issues. During his deposition, Patterson additionally testified that he has never been disqualified as an expert. Dep. 45:19-21.

Moreover, despite defendants' claim to the contrary, Patterson has experience working with Ocwen's REALServicing platform. Defendants point to Patterson's acknowledgment during his deposition that he did not "have any personal knowledge working in any capacity with regard to actually how [the REALServicing system] work[s]." Patterson Dep. at 36:19-21. Patterson subsequently clarified, however, that this meant only that he had never "sat down at a [computer] terminal" running the REALServicing platform. He testified that he possesses "expertise in how [the servicing platforms] work and what their output is." *Id*. at 36:22-26; *see also id*. at 40:9-20 ("With regard to operating systems, do you have any personal knowledge as to how REALServicing works? A. I have personal knowledge as to what their system output is and what

3

format it's in and how to interpret that. Q. But you've never sat down in front of a computer -- A. I've never sat down at a terminal, no. I've never sat down at a terminal, but I'll be happy to if someone would let me. Q. That's fair.").

The court also assigns little importance to the fact that Patterson has never worked for a mortgage company, loan servicer, bank, or accounting firm, and that he has no formal training in bankruptcy law. By its plain terms, Rule 702 makes clear that expertise may be gained in a variety of ways—"by knowledge, skill, experience, training, or education." Qualification as an expert does not require any particular kind of employment. When questioned during his deposition, Patterson showed a firm understanding of bankruptcy procedure as it relates to this case.

In short, the court concludes that Patterson's education, training, and experience qualify him to testify as an expert regarding Ocwen's servicing of Saccameno's loan.

**2.      Whether Patterson's Testimony Will Assist the Jury**

Defendants next argue that Patterson should not be qualified as an expert because his testimony will not assist the jury in determining any fact relevant to the litigation. According to defendants, Patterson's analysis consists merely of reading records that speak for themselves. They claim that a jury is perfectly capable of interpreting the documents and making the necessary mathematical calculations on its own.

Other courts that have qualified Patterson as an expert have expressly rejected this argument. *See Ishee*, 2015 WL 224800, at *6 ("Defendant seek[s] the exclusion of Patterson's summaries of payment and transaction histories, arguing that the subject matter does not require scientific, technical, or other specialized knowledge, and will not assist the jury. The Court disagrees, as the transaction records may be difficult for an average juror to understand. In fact

the Court believes it safe to assume that an average juror may have difficulty understanding how their own mortgage payments are applied. Understanding banking records can sometimes require more than 'the ability to read,' as Defendant urges. Patterson's explanation of the sequence of events may, at the very least, help the jury to understand what occurred."); *Neel*, 2014 WL 1117247, at *1 (rejecting argument that "Patterson's opinions do not pass *Daubert* scrutiny because they are simply a 'regurgitation' of [defendant's] payment history and servicing notes and they do not qualify as scientific or technical"). The reasoning of these courts is equally applicable here. The materials on which Patterson bases his conclusions—Ocwen's transaction histories, payment reconciliations, and comment logs—are voluminous and not easily deciphered. Patterson's testimony regarding the relevant data will assist the jury.

Defendants further maintain that Patterson's testimony will not assist the jury because his report covers a number of issues that are undisputed in the case. But defendants identify only four such issues.[1] The inclusion of these points in Patterson's report is hardly a reason for excluding his testimony or report *in toto*. Similarly, defendants take issue with the fact that Patterson's analysis traces Saccameno's account history back to before she declared bankruptcy. This will not assist the jury, defendants insist, because Saccameno's claims are based only on conduct occurring after she filed for bankruptcy. Defs.' Br. at 12. Again, this represents only a minor portion of Patterson's analysis and is no basis for excluding his testimony and report in their entirety.

---

[1] The undisputed conclusions are that: (1) defendants did not file any notice of post-petition payment changes or fees during the life of Saccameno's bankruptcy plan; (2) the Chapter 13 Trustee paid all of the $22,552.08 in pre-petition arrearages to Ocwen (and its predecessor, Litton); (3) defendants did not respond to the Notice of Final Cure sent to Ocwen by the Chapter 13 Trustee; and (4) that Saccameno's bankruptcy plan was discharged on June 27, 2013.

However, it is necessary to pause here to clarify more precisely the relevance of Patterson's testimony. Specifically, it is important to note that Saccameno does not offer Patterson as a damages expert. *See, e.g.*, Pl.'s Resp. Br. at 2, ECF No. 210. While Saccameno purports to rely on Patterson's findings in alleging certain monetary damages, Patterson himself does not opine as to whether Saccameno was economically harmed. As Saccameno puts it, "Patterson 'followed the money' while Saccameno's counsel converted his findings into claims of economic damages." *See* Pl.'s Resp. Br. at 3. But Saccameno has failed to convert Patterson's findings into economic damages. For example, among the damages Saccameno lists in the pretrial order are "$2,480.87 in corporate advances claimed to be owed by Ocwen," and "$275.63 in post-petition funds to pre-petition fees." PTO at 8. However, Saccameno does not allege that she actually paid the $2,480.87; nor does she explain how the application of $275.63 in post-petition funds to pre-petition fees resulted in any concrete economic harm to her.

