UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONETTE E. SACCAMENO, | |
| Plaintiff, | |
| v. | Honorable Joan B. Gottschall |
| OCWEN LOAN SERVICING, LLC; and U.S. BANK NATIONAL ASSOCIATION, *as trustee for* C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007, RP1, | Case No.: 15-cv-01164 |
| | Jury Trial Demanded |
| Defendants. | |

### PLAINTIFF'S SUPPLEMENTAL BRIEF AS ORDERED AT ECF No. 242

Plaintiff Monette E. Saccameno ("Plaintiff"), by and through counsel, submits this supplemental brief as ordered at ECF No. 242 for the purpose of specifying the portions of Plaintiff's Trial Exhibits that Plaintiff intends to use at trial, the specific purpose for the evidence, and the way in which the evidence will be introduced at trial. In support thereof, Plaintiff submits the following:

### INTRODUCTION

Plaintiff has an ICFA claim. Her burden of proof requires her to demonstrate Ocwen's conduct causes generalized consumer harm. Ocwen denies and contests this point. Likewise, the statutory damages analysis under the FDCPA requires Plaintiff to put forward evidence of the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which such noncompliance was intentional. Further, the punitive damages analysis requires Plaintiff to put evidence before the jury to allow an appropriate analysis of reprehensibility, degree of actual and potential harm, and the monetary amount needed to punish or deter similar wrongdoing. These Exhibits are also relevant to prove Ocwen's knowledge, intent, absence of mistake, and serve as rebuttal to Ocwen's own affirmative defenses and trial position.

1

**DISCUSSION OF SPECIFIC EXHIBITS**

**Exhibits 41 & 43**

Exhibits 41 & 43 will not be offered absent objection to completeness of Exhibit 44, or if needed for rebuttal or impeachment of Ocwen's direct testimony.

**Exhibit 42**

Exhibit 42 is Ocwen's settlement with State Mortgage Regulators, including Illinois, that resulted from a "Multi-State Examination" of Ocwen covering the period from December 1, 2010 to October 24, 2011. (*Id.* p. 3). The purpose of this agreement was to remediate harms resulting from the alleged unlawful conduct of Ocwen identified by the State Regulators.

The findings of this examination, relevant to Plaintiff's case, include lack of controls related to general borrower account information, including: (i) misapplication of borrower payments; (ii) inaccurate escrow accounting and statements; and (iii) assessment of unauthorized fees and charges, and (iv) deficiencies in management control and supervision necessary to ensure compliance with laws and regulations. (*Id.* p. 6) These findings were published in December 2013 (*Id.* p. 13), in the first six months of Plaintiff's experience with Ocwen.

Exhibit 42 also establishes the going-forward mortgage servicing obligations imposed on Ocwen arising from this settlement. This Exhibit also goes to Ocwen's knowledge of specific problems Plaintiff experienced and rebuts factual contentions made by Ocwen. This Exhibit also counters Ocwen's affirmative defenses.

**Exhibit 44**

Exhibit 44 is the December 22, 2014 consent decree between Ocwen and the NYDFS. This document traces the regulatory history between Ocwen and the NYDFS, and it provides substantial factual background material, including Ocwen's rapid growth during the relevant

time period, from a small servicer to the nation's fourth largest servicer responsible for almost three million mortgage accounts. This document details the issues arising from that rapid growth.

This document identifies going forward obligations imposed on Ocwen's servicing practices by NYDFS beginning September 1, 2011. NYDFS also identified how many consumers are potentially affected by Ocwen's conduct. (*Id.* p. 2) Substantial deficiencies in Ocwen's servicing platform (*Id.* p. 3, ¶2), weaknesses, and violations of laws and regulations relating to, *inter alia*, foreclosure governance, implementation of modification programs, record keeping, required notifications, and the charging of unallowable fees (*Id.* p. 3, ¶3), knowledge of widespread non-compliance with prior regulatory agreements including dual-tracking, customer service issues, loan on-boarding issues, and account information accuracy issues (*Id.* p. 4-5).