For this reason, if Patterson's testimony were relevant solely to the issue of economic damages, his testimony might be of no assistance to the jury. Beyond her claims for damages, however, Saccameno asserts that Patterson's testimony is relevant to certain factual disputes necessary to resolve questions of liability. She contends:

> Defendants' positions and defense theory asserts [sic] that, inter alia, Saccamento [sic] (a) did not make all payments due under the chapter 13 bankruptcy plan covering 42 months, including amounts required under the proof of claim for the underlying mortgage loan and post-petition payments; (b) Saccameno's loan was never contractually current after completion of the chapter 13 bankruptcy (2013 to the present); (c) Ocwen applied Saccameno's payments to the loan account correctly; [d] Saccameno was in default post-discharge; [e] Ocwen's handling and application of Saccameno's payments were in accordance with the mortgage loan and confirmed Bankruptcy Plan.

Pl.'s Resp. Br. at 3.

Defendants do not deny the existence of these factual disputes, nor that the disputes are relevant to determining liability. Defendants offer only two assertions in response. The first of these, which comes in a footnote, is that Saccameno's "summary of 'factual disputes' … underscores that Patterson is not an expert; he is a phantom fact witnesses [sic]," and that "[i]ssues of fact need fact witness testimony, not expert testimony." Defs.' Reply Br. at 8 n.5 (citation omitted). But without further explanation, this is a *non sequitur*: the fact that Patterson's testimony is relevant to the factual disputes in question does not make him a fact witness. Second, defendants contend that Patterson's testimony is not needed because the factual disputes Saccameno has identified can be addressed during the cross-examination of Gina Feezer ("Feezer"), Ocwen's Rule 30(b)(6) witness. Reply Br. at 11. But if the evidence at issue is part of Saccameno's case in chief, it cannot be presented through cross-examination on rebuttal. And the court is not convinced that Saccameno will be able to address these issues effectively through Feezer's cross-examination—at least not as effectively as would be possible through Patterson's testimony.

In sum, the court concludes that Patterson's testimony will be helpful to the jury in determining facts relevant to the case.

**3.     Reliable Principles and Methods**

As a third basis for excluding Patterson's report and testimony, defendants argue that he has not applied reliable principles and methods to the facts of the case. Courts have emphasized repeatedly that "the test of reliability is 'flexible,'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 594), and that the issue of reliability must be "determined on a case-by-case basis," *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015). Further, "the law grants a district court the same broad latitude when it decides *how*

to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142.

Defendants claim that Patterson's methods are not reliable because instead of using an "industry recognized method," he employed methods that he developed on his own. Defs.' Reply Br. at 3. However, there does not appear to be an "industry recognized method" specifically for analyzing mortgage loan servicing transactions. (If there is one, defendants have not identified it). And while there is a sense in which Patterson has developed his own method of analysis, his techniques are not newfangled. Rather, Patterson has essentially adapted accounting methods and principles used in other contexts to the loan servicing documents and data in this case. *See* Patterson Report at 7 ("I have developed specific forensic accounting and audit methods specific to mortgage loan servicing transactions. In general, these methods include reconstructing the cash and non-cash servicing transactions into a format which is both understandable and illustrative. The reconstructed data is then used to audit documents and assertions relative to the mortgage loan.").

Defendants take issue with Patterson's references in his deposition and report to his use of generally accepted accounting principles (GAAP) and generally accepted auditing standards ("GAAS") in conducting his analysis. According to defendants, Patterson was able to describe his application of GAAP and GAAS in only the most general terms. Thus, for example, in answering whether he applied GAAP in performing his analysis, Patterson stated: "You take, you know, the mortgage loan servicing context and you have cash transactions that come in and out of the loan, and then those transactions are applied to internal accounts within that loan, and they have to balance." *See* Patterson Dep. at 55:10-15.

But given the general nature of the question he was asked, a general answer is perhaps to be expected. In any case, Patterson described his methodology in greater detail during his deposition. For example, he elaborated on the way in which he tracked the identity of the person making various payments (the borrower or bankruptcy trustee); *see, e.g.*, Patterson Dep. at 14-22; the process by which he tracked Ocwen's application of various payments, *id*. at 91:13-20 (explaining determination that although borrower had sent in one payment of $1,683.29, Ocwen split the payment to three different entries); *see also* 73:10-17 (describing process by which a particular post-petition payment was tracked); and the basis for his specific calculations, *see, e.g.*, *id*. at 76:1-77:8 (explaining basis for his conclusion regarding certain overpayments). Whether this involved the application of GAAP and GAAS is ultimately beside the point. The question is simply whether the methods Patterson used were reliable and whether they were appropriately applied. The court concludes that they were.

### 4. Prejudice

Lastly, defendants invoke Rule 403(b), contending that any probative value of Patterson's testimony is outweighed by its potential to confuse the issues and mislead the jury. According to defendants, Patterson's testimony should be excluded because it "would likely use the series of complex spreadsheets he created in 'reconstructing' his reading of Ocwen's data … instead of the underlying account histories which speak for themselves." As already noted, the court does not agree that the documents speak for themselves. In addition, the court can hardly make a determination that Patterson's testimony will be unfairly prejudicial based on speculation about exhibits that *might* be used at trial.

### Conclusion

For the reasons discussed above, the court denies defendants' Motion to Exclude Testimony of Bernard Jay Patterson and Admission of His Report (ECF No. 175).

Date: March 21, 2018 　　　　　　　　　　/s/　　　　　
　　　　　　　　　　　　　　　　　　Joan B. Gottschall
　　　　　　　　　　　　　　　　　　United States District Judge