The regulatory findings conclude that, "Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible. A frequent occurrence is that a fix to one system creates unintended consequences in other systems. As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors, and maintains inaccurate records. There are insufficient controls in place — either manual or automated — to catch all of these errors and resolve them." (*Id.* p. 6, ¶14).

The monitor also found Ocwen relied upon its inadequate systems to perform core mortgage servicing functions. The monitor also found that Ocwen's inadequate infrastructure and ineffective personnel resulted in Ocwen's failure to fulfill its legal obligations. Further, the monitor found that Ocwen *did not take adequate steps to implement reforms* that it was legally obligated to implement pursuant to the 2011 agreement prior to the monitor's and department's review almost two years after the agreement was entered. (*Id.* p. 7, ¶17-18). The NYDFS ordered

Ocwen to pay $50 million dollars to remediate consumer harm in the state of New York for the time period of January 1, 2009 to December 22, 2014. NYDFS also ordered Ocwen to pay a $100 million civil penalty. (*Id.* p. 10, ¶24).

This is relevant to Ocwen's state of mind, intent, knowledge, and for rebuttal of Ocwen's position in the case. The evidence is also relevant for general consumer harm, the punitive damages analysis in the case and the statutory damages analysis in this case.

**Exhibit 45**

Exhibit 45 is the CFPB complaint against Ocwen dated April 20, 2017. This document sets out ongoing problems with Ocwen's servicing system of record that continue through the date of this lawsuit, ongoing violations of prior consent decree obligations, and ongoing consumer harm. The allegations of this complaint are founded upon evidence acquired by the CFPB and State Mortgage Regulators in the normal conduct of their oversight and regulatory functions. The factual allegations of this complaint can and should be considered as an admissible report under FRE 803 as "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). These findings can take the form of an evaluative report containing both opinions and conclusions[...]" under the authority from *Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016). Many of the factual allegations relative to this case are derived from testimony of Ocwen officials and former high level management employees. Several key factual allegations rest upon internal emails and communications between high level executives, officers, and managers of Ocwen.

**Exhibit 46**

Exhibit 46 is a Cease and Desist Order from the State of North Carolina arising from the findings of an investigation undertaken by North Carolina's banking regulator for the time period of January 1, 2013 to February 28, 2015. This order addresses ongoing deficiencies with Ocwen's servicing business. Many of these deficiencies can be traced back to 2009. This document is relevant to show that despite Ocwen agreeing many times to correct longstanding issues, the very same problems persist through at least the date of this Order.

**Exhibit 47**

Exhibit 47 is a Cease and Desist from Massachusetts. Exhibits 46 and 47 represent two examples of the types of Cease and Desist Orders entered against Ocwen by 23 states on April 20, 2017, the same date of the CFPB suit in Exhibit 45. These Orders detail findings from official investigations and are excepted from hearsay under FRE 803(8)(A)(iii). This Order details significant findings as to Ocwen's inability to service mortgage loans in compliance with its legal and regulatory obligations. This Order also details significant consumer harm.

**Exhibit 48 through Exhibit 50**

These exhibits are settlement agreements dated September 28, 2017 between Ocwen and the States of Georgia, Illinois, and Michigan resolving these states' April 20, 2017 Cease and Desist Orders. In these agreements, Ocwen promises to discontinue use of its deficient mortgage servicing platform, RealServicing, and transfer the servicing of all loans to an acceptable mortgage servicing platform in a "commercially reasonable time." These Exhibits will likely be presented in group form and demonstrate that Ocwen continues to use its deficient servicing platform until such time as migration to a new platform is complete, thereby exposing all consumers on RealServicing to ongoing problems and continuing consumer harm.

**Exhibit 51 through Exhibit 57**

These Exhibits address judgments for mortgage servicing problems against Ocwen. In contrast to the consent decrees that addressed wrongdoing on a massive scale – affecting hundreds of thousands or millions of consumers – these Exhibits show Ocwen's knowledge that its problems are affecting individual consumers and these demonstrate that Courts of law have adjudicated that Ocwen's conduct harmed consumers. This evidence is relevant to notice, intent, absence of mistake, state of mind, and for purpose of rebuttal of Ocwen's defensive positions and factual assertions. These judgments are also relevant to the punitive damages analysis.

**Exhibit 58 & Exhibit 59**

Exhibit 58 is a verdict against Ocwen for stealing trade secrets. Exhibit 59 is a judgment from an Alabama bankruptcy court enjoining a foreclosure against Ocwen because of violations of the discharge injunction. Exhibit 59 This is relevant to show that Ocwen has a corporate history of engaging in illegal and fraudulent conduct in furtherance of its own business goals, and also relevant to the punitive damages analysis and the burden of proof for her unfairness claim to show general consumer harm.

**Exhibit 60 through Exhibit 66**

These documents are judgments against Ocwen for violations of the bankruptcy discharge injunction. These exhibits are relevant to Plaintiff's burden of proof and the punitive damages analysis in this case.

A. **Plaintiffs' Allegations Correlate with the Specific Findings in the Exhibits**

The issues identified in these Exhibits correlate to the same misconduct complained of by Plaintiff in this case. For instance:

      i.      Mishandling Escrow Accounts. Regulators in Exhibits 42, 44, 46, and 47 noted this issue. Plaintiff's account history shows inaccurate escrow and improperly paid escrow items.

      ii.      Regulators found Ocwen could not verify amounts owed, send accurate statements, maintain proper books and records, reconcile consumer accounts in Exhibits 42, 43, 44, and 47.

      iii.      Misapplication of payments in Exhibits 42, 44, and 47.

      iv.      Improper fees and charges Exhibit 42.

This is of course, a non-exhaustive list of issues. Regulators found numerous other systemic issues in their reports of findings, detailing Ocwen's deficient servicing platform and inability to adequately respond to consumer complaints.

### B. The Form of the Exhibits to Be Used at Trial

As an initial matter, Plaintiff no longer intends to introduce Exhibits 41 and 43 as part of her case-in-chief. These materials would only be offered in response to an objection or for rebuttal. The remaining exhibits are attached hereto in a "reduced" or "proposed" form, redacting any portion lacking relevance. Each Exhibit includes the first page and then only the relevant provisions that Plaintiff intends to present at trial.

Plaintiff would request the Court give an explanatory instruction about the form of these Exhibits to the jury. Plaintiff would suggest that the Court explain to the jury, that, by agreement of the parties, the material is being provided to them in a form approved by the Court which eliminates hundreds of pages of irrelevant materials.

### C. The Manner Plaintiff Intends to Introduce the Evidence

These documents are part of Ocwen's business records. They are the result of contested litigation or regulatory actions resolved with and by Ocwen. Each agreement was ratified and executed by Ocwen's senior management. Plaintiff intends to introduce these exhibits through the direct examination of Ocwen's corporate representative at trial.

# ARGUMENT

## I.  PLAINTIFF IS ENTITLED TO PROVE HER CASE-IN-CHIEF

Evidence should only be excluded when it is *unfairly* prejudicial. "Unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *U.S. v. Coleman*, 179 F.3d 1056, 1062 (7th Cir. 1999).

### A. ICFA Standard

These contested Exhibits are necessary for Plaintiff's case-in-chief for ICFA unfairness. Plaintiff has to the burden to establish "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Additionally, at least one Court in this district has held that breaching obligations imposed in consent decrees is against public policy and therefore an unfair act or practice under the ICFA. *Lowry v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 118818 (N.D. Ill. Sep. 2, 2016).

### B. FDCPA Statutory Damages

Likewise, this information is necessary to make a determination as to the amount of statutory damages to award under the FDCPA. The current and agreed jury instructions require the jury to consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. This material is directly relevant and probative of this question.

### C. Ocwen's Defense Theory and Affirmative Defenses

Ocwen's third affirmative defense states, "Plaintiff fails to state a claim under the Illinois Consumer Fraud Act because the alleged wrongful conduct does not [sic] effect consumers generally, and is limited to Ocwen's alleged wrongful conduct regarding Plaintiff's home loan." [ECF No. 102 at p. 40, ¶3.]. Ocwen denied the allegations on these points in its operative answer as well. [ECF No. 102 at p. 20, ¶¶82-83].

Ocwen has also taken the position that an employee made a "simple human error" in the miscoding of Plaintiff's loan, that the error was unintentional, and that the resulting problems experienced by Plaintiff over the course of the next four years were inconsequential to her (*e.g.* she incurred no losses and not entitled to any recovery). Ocwen has stated in its brief, and is expected to argue at trial, that "there simply is no evidence showing that the servicing issues on Plaintiff's account were the result of anything more than isolated, inadvertent mistakes by individual employees." (ECF No. 187, p. 6).

There is no unfair prejudice from the admission of the evidence which shows the jury that Ocwen had knowledge of its problems with *REALServicing* for many years before Plaintiff's issues began. There is no unfair prejudice in admitting evidence which shows that Ocwen knew there were issues with staffing, application of payments, servicing of loans in bankruptcy, onboarding of loans where Ocwen acquired the servicing rights, known problems with the accuracy of data outputs from *REALServicing* and a litany of other issues that Ocwen had knowledge of before servicing Plaintiff's loan.

### D. Punitive Damages Analysis

The punitive damages analysis requires the jury to consider reprehensibility, including, (a) the facts and circumstances of the conduct; (b) the financial vulnerability of Plaintiff; (c) the

duration of the misconduct; (d) the frequency of the misconduct; (e) whether the harm was physical as opposed to economic; and (f) whether Ocwen tried to conceal the misconduct. The jury must also consider actual and potential harm caused and the amount of money necessary to punish and deter. These exhibits are relevant to the jury's analysis of this issue.

## II.     RULE 408 AND RULE 404 DO NOT REQUIRE EXCLUSION OF THE EXHIBITS

By its terms, the rule [FRE 408] forbids admission of evidence only when it is offered to prove "liability for or invalidity of the claim or its amount." *See* Advisory Committee's Note, Fed. R. Evid. 408. The district court has broad discretion to admit evidence for a purpose other than proving liability; we review the district court's decision to do so for abuse of discretion and reverse only if there is manifest error. …Evidence coming out of settlement negotiations is obviously admissible to show bias or prejudice of a witness[…] for purposes of rebuttal, for purposes of impeachment, to show knowledge and intent, to show a continuing course of reckless conduct, and to prove estoppel." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 689 (7th Cir. 2005).

"While Federal Rule of Evidence 408 prohibits the admission of statements made in the course of settlement to prove liability and Rule 404(b) prohibits the admission of other wrongs in order to show action in conformity therewith, both rules allow the admission of such evidence when offered for another purpose." *U.S. v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995).

*Austin* was a criminal case. The trial court allowed the United States to introduce into evidence a consent decree between the criminal defendant and the FTC. On appeal, Austin "object[ed] to the trial court's admission of extensive evidence relating to the FTC settlement, including the terms of the consent decree and Austin's stipulation in the settlement admitting to the allegations in the FTC's complaint. He asserts that this evidence was unfairly prejudicial

because it likely led the jury to think that "the same issues had already been determined in the civil action." *Id.* at 399. The Seventh Circuit, however, explained:

> [t]he evidence from the civil suit served a number of alternative purposes. First, it showed that Austin was on notice when he subsequently sold other prints that those prints were forgeries. It also demonstrated Austin knew he could not sell those prints without reporting the sale to the FTC. Moreover, the facts from the FTC case both provided the background for Austin's indictment and laid the evidentiary foundation for many of the governments exhibits in the criminal proceeding. Finally, the stipulation itself constituted a direct judicial admission to the accusation of fraud in the conduct underlying the indictment. These purposes provided sufficient bases to introduce this evidence against Austin.

*Id.* at 400.

The *Austin* court also held that this evidence "was not so 'unfairly prejudicial' that the trial court should have excluded it under Fed. R. Evid. 403." *Id.* at 400. The defendant on appeal attempted to point to other cases where consent decrees, witness testimony, and injunctions were excluded in support of his argument for unfair prejudice. The Court of Appeals addressed this argument by finding "[Austin's cited] cases contrast markedly with the instant case, in which the circumstances of Austin's prior settlement with the FTC bore directly on his criminal charges. To have excluded this evidence entirely would have resulted in an incomplete presentation of the facts to the jury. The trial court thus did not abuse its discretion in admitting this evidence." *Id.*

In addition to the Seventh Circuit, the Fourth Circuit allowed admission of a City's earlier police brutality settlement to show the City's knowledge and notice of problems with excessive force in the police department finding its admission did not violate Rule 403. *Spell v. McDaniel*, 824 F.2d 1380, 1400 (4th Cir. 1987). The Fifth Circuit has held that Rule 408 is narrow in that it does not require the Court to exclude evidence admissible for another purpose (other than to show liability or invalidity of the claim or its amount). *See Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069-70 (5th Cir. 1986).

As to Rule 404(b), "[t]his Circuit has established a four-part test to determine the admissibility of evidence under Rule 404(b). Under this test, prior bad act evidence may be admitted where: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *U.S. v. Penson*, 896 F.2d 1087, 1091-92 (7th Cir. 1990) (internal citations omitted).

These Exhibits are required to resolve a disputed question of fact and a fundamental element of her ICFA unfairness claim. Plaintiff must show generalized consumer harm as part of her case-in-chief, and Ocwen disputes that its conduct causes generalized consumer harm. Directly to this point, several Exhibits, including Exhibits 42, 44, and 47, have unequivocal statements by the regulators that consumer harm resulted from Ocwen's conduct. At a minimum, this establishes that Ocwen was on notice that a number of its regulators believed Ocwen's conduct caused consumer harm. Further, Ocwen paid substantial amounts to regulators which was earmarked to "remediate consumer harm." These payments tend to show that Ocwen had knowledge its conduct could cause substantial consumer harm. Any concern that this evidence would compel a jury to find in Plaintiff's favor could be cured with a proper limiting instruction.

Further, these Exhibits detail many of the identical problems that Plaintiff experienced were well-known to Ocwen. These include, but are not limited to, inability to properly "onboard" a mortgage into Ocwen's system of record resulting in inaccuracies in consumer accounts from the outset of servicing by Ocwen, systemic mishandling of escrow accounts, misapplication of payments, inadequate staffing, management deficiencies, and lack of internal controls.

Plaintiff can show compliance with the four-pronged test under Rule 404(b). First, these Exhibits are directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged. These Exhibits are directed at proof necessary for Plaintiff's case-in-chief to show general consumer harm. To rebut Ocwen's factual assertions that this was some isolated, inadvertent human error, to show knowledge of the problems Plaintiff experienced with inaccurate records, misapplied payments, lack of internal controls, and to show knowledge of management deficiencies. This evidence is also relevant to show unfairness by demonstrating Ocwen's failure to comply with its legal obligations arising from these consent decrees.

Second, the evidence is similar enough and close enough in time to be relevant as the Exhibits demonstrate these issues began within two years of Ocwen becoming Plaintiff's loan servicer and continued to the present day, unabated.

Third, the evidence is sufficient to support a jury finding that the defendant committed the similar act. This is true as most of the issues Plaintiff will address are present in both the findings of regulators and the servicing of Plaintiff's mortgage.

Fourth, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. This evidence is highly probative and relevant to a number of the claims and defenses in the case. A consent decree bearing directly on the case at hand can be admitted and exclusion of the evidence entirely would result in an incomplete presentation of the facts to the jury. *Austin*, 54 F.3d at 400.

### III.   RULE 403 DOES NOT WARRANT EXCLUSION

"Relevant evidence is inherently prejudicial. . . .Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any *unfair prejudice* from the evidence substantially outweighs its probative value."

*U.S. v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995) (citing *Cook v. Hoppin,* 783 F.2d 684, 689 (7th Cir. 1986) "Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Loughry*, 660 F.3d 965, 969 (7th Cir. 2011).

"We employ a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice.… [O]ne measure of relevance is whether its exclusion would leave a chronological and conceptual void in the story. Even where evidence is not directly related to a disputed fact, it may be relevant when it provides background information." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012).

Here, the offered exhibits address specific facts in dispute, evidence necessary for Plaintiff's case-in-chief and burden of proof, relevant background facts, rebuttal of Ocwen's defenses raised and facts alleged. The evidentiary value of these documents is very high and the evidence contained in the exhibits are highly probative of numerous issues in dispute in this case. Therefore, the tolerance for the risk of unfair prejudice should also be very high. Evidence should be excluded only when that evidence is *unfairly* prejudicial to Ocwen. The truth of Ocwen's conduct and its knowledge regarding specific facts in issue in this case cannot be unfairly prejudicial to Ocwen.

### IV. THE EXHIBITS ARE ADMISSIBLE AS EXCEPTIONS TO THE RULE AGAINST HEARSAY

Ocwen did not raise a hearsay objection to Exhibits 41 to 50, and has not contested the trustworthiness of any of the Exhibits. Evidence is admissible as an exception to the Rule against hearsay pursuant to Federal Rule of Evidence 803(8)(A)(iii) allowing as admissible factual findings from a legally authorized investigation. *Daniel v. Cook County*, 833 F.3d. 728, 739 (7th Cir. 2016).

Plaintiff intends to offer "the Report for the truth of its contents, relying on hearsay exception in civil cases for factual findings from a legally authorized investigation. These findings can take the form of an evaluative report containing both opinions and conclusions[...] Such an evaluative report is presumed to be admissible in a civil case. A trial court has discretion to exclude the report if circumstances demonstrate a lack of trustworthiness. The burden to show untrustworthiness lies on the party seeking to exclude an evaluative report. We assume that public officials, in crafting such a report, acted "properly and without bias." *Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016). The proffered exhibits include findings of fact detailing regulator's findings after their examination of Ocwen. True, many of the documents also include a settlement agreement or consent decree with Ocwen. This does not render the exhibits unreliable or point to any lack of trustworthiness.

Additionally, Exhibits 42, 44, 48, 49, and 50 are exceptions to the rule against hearsay in that they are also official business records of Ocwen within the meaning of FRE 803(6). Where Ocwen executed a consent decree or settlement agreement to resolve these investigations, the resolution required the official act of Ocwen. Many of these resolving documents include a certification by Ocwen through either the CEO or Corporate Secretary who executed the documents – evidencing Ocwen's intent to be legally bound to these agreements. Ocwen's corporate representative has previously testified Ocwen is bound to these agreements and executed the agreements in the course of its normal business practices.

WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests that this Court deny Ocwen's motions *in limine* and order any other appropriate relief.

Dated: March 29, 2018.

                                      Respectfully Submitted,

                                      */s/ Nick Wooten*
                                      Nick Wooten, Esq.
                                      Nick Wooten, LLC
                                      4935 Bay Hill Drive
                                      Conway, AR 72034
                                      Phone: (334) 887-3000
                                      Email: nick@nickwooten.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 29, 2018, a true and correct copy of the foregoing **PLAINTIFF'S SUPPLEMENTAL BRIEF AS ORDER AT ECF NO. 242** was served upon counsel of record via electronic filing:

Alexander D. Bono (Fed. Bar ID 25845)
Lynne E. Evans (Fed. Bar ID 313479)
Kelly K. Huff (Fed. Bar ID 319084)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000
*Attorneys for Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1*

                                      */s/ Nick Wooten*
                                      Nick Wooten