**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MONETTE E. SACCAMENO, | : |
| Plaintiff, | : Case No. 1:15-cv-1164 |
| | : |
| v. | : Hon. Joan B. Gottschall |
| | : |
| OCWEN LOAN SERVICING, LLC, and U.S. | : Magistrate Judge Susan E. Cox |
| BANK NATIONAL ASSOCIATION, *as trustee for* | : |
| C-Bass Mortgage Loan Asset-Backed Certificates, | : |
| Series 2007 RP1, | : |
| | : |
| Defendants. | : |
| | : |

## DEFENDANTS' MEMORANDUM OF LAW SUPPORTING THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW

In accord with Fed. R. Civ. P. 50, Defendants, Ocwen Loan Servicing, LLC ("*Ocwen*") and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1 ("*U.S. Bank*") (together "*Defendants*"), respectfully move for Judgment As A Matter of Law on Plaintiff, Monette E. Saccameno ("*Plaintiff*" or "*Saccameno*")'s claims.

Defendants' Motion should be granted for five reasons:

**First**, there is no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on the breach of contract claim (Count I), given that the evidence shows that Defendants complied with the Mortgage, Saccameno failed to make her monthly payments and there is no evidence of damages.

**Second**, there is no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on the FDCPA claim (Count II) because there is no evidence that she sustained any actual damages as a direct result of Ocwen's failure to comply with the FDCPA after February 5, 2014.

**Third,** there is no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on the ICFA claim (Count III) because Saccameno failed to prove that Ocwen engaged in an unfair or material deceptive act or practice, or that Ocwen intended for Saccameno intended

for Saccameno to rely on any unfair or material deceptive act or practice, or that Saccameno sustained actual damages, *i.e.,* actual pecuniary loss, proximately caused by an unfair or material deceptive act or practice.

*Fourth,* there is no legally sufficient evidentiary basis for a reasonable jury to award punitive damages on the ICFA claim (Count IV) because Saccameno has failed to prove: (1) any pecuniary loss proximately caused by an unfair or deceptive practice, (2) conduct was committed with fraud, actual malice, deliberate violence or oppression, or Ocwen acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights, or (3) sufficient corporate management authorization or approval of the unfair or material deceptive act or practice.

*Fifth*, there is no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on the RESPA Claim (Count IV) because the evidence shows that Ocwen investigated and provided written responses to Saccameno's two written requests.

## I.    RELEVANT BACKGROUND

Saccameno has asserted four claims in this case: (1) breach of contract against Defendants (Count I); (2) violation of the Fair Debt Collection Practices Act ("*FDCPA*") against Ocwen (Count II); (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("*ICFA*") against Ocwen (Count III); and (4) violation of the Real Estate Settlement Procedures Act ("*RESPA*") against Defendants (Count IV). The Court severed Saccameno's claim for violation of the bankruptcy discharge claim, in accord with the parties' stipulation. (ECF No. 251).

Saccameno presented evidence in her case in chief during a jury trial, starting April 2, 2018, and resting April 9, 2018.

## II.    ARGUMENT

### A.    The Motion for Judgment As A Matter of Law Standard Compels Dismissal of Saccameno's Claims.

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000); Fed. R. Civ. P. 50(a)(1). "[T]he question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to

allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008); *Whitehead v. Bond,* 680 F.3d 919, 925 (7th Cir. 2012); *Fields v. City of Chicago*, No. 10 C 1168, 2017 WL 4553411, at *2 (N.D. Ill. Oct. 12, 2017) (citing *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)); *Vega v. Chicago Park Dist.*, No. 13 C 451, 2017 WL 3235684, at *1 (N.D. Ill. July 31, 2017).

"The trial judge must determine whether the party with the burden of proof has produced sufficient evidence upon which a jury could properly proceed to a verdict, and . . . a mere scintilla of evidence will not suffice." *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992) (internal citations omitted). Likewise, judgment as a matter of law is properly granted against a party that relies only on "sheer speculation and conjecture." *Id.* at 632, 634 (internal citations omitted) (granting judgment as a matter of law, holding "speculation cannot be the basis of a jury verdict-- and there is nothing else in this case.").

**B.      There Is No Legally Sufficient Evidentiary Basis For A Reasonable Jury To Find For Saccameno On The Breach of Contract Claim (Count I).**

In order to establish a claim for breach of contract, Saccameno must prove by a preponderance of evidence: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Burkhart v. Wolf Motors of Naperville, Inc.*, 61 N.E.3d 1155, 1159 (Ill. App. 2016). Defendants do not dispute the existence of a mortgage contract between the parties, but there are 3 reasons why there is no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on the breach of contract claim.

***First***, the evidentiary record shows that Saccameno did not perform all of her obligations required under the mortgage contract. The Mortgage expressly obligates Saccameno to make monthly principle and interest payments to repay the $135,000 that she borrowed. P1 at 3; Tr.

3

394:13-24; 408:17-22. The Mortgage also obligated Saccameno to make payments for taxes and insurance, which is held in an escrow account. P1 at 4; Tr. 397:4-18. If a borrower becomes delinquent on the escrow account, Ocwen, on behalf of U.S. Bank, has the contractual right to de-escrow the loan. *Id.* By signing the Mortgage, and each page of the Mortgage, Saccameno agreed to make her monthly payments. However, the evidence shows that Saccameno failed to perform her obligations by: (1) going into default in 2009; and (2) not making a monthly mortgage payment since April 2015. Tr. 415:416; P24 at 3 (showing last payment applied April 17, 2015). As a result, Saccameno has not been paying her principal, interest, taxes, or property insurance costs for more than three years, while Ocwen, on behalf of U.S. Bank, has paid over $23,000 in Saccmaeno's property taxes and homeowners' insurance. Tr. 399:6-22 (Q: So even though she's been in default, even though you were up for foreclosure action against her, even though she filed for bankruptcy, even though she got discharged and Marla made a mistake that set up off that chain of events we went through yesterday, despite all that, Ocwen continued to pay taxes and it paying taxes up to the present, correct? A: That's correct."). There is no mortgage provision that grants Saccameno the right to stop making payments while she is disputing her account, either informally or through litigation. Saccameno's failure to make her monthly mortgage payments for three years constitutes a breach of her contractual obligations under the Mortgage and prevents a reasonable jury from finding in her favor on this claim.

**Second**, Saccameno also has failed to prove that Defendants breached the mortgage contract. A breach of contract claim must be dismissed where plaintiff fails to point to a specific provision in the contract that defendants actually breached. *See, e.g., Nat'l Tech., Inc. v. RepCentric Sols.*, 2013 U.S. Dist. LEXIS 177764, at *7 (N.D. Ill. Dec. 18, 2013) ("Without identifying a provision of the Agreement that was actually breached, NTI cannot allege a claim for

breach of contract.") (internal citations omitted); *Belsky v. Field Imps., Inc.*, 2013 U.S. Dist. LEXIS 154775, at \*20 (N.D. Ill. Oct. 29, 2013). Saccameno failed to prove that Defendants breached any particular provision in the mortgage contract; she has not identified any specific portion of the contract that Ocwen did not comply with. To the contrary, the evidence shows that the Mortgage authorized Ocwen, on behalf of U.S. Bank, to pursue foreclosure when Saccameno fell into default. P1; Tr. 390-401 (reviewing provisions of the Mortgage).

*Third*, Saccameno has failed to prove that she suffered damages proximately caused by Defendants' breach of contract. "When a contract is breached, the injured party is entitled to be placed in the position [s]he would have been in had the contract been performed." *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 792 (Ill. App. 2008); *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. 2013); *Litwin v. Timbercrest Estates, Inc.*, 347 N.E.2d 378, 380 (Ill. App. 1976) ("Thus, the person injured is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed -- but not in a better position."). Saccameno also must prove that Ocwen proximately caused any damages by showing a "direct relation between injury asserted and injurious conduct alleged[.]" *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 604 (7th Cir. 2014). Proximate cause excludes "those links that are too remote, purely contingent, or indirect." *Id.*

Moreover, "the burden is on the plaintiff to establish a reasonable basis for computing damages. . . . Thus, ***damages must be proved with reasonable certainty and cannot be based on conjecture or speculation***. . . . However, absolute certainty with regard to damages is not required.") *Kirkpatrick*, 894 N.E.2d at 792; *In re Ill. Bell Tel. Link-Up II*, 994 N.E.2d 553, 559 (Ill. App. 2013) ("A claimant must prove its damages to a reasonable degree of certainty, and accordingly the evidence it presents must not be remote, speculative, or uncertain.").

5

Here, Saccameno has failed to produce legally sufficient evidence to prove actual, monetary damages with reasonable certainty stemming from Ocwen's performance of its contractual duties. The evidence shows that 17 payments were returned to Saccameno over a period of 17 months; there is no evidence, however, that these return payments caused Saccameno any pecuniary harm. To the contrary, the evidence shows that Saccameno was able to keep the payments in her bank account rather than be applied to her mortgage. Saccameno actually used the returned payments to her benefit – investing the money in her home to boost equity by putting on a new roof.

Saccameno has not presented the jury with any evidence showing that Saccameno overpaid on any monthly payments or paid any improper late fees, corporate advances, or inspection fees. Ocwen's business records show that any of these fees that were applied to Saccameno's account were either reversed/credited back to her, or never actually collected. P24 (showing transaction history); Tr. 470:16-471:17, P18 at 2318 (reversal of fees during bankruptcy reconciliation); Tr. 649:12-20 ($1,800 returned back to Saccameno); Tr. 650:23-651:3 (write off of corporate advances). Saccameno's forensic accountant – who testified that he is *not* a damages expert – did not provide any testimony, nor did his payment schedules show, that Saccameno ever overpaid on her monthly payments, or actually paid any late fees or inspection fees to Ocwen. Tr. 647-659.

Q: [Let's] get one thing clear. You're not a damage expert, right?
**A. Correct.**
Q. And these color-coded forms don't show damages, correct?
**A. As far as I know, they don't.**
Q. They don't show emotional distress damages, right?
**A. Correct, they do not.**
Q. They don't show pecuniary loss, right?
**A. Right.**
Q. They don't show actual damages, right?
**A. Correct.**
Q. And they don't show any harm to Ms. Saccameno, right?
**A. Correct.**

Tr. 718:14-21. On this record, no jury could reasonably find that the mere existence of Ocwen's internal accounting records, which list fees that even her forensic accountant admitted were never collected, caused Saccameno to suffer any monetary damages.

Nor did Saccameno testify to support that she suffered any monetary damages due to any of the payment issues she experienced with Ocwen. Saccameno's testimony solely revolved around how she felt while working with Ocwen – she has presented no documentary or testimonial evidence of actual, out of pocket loss arising from any payment application or rejection, fee assessment, or the dormant foreclosure action that was dismissed before any judgment was entered against her. P2 at 7. While Saccameno may try to argue she paid $4,400 to Suiliaman Law Group for "research to help" her, Tr. 822:3-11, Ocwen's records show that this law firm did not contact Ocwen via letter, fax, or phone call at any point to attempt to resolve any dispute on the account before filing this lawsuit. And Ocwen's comments log clearly shows tracking for all points of contact with Saccameno or her representatives. P18. Saccameno has failed to point to any portion of the record showing that Suiliaman Law Group performed legal work on her behalf, nor to support this figure or that payment was actually made (such as an invoice or billing records).

In sum, because Saccameno failed to produce legally sufficient evidence to prove any alleged monetary damages were proximately caused by Defendants' breach of the mortgage agreement, no reasonable jury could find in her favor on the breach of contract claim.

### C. There Is No Legally Sufficient Evidentiary Basis For A Reasonable Jury To Find For Saccameno On The FDCPA Claim (Count II).

Critically, the parties have agreed that Saccameno's FDCPA claim is limited to Ocwen's conduct after February 5, 2014. In order to establish a claim for violation of the FDCPA, Saccameno must prove by a preponderance of evidence:

1. On or after February 5, 2014, Ocwen engaged in conduct the natural consequence of which was to harass, oppress, or abuse Saccameno in connection with the collection of a debt; or

2. On or after February 5, 2014, Ocwen used false, deceptive, or misleading representations or means in connection with the collection of any debt; or

3. On or after February 5, 2014, Ocwen used unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. §§ 1692d-1692f. Saccameno must also prove by a preponderance of the evidence that she suffered actual damages that *were proximately caused* by the failure to comply with the FDCPA. 15 U.S.C. § 1692k(a) ("Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of — (1) any actual damage sustained by such person as a result of such failure[.]").

Saccameno has failed to prove through legally sufficient evidence that she sustained any actual damages as a direct result of Ocwen's failure to comply with the FDCPA after February 5, 2014. There has been no testimony or documentary evidence presented upon which a jury could reasonably conclude that Saccameno actually paid to Ocwen any unnecessary payments on her mortgage, or any overcharges or improper fees as the result of any letters or statements sent by Ocwne during this time period.

Saccameno goes to great lengths to attempt to show emotional distress, but has failed to provide evidence upon which a reasonable jury could find that Ocwen directly caused Saccameno's anxiety, stress or mild depression. While the evidence shows that Saccameno filled prescriptions intermittently throughout 2014 and 2015 for Wellbutrin and Xanax, only "as needed," the evidence clearly shows that Saccameno had experienced anxiety and emotional issues

8

long before the bankruptcy discharge – she experienced them starting with her 2009 bankruptcy filing. Dr. Sarantos' medical records show that he was treating her in 2011, P39, and he testified that he prescribed her an anti-anxiety medication to assist with the anxiety she was experiencing *during bankruptcy*. Tr. 259:9-260:7; 269:5-9 (acknowledging treatment during bankruptcy on redirect); 273:25-274:1-6 (Q Dr. Sarantos, I think you just said comparing bankruptcy in September 2013, you felt she was more anxious and more fearful than she had been at the time of the bankruptcy, right? A Yes. Q But it wasn't so anxious or so fearful that she -- you felt she needed to go see a therapist? A Correct."). Saccameno's testimony confirmed that she was already taking anti-anxiety medicine before 2013. Michael Saccameno then corroborated that Saccameno exhibited odd behaviors and didn't want to have any social life as far back as 2009. Tr. 741:25-742:8 (his mother didn't want to leave the house during the "first foreclosure" while he was in high school, approximately 2008). Michael also testified that he thought his mother was "on drugs" during her last year of bankruptcy (2012-2013) because of her worrisome behavior. Tr. 738:1-23. Given this history of emotional issues, the only reasonable inference is that Saccameno's symptoms were present before 2013 and that Saccameno struggled with these conditions before Ocwen even took over servicing her loan in September 2011. A reasonable jury could not conclude that Ocwen was the proximate cause of Saccameno's anxiety and mild depression, nor that her prescriptions were a direct result of any correspondence from Ocwen in 2014 and 2015.

In addition, even if symptoms were present, Saccameno never incurred any other medical expenses after 2013 besides her prescriptions, which she was already taking. Dr. Sarantos saw her for free, Tr. 233:13-15, and because any symptoms she displayed after 2013 were characterized as "mild" enough to not even require industry standard depression tests to be performed on her,

Saccameno never incurred costs of any specialty treatment or referrals. Tr. 245:5-8 ("A She did not demonstrate a severe depression where I needed to see her psychiatrist or do any special tests."); 245:21-24; 246:6-9; 266:7-9; 255:14-16 ("She had a mild depress. She wasn't needing all these tests."). This Court also recognized that, based on the testimony presented by Dr. Sarantos, the only reasonable conclusion is that Saccameno may have been experiencing "mild" and "low-level" depression. Tr. 252:9-12.

Regarding her prescription costs, Saccameno has failed to provide adequate evidence supporting how frequently she even filled the prescriptions or how often she actually had to take the medications. Saccameno offered, at best, a vague estimate that her prescriptions cost between $70-$90 per month "without the insurance". Tr. 820:9-821:2. Saccameno presented no testimony supporting any out of pocket costs during the months when *she did have insurance*, and she testified that the she only lacked insurance when she was in between jobs and then for the 90 days after starting as a Director of Nursing. Tr. 820:9-18. In addition, Saccameno did not fill the Xanax every month, and did not provide any evidence that she filled it during the time period relevant to the FDCPA (February 5, 2015 – May 2017). Tr. 810:15-25 (testifying she did not refill her Xanax every month). Though Saccameno noted that, conveniently, she had a year old bottle of Wellbutrin sitting in her purse at trial, she confirmed that she had stopped taking the medication in May 2017 because she was cured of any symptoms and had "weaned off" the Wellbutrin by that time. Tr. 809:5:14. Saccameno also failed to present any documentary evidence in the form of receipts for *any* of her prescriptions during the relevant time period, an assertion which should be discredited by any reasonably jury in an electronic age where every insurance company and pharmacy keeps records of such expenses which could have been easily accessed by Saccameno in support of her

claims. Thus, there is insufficient evidence of emotional damages in the form of stress, anxiety, depression and emotional distress were not proximately caused by Ocwen.

Saccameno's claims of lost time spent trying to resolve the dispute with Ocwen and loss of wages are equally unsupported. There is insufficient evidence for a reasonable jury to conclude that Saccameno was fired from her job, as Anderson had ***no knowledge*** as to whether Affiliated Dialysis actually fired Saccameno and did not present any testimony supporting this theory. There is no documentary evidence in the record to support such a conclusion and her testimony is inconsistent at best. The evidence further shows that Saccameno was out of work "no more than a month" between ending her work at Affiliated Dialysis and being offered the Director of Nursing position – a senior leadership role – at a large nursing home making ***more money than at the Affiliated Nursing job***. *Compare* Tr. 822:12-17 (making $87,000 when lost her job) *with* P70 (offer letter showing $95,000 salary plus bonus). On the record, the only inference that a reasonable jury could make is that Saccameno left Affiliated Dialysis to make more money or that she left because she didn't like the work and wanted to go back in nursing home work – any other conclusion is speculative at best. Tr. 788:10 ("I'm not a dialysis person"); Tr. 789 ("I'm a serial interviewer.").

Similarly, Saccameno's estimation of time spent "communicating" with Ocwen is contradicted by Ocwen's business records. Saccameno testified that she spent "between 15 and 20 minutes" sometimes "two or three times a week," not hours per day, and that she took weeks off to give herself a break. Tr. 772:14-24. This testimony falls far short of the request to compensate her for "24 hours a day" of preoccupation with Ocwen. More troubling, this assertion by Saccameno is contradicted by her own, uncontroverted exhibit – the Ocwen call log. Ocwen's business records shows just 10 inbound phone calls to Ocwen between July 2013 and May 2014.

P38. Of these 10 calls, the comments log shows that *just 2 inbound calls* were made by Saccameno herself. P18 at 2310 (July 15, 2013); 2365 (May 7, 2014). The remainder of the calls were made by Susan Van Sky. P18 at 2353-54; 2358; 2361; 2363; 2366.

Thus, there is insufficient evidence of any time or wages lost at work, or any time spent communicating with Ocwen.

### D. There Is No Legally Sufficient Evidentiary Basis For A Reasonable Jury To Find For Saccameno On The ICFA Claim (Count III).

In order to establish a claim for violation of the ICFA, Saccameno must prove each of the following elements by a preponderance of evidence:

1. Ocwen engaged in an unfair or material deceptive act or practice;

2. Ocwen intended for Saccameno to rely on the unfair or material deceptive act or practice;

3. The unfair or material deceptive act or practice occurred in a course of conduct involving trade or commerce[1];

4. Saccameno sustained actual damages; and

5. Such damages were proximately caused by the unfair or material deceptive act or practice.

*Golbeck v. Johnson Blumberg & Assocs., LLC*, 2017 U.S. Dist. LEXIS 112493, at *37-38 (N.D. Ill. July 19, 2017); *Reeder v. HSBC USA, Inc.*, 2009 WL 4788488, at *11 (N.D. Ill. Dec. 8, 2009); *Burkhart*, 61 N.E.3d at 1161. There are 3 reasons why there is no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on the ICFA claim.

*First*, Saccameno has failed to provide a legally sufficient evidentiary basis for jury to find Ocwen engaged in an unfair or material deceptive act or practice. The ICFA is "not intended to

---

[1] The parties stipulated that Ocwen's conduct in this case occurred in the course of trade or commerce. Jury Instr. No. 13.

apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. . . . Instead, a valid ICFA claim requires a plaintiff to allege 'unfair or deceptive conduct [that is] distinct from the alleged breach of a contractual promise.'" *Golbeck*, 2017 U.S. Dist. LEXIS 112493, at *39; *Reeder v. HSBC USA, Inc.*, 2009 U.S. Dist. LEXIS 114651, at *36 (N.D. Ill. Dec. 8, 2009) ("[A] breach of contractual promise, without more, is not actionable under the [ICFA].").

To prove a material deceptive act or practice, Saccameno must prove Ocwen knew and failed to disclose and/or misrepresented information, either orally or in writing, about the handling of Saccameno's mortgage loan account. *Lake v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013). An act is ***deceptive*** if it creates a likelihood of deception or has the capacity to deceive. *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 938 (7th Cir. 2001) (internal citations omitted). A deceptive act is "material" where a reasonable person would have acted differently knowing the information, or if it concerned the type of information upon which a reasonable person would be expected to rely in making decisions. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017) ("'An omission is 'material' if the plaintiff would have acted differently had it been aware of it, or if it concerned the type of information upon which it would be expected to rely in making its decision to act.'"). ***Where a statement is not deceptive in light of other information available to plaintiff, an ICFA claim fails***. *See, e.g., Bober*, 246 F.3d at 938-39 (dismissing ICFA claim because allegedly deceptive act was not deceptive in light of all information available to plaintiff); *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. App. 1997) (same); *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 607-08 (Ill. App. 1996) (same);

Further, "in a cause of action for fraudulent misrepresentation brought under the [ICFA], a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to

establish the elements of proximate causation." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 199, 835 N.E.2d 801, 296 Ill. Dec. 448 (2005). *Burkhart*, 61 N.E.3d at 1161 (internal citations omitted).

Saccameno has failed to prove through legally sufficient evidence a material deceptive act or practice. All of Ocwen's communications with Saccameno were squarely based on the information and notes logged contemporaneously in its business records. While it has been determined, in hindsight, that Marla's mistake created an internal accounting issue on Saccameno's loan, and prevented the foreclosure module from closing, the evidence overwhelming shows that this was an inadvertent mistake cause by a human error. There has been no evidence whatsoever of any intent to mislead or deceive, or even collect from, Saccameno. Moreover, every single letter and account statement sent by Ocwen included the bankruptcy "heads up" language, which put Saccameno on notice that: "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, *if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*" *See, e.g.*, D1 to D17; P16; P17; P29; P30; P31; P32; P68. So, Saccameno had express written notice every time she got a letter that those letters were *not* an attempt to collect on her since she *knew* she had a bankruptcy discharge. Thus, the only inference that a reasonable jury could make is that Saccameno could not have been "deceived" by the receipt of letters or billing statements.

To determine whether an act or practice is *unfair*, a court must consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive[2], or unscrupulous;

---

[2] "For conduct to be oppressive under ICFA, it must 'leave the consumer with little alternative except to submit to it.'" *Golbeck*, 2017 U.S. Dist. LEXIS 112493, at *43 (internal citations omitted).

[and] (3) whether it causes substantial injury to consumers." *Golbeck*, LLC, 2017 U.S. Dist. LEXIS 112493, *37-38 (internal citations omitted). A plaintiff does not need to satisfy all three criteria to support a finding of unfairness. *Id.* at *38. Saccameno has failed to prove through legally sufficient evidence an unfair act or practice because she has not offered evidence to prove any one of these three criteria. There has been no testimony or evidence that Marla's mistake somehow offends public policy, nor that such an individual coding error could possibly affect the public at large. There also has not been any testimony or evidence that Ocwen acted in any immoral, unethical, oppressive or unscrupulous way towards Saccameno. In fact, Ocwen sent Saccameno copious amounts of information on resources available both internally and externally if she had questions. *See, e.g.,* D1 - D16. Nor has there been any evidence that Marla's mistake caused any harm to any other consumers during the relevant time period.

**Second**, Saccameno has failed to provide a legally sufficient evidentiary basis for jury to find Ocwen intended for Saccameno to rely on the unfair or material deceptive act or practice. *Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill. 2010). To the contrary, the evidence shows that Ocwen sent Saccameno letters that expressly notified her that, if her bankruptcy had been discharged, then the amounts due on the letter or statement **did not apply to her** and that the communication was **not** an attempt to collect debt. *See, e.g.,* D1 - D16; P16; P17; P29; P30; P31; P32; P68.

**Third**, Saccameno has failed to provide a legally sufficient evidentiary basis for jury to find Saccameno sustained actual damages, *i.e.,* actual pecuniary loss, proximately caused by an unfair or material deceptive act or practice. "The element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'" *Golbeck*, 2017 U.S. Dist. LEXIS 112493, at *37 (internal citations omitted); *Saccameno v. Ocwen Loan Servicing*, 2017 U.S. Dist. LEXIS 185427, at *6

15

(N.D. Ill. Nov. 8, 2017) ("[I]t is well settled that the actual damage element of a private ICFA action requires that the plaintiff suffer actual pecuniary loss.") (internal citations and quotations omitted); *Burkhart v. Wolf Motors of Naperville, Inc.*, 61 N.E.3d at 1161 ("Actual damages must be calculable and 'measured by the plaintiff's loss.'") (internal citations omitted);

   ***Mere speculation of damages the plaintiff could have sustained is insufficient***. *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957-58 (N.D. Ill. 2008) ("[P]laintiff must allege that she has been harmed in a concrete, ascertainable way. . . . 'Theoretical harm is insufficient. Damages may not be predicated on mere speculation, hypothesis, conjecture or whim.' . . . The measure of damages is the amount that will compensate plaintiff for the loss occasioned by the fraud, which is the amount she is actually out-of-pocket by reason of the transaction.") (internal citations omitted); *Zuber v. Bayview Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 157267, at *4 (N.D. Ill. Nov. 14, 2016) ("The Seventh Circuit has said that 'actual damages' means the plaintiff must have suffered 'actual pecuniary loss'—in other words, ***actual damages are economic and calculable, not emotional or intangible***.") (citing *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). *See also Zuber v. Bayview Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 157267, at *5 (N.D. Ill. Nov. 14, 2016) (declining "to read the actual damages prong so broadly as to allow for the requirement to be met simply by a plaintiff's spending time consulting with his attorney, especially since attorney's fees are reimbursed pursuant to a different part of the statute.") (internal citations

omitted). Alleged damages for "annoyance and loss of time" *are not actual damages*. *McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 802 (N.D. Ill. 2013).[3]

Saccameno must also prove that Ocwen's conduct is the proximate cause of her actual pecuniary loss; in other words, that the loss occurred as a result of the material deceptive or unfair practice or act. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (explaining that plaintiff must show that "'but for' the defendants' unfair conduct, he would not have been damaged").

Critical to this case, *emotional damages "do not constitute actual damages under the ICFA."* *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 823 (N.D. Ill. 2016). *See also Starke v. Select Portfolio Servicing, Inc.*, 2017 U.S. Dist. LEXIS 207616, at *8 (N.D. Ill. Dec. 18, 2017) (explaining that a plaintiff "can only recover damages for emotional distress, inconvenience, and aggravation to the extent she also adequately alleges economic damages. . . . In other words, emotional damages are not sufficient to support an ICFA claim on their own.") (internal citations omitted).

Saccameno's evidence falls woefully short of proving that she suffered any pecuniary loss whatsoever that was proximately caused by Ocwen's servicing of her loan. Saccameno has presented no evidence that she ever paid Ocwen more money than was due on her Mortgage, or that she ever paid any of the fees that were assessed on her account during the time when the loan was in foreclosure, i.e. inspection fees or late fees. Instead, the evidence shows that Saccameno's payments were returned to her; *Ocwen did not keep any of Saccameno's funds* that were not contractually due, and the return of payments actually allowed Saccameno to use that money for

---

[3] Alleged damage to plaintiff's credit rating, absent proof that she suffered actual damages flowing from the decrease in credit score such as being denied credit, losing credit, having her credit limits lowered, or being required to pay a higher interest rate for credit, does not constitute actual damages. *Reeder*, 2009 U.S. Dist. LEXIS 114651, at *39.

other expenses in her life. P19; P24. Furthermore, Ocwen's business records show that Saccameno has not made a mortgage payment in over three years – since April 2015. P24.

Basically, Saccameno testified to losing her "joy" in her life, and time experiencing events with her family. Tr. 813:14-18 ("A lot of the joy that I should have been experiencing in the last few years has been tampered a little bit because of this. This has been somewhat all-encompassing."). Not only does the unrebutted evidence show that Saccameno was *not* calling Ocwen "two to three times per week," as she testified during her direct examination, but also "time" does not qualify as a pecuniary loss under Illinois law. *McLaughlin*, 971 F. Supp. 2d at 802. Saccameno also testified to experiencing anxiety, tearfulness and fear of foreclosure; these types of damages, however, cannot be awarded, as a matter of law, without a shred of concrete evidence of some other out of pocket, monetary loss caused by Marla's mistake, Ocwen letters sent or the returning of the payments.

Furthermore, as discussed above, Saccameno's prescription costs are speculative, at best and the evidence also shows that she had prescription costs before 2013. *See*, *supra*, pp. 9-10. Similarly, Saccameno has failed to submit evidence showing the amount or her actual payment to Suiliaman Law Firm for legal fees. *Id.*

### E. There Is No Legally Sufficient Evidentiary Basis For A Reasonable Jury To Award Punitive Damages On The ICFA Claim (Count IV).

Punitive damages can only be awarded if Saccameno has proven Ocwen's conduct in violation of the ICFA proximately caused her actual pecuniary loss.[4] *Kemner v. Monsanto Co*., 576 N.E.2d 1146, 1153 (Ill. App. 1991) ("[Illinois] does not recognize a cause of action for

---

[4] *Saccameno v. Ocwen Loan Servicing*, 2017 U.S. Dist. LEXIS 185427, at *20 (N.D. Ill. Nov. 8, 2017) ("The trial court must initially decide whether the cause of action in general and the facts of the particular case provide sufficient proof of aggravated circumstances to warrant submitting the issue to the trier of fact. This determination is a matter of law.").

punitive damages alone; the plaintiff can be awarded punitive damages only where actual damage is shown."). Because Saccameno has failed to prove any pecuniary loss proximately caused by Ocwen, she fails to meet this preliminary threshold, and there is no basis for this jury to consider any award of punitive damages.

Furthermore, punitive damages *may only be assessed* against Ocwen if Saccameno proves by a preponderance of the evidence that Ocwen's conduct was *committed with fraud, actual malice, deliberate violence or oppression*, or Ocwen acted *willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others*, and if justice and public good require it.[5] *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978); *Guess v. Brophy*, 517 N.E.2d 693, 697 (Ill. 1987). *See also Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 794 (Ill. App. 2008) ("[C]ourts should award punitive damages in [ICFA] cases only for conduct that is outrageous, either because the defendant's motive was evil or the acts showed a reckless disregard of others' rights. . . . Punitive damages are not favored in the law; thus, courts should be careful never to award such damages improperly or unwisely.") (internal citations omitted).

---

[5] In deciding whether to award punitive damages and the amount, if any at all, three questions must be considered. The first question is the most important to determine the amount of punitive damages: (1) How reprehensible was Ocwen's conduct? On this subject, the following should be considered: (a) The facts and circumstances of Ocwen's conduct; (b) The financial vulnerability of Saccameno; (c) The duration of the misconduct; (d) The frequency of Ocwen's misconduct; (e) Whether the harm was physical as opposed to economic; and (f)Whether Ocwen tried to conceal the misconduct. (2) What actual and potential harm did Ocwen's conduct cause to Saccameno in this case? (3) What amount of money is necessary to punish Ocwen and discourage them and/or others from future wrongful conduct. Ill. Pattern Civil Jury Instructions, Instruction 35.01. Here, Saccameno has not presented any evidence that Marla's mistake was ever intentional, or that Ocwen tried to conceal the error. Ocwen *never* actively tried to pursue the foreclosure or to collect Saccameno's post-petition debt after her discharge. Ocwen sent passive letters, which clearly had the notice to Saccameno that the letter did not apply to her because she had received a bankruptcy discharge. On this record, a reasonable jury could not find that Ocwen's servicing of Saccameno's loan was very reprehensible. Moreover, there is no evidence of actual damages or harm. This analysis underscores that punitive damages are not warranted in this action.

Here, Saccameno has presented absolutely no evidence showing that Ocwen ever acted with fraud, actual malice, deliberate violence or oppression during the servicing of Saccameno's loan. To the contrary, Ocwen was frequently offering Saccameno loan modifications and other loss mitigation options, as well as resources for escalated help or government support. *See* D1 to D17. Nor has Saccameno submitted any evidence that Ocwen ever acted willfully to try to harm Saccameno, or with such gross negligence as to indicate a wanton disregard of the rights of others. The testimony shows that Ocwen handled her loan in accordance with its formal policies and procedures regarding loans in foreclosure, as permitted under the Mortgage when Saccameno stopped making her contractual payment. P1 at 13; Tr. 406:8-408:14. Ocwen continually send Saccameno letters providing her with her account status, which were accurately based on its business records, and to offer her loan modifications and resources. D1-D17.

Moreover, punitive damages *only* may be awarded against Ocwen for violation of the ICFA if one or more of the following conditions are proved as to the unfair or material deceptive act or practice giving rise to liability under the ICFA claim:

> (a) The corporation, through its management, authorized the doing and the manner of the unfair or material deceptive act or practice; or
>
> (b) The unfair or material deceptive act or practice was that of a managerial employee who was acting in the scope of his or her employment; or
>
> (c) The corporation, through its management or a managerial employee, ratified or approved the unfair or material deceptive act or practice.

*Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31 (1975); *Deal v. Byford*, 127 Ill.2d 192, 130 Ill.Dec. 200, 537 N.E.2d 267 (1989). Importantly, mere proof of scope and course conduct of an agent has been deemed insufficient to impose punitive damages against a corporation. *Kemner* 576 N.E.2d at 208.

20

Saccameno has failed to provide a legally sufficient evidentiary basis for jury to award punitive damages on the ICFA claim because she has failed to offer any evidence that (1) she sustained actual pecuniary loss, proximately caused by an unfair or material deceptive act or practice, (2) Ocwen's conduct was committed with fraud, actual malice, deliberate violence or oppression, or Ocwen acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others, and if justice and public good require it, or (3) there was sufficient corporate management authorization or approval of the unfair or material deceptive act or practice. There has been no testimony or documentary evidence showing that Ocwen ever engaged in any deceptive or unfair business practice. To the contrary, the evidence shows that Saccameno's loan did not take the normal course at Ocwen. Unfortunately, due to Marla's mistake, Saccameno's bankruptcy discharge was incorrectly coded for one month, before being fixed, and her loan was not taken out of the foreclosure workflow until 2015. Tr. 430:14 – 431:16. There is no evidence that this error was in any way tied to any other corporate policy or system issue beyond the individual miscoding on this single loan. The evidence clearly shows that this was an anomaly – a mistake that has not been the result of any systemic issue at Ocwen. Tr. 431:23 (Q. From what you've seen was there anything to show it was some kind of systemic problem rather than a mistake by Marla? A. I've never seen this before and I've worked in the bankruptcy department [] for a

number of years. I mean, it simply was a -- she miss reported, mislabeled the file and closed it out as the dismissal.).

Because Saccameno has failed to prove *any* of the elements required to permit a reasonable jury to award punitive damages. Thus, this issue should not be submitted to the jury.

### F.     There Is No Legally Sufficient Evidentiary Basis For A Reasonable Jury To Find For Saccameno On The RESPA Claim (Count IV).

In order to establish a claim for violation of the RESPA, Saccameno must prove each of the following elements by a preponderance of evidence:

1. Ocwen was servicing Saccameno's loan under RESPA[6];
2. Saccameno or her attorney sent Ocwen a qualified written request ("QWR") under RESPA;
3. Ocwen failed to properly respond to the qualified written request within the time and manner allowed under RESPA, or Ocwen reported Saccameno's account to a credit bureau within 60 days of receiving a qualified written request; and
4. Saccameno suffered actual damages as a direct result of Ocwen's failure to properly respond to her written request.

12 U.S.C. § 2605(e)-(f).

When responding to a qualified written request, it is irrelevant whether the servicer's understanding of the account is correct, so long as it is reasonable. *Vilkofsky v. Specialized Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 29994, at *15 (W.D. Pa. Mar. 3, 2017). Therefore, a reasonable explanation of the servicer's belief as to the account is sufficient, even if it is later determined that the belief is erroneous. *Id.* ("To that end, the servicer must 'provide 'a statement of the reasons for which the *servicer believes'* the accounting is correct."); *see also Vassalotti v.*

---

[6] The parties stipulate that Ocwen as the servicer of Saccameno's loan at all times material to this case. Jury Instr. 18.

*Wells Fargo Bank, N.A.*, 732 F.Supp.2d 503, 509 (E.D. Pa. 2010) ("A reasonable explanation of the servicer's belief is sufficient, even if it is later determined that the belief is erroneous.").

In addition to proving conduct that violated RESPA, Saccameno must also prove that she suffered a pecuniary loss ***proximately caused*** by the RESPA violation. *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 773-74 (N.D. Ill. 2015) (dismissing RESPA claim where plaintiff "does not claim, however, that either of these alleged violations resulted in any actual, pecuniary damages to her."); *Golbeck v. Johnson Blumberg & Assocs., LLC*, 2017 U.S. Dist. LEXIS 112493, at *32 (N.D. Ill. July 19, 2017) (explaining courts have agreed, "plaintiff must also suffer a ***financial loss*** from the RESPA violation to pursue emotional distress damages") (internal citations omitted); *Konieczka v. Wachovia Mortg. Corp.*, 2012 U.S. Dist. LEXIS 42675, at *12 (N.D. Ill. Mar. 28, 2012) ("Accordingly, Plaintiffs have not alleged a pecuniary loss and consequently have not pled actual damages sufficient to raise the possibility of relief above the speculative level."); *see Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) (stating that a plaintiff ***must first show that she had suffered a financial loss***, before being permitted to piggyback a claim for damages for incidental emotional distress.").

Saccameno has not presented a legally sufficient evidentiary basis for a reasonable jury to find for her on the RESPA claim.

### 1. Ocwen Complied With Its RESPA Obligations In Its Handling of the July 17, 2013 Letter.

Saccameno has failed to establish a legally sufficient evidentiary basis that Ocwen failed to properly response to a qualified written request. For any QWR received before January 10, 2014, the servicer must:

> (A) make ***appropriate corrections*** in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction which shall include the name and telephone

23

umber of a representative of the servicer who can provide assistance to the borrower);

(B) after *conducting an investigation*, provide the borrower with a ***written explanation*** or clarification that includes--
(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).[7]

Here, the unrebutted evidence shows that Saccameno only submitted one written dispute letter to Ocwen before January 10, 2014. Ocwen's business records show that it received the letter from Saccameno on July 17, 2013. P18 at 2311 (4:15:39 PM, "Written customer Correspondence Received via Fax"). Ocwen set up a loan inquiry workflow that same day and sent Saccameno an acknowledgement letter to her the very next day. *Id.* at 2312 (7/18/203, 3:20:43 AM, "Written Dispute Correspondence Received – Acknowledgment Letter Request Submitted"). This response is in line with Ocwen's normal policies and procedures. Tr. 339:1-19 ("And in the normal course is you would have received a written -- had the research department received this, would have received an acknowledgment letter, as we had seen in the previous letter that was received, and then a response letter."). On July 23, 2013, a "Research Bankruptcy" investigation commenced

---

[7] During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment owed by such borrower and relating to such period or qualified written request to any consumer reporting agency. 12 C.F.R. § 1024.35(e)(3).

and a search of PACER confirmed that Saccameno has been discharged. *Id.* (7/23/17, 7:47:44 AM). The bankruptcy coding on the account was then corrected to reflect the discharge on July 25, 2013. *Id.* at 2313 (7/25/13, 6:17:12 AM). Then on July 25, 2013, there is an internal request to the cashiering department to apply the funds in suspense towards the principle balance. *Id.* (7/25/13, 7:01:56 AM). On July 31, 2013, the research investigation was complete and a bankruptcy reconciliation was ordered, P18 at 2316; this reconciliation as completed by August 1, 2013, and as a result, prior service fees were *waived* off Saccameno's account. *Id.* at 2318. Ocwen concluded that Saccameno's loan is next due for May 1, 2013. *Id.* at 2319.

On August 6, 2013, Ocwen's records show it made an outbound call to Saccameno, during which Saccameno express interest in a loan modification and inquired about her next due date. P18 at 2323. Saccameno sent Ocwen her August 6, 2013 fax that same day. *Id.;* P15. Ocwen consolidated this research request with the on-going investigation. P18 at 2324.

Based on Ocwen's internal investigation, the correction of the discharge coding, and the reconciliation performed, Ocwen considered the dispute "Resolved" as of August 14, 2013. P18 at 2326 (8/14/2013, 1:15:26 AM). Accordingly, on August 14, 2013, Ocwen sent out a letter to Saccameno, which provided a written explanation of the investigation performed in response to both her written letter and her fax, and which provided her with the research department's conclusion that her loan is next due for May 1, 2013. P16; P18 at 2327.

Ocwen's handling of the July 17, 2013 research letter proves that Ocwen complied with its obligations under RESPA. Within 30 days of receiving Saccameno's dispute letter, Ocwen conducted an internal investigation and "appropriately corrected" the account to code the bankruptcy discharge and waive off the fees that no longer applied. P18 at 2323, 2318. Ocwen reviewed the payment history and determined that as of July 2013, Saccameno was due for May

1, 2013. Ocwen then provided her with a written "statement of the reasons for which [Ocwen] believes the account of the borrower is correct as determined by the servicer, as required by 12 U.S.C. § 2605(e)(2). There is no evidence suggesting that Ocwen did not conduct an investigation or did not provide a written response to Saccameno. Based on its business records at the time of the written response, August 14, 2013, Ocwen made the account corrections and provided Saccameno with all of the information that was available as of that date. Ocwen's conclusions regarding the payment due date were reasonable *at that time*, even if evidence shows that subsequently, it was determined that Marla's bankruptcy coding error caused the delay in application of Saccameno's final 2 bankruptcy plan payments. *See Vilkofsky*, 2017 U.S. Dist. LEXIS 29994, at *15.

Furthermore, Saccameno has not presented any evidence of *financial loss* that was *directly* caused by Ocwen's August 14, 2013 response letter, which is required by the Seventh Circuit before any emotional distress damages may even been considered. *Aiello*, 239 F.3d at 881 (plaintiff must first show that she had suffered a financial loss, before being permitted to piggyback a claim for damages for incidental emotional distress).

Based on the record evidence, the jury could not reasonably conclude that Ocwen's handling of the July 17, 2013 letter violated any provision of RESPA, or that Marla's Mistake caused Saccameno any damages.

### 2. Ocwen Complied With Its RESPA Obligations In Its Handling of the March 2014 Letter.

For any QWR received after January 10, 2014 a servicer must respond by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the

correction, and contact information, including a telephone number, for further assistance; **or**

(B) ***Conducting a reasonable investigation*** and providing the borrower with a written ***notification*** that includes a statement that the servicer has determined that ***no error occurred***, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e). A servicer complies with RESPA by acting in line with ***either*** Section A or B – both courses of action are not required. *Id.*

Here, Ocwen's business records show that Susan Van Sky, on behalf of Saccameno, sent a fax to Ocwen on March 21, 2014. P18 at 2355 (3/21/2014, 2:38:57); P33. Ocwen accurately coded this letter as "Written Customer Correspondence Received via Fax." There is no letter with a fax line or attachments in evidence, but Van Sky testified that she sent this latter to Ocwen. Tr. 504:24-16. On March 24, 2014, just days later, Ocwen sent an acknowledgment letter to Van Sky. P18 at 2356 (3/24/2014, 2:16:20). A research inquiry was initiated internally the very next day, *id.* (3/25/2014, 12:31:27 AM), and in line with Ocwen's procedures. Tr. 339:1-19. Ocwen's internal investigation determined that, based on Ocwen's records, the account was past due more than 90 days and that, as a result, only a reinstatement payment could be accepted to cure the default. P18 at 2357 (3/31/2014, 8:53:37 PM).

On April 9, 2014, Ocwen deemed its investigation complete. P18 at 2358 (4/9/2014, 12:42:53 AM). Accordingly, on that same day, Ocwen sent two responses letters to Van Sky and Saccameno that provided: (1) a complete transaction history of the account (D13); and (2) a written statement explaining that the investigation confirmed that, according to Ocwen's records at that time, Saccameno's loan was contractually past due and that the reinstatement payment would be needed to cure the default (D14). The second letter also explained that because the account was

27

past due and in foreclosure, only certified funds in the full amount of the reinstatement could be applied to the account. D14. This explanation shows why Ocwen was returning the payments that were only for one monthly payments; essentially confirming for Saccameno that, at that time, Ocwen did not believe any error had occurred on the account. While Saccameno highlighted at trial that there is a typo in Saccameno's name in one sentence of the letter, the name and account information in the header and the "Concern" parts of the letter show that Ocwen was referring to Saccameno's account. As Van Sky testified, it is likely that there was a replacement typo in the second sentence and that someone at Ocwen missed replacing this information when the letter was being created. Tr. 512:20-25. But, Van Sky's testimony that the rest of the information in the letter "wasn't specific to Monette's case" is undermined by Ocwen's business records, which were made at or near the time of the event, and show that the results of the investigation are accurately reflected in the April 9, 2014 response letter. *Compare* P18 at 2357 (3/31/2014, 8:53:37 PM) with D14.

Most importantly, it is irrelevant to the RESPA analysis whether Ocwen's conclusion after is reasonable investigation was accurate in hindsight. *See Vilkofsky*, 2017 U.S. Dist. LEXIS 29994, at \*15. Thus, the RESPA claim fails as a matter of law because Saccameno has not offered any evidence showing that Ocwen either failed to conduct a reasonable investigation and a written response to Saccameno. Furthermore, as with her first letter, Saccameno has not presented *any* evidence of financial loss that was *directly* caused by Ocwen's April 9, 2014 response letter. Proof

of financial loss is required by the Seventh Circuit before any emotional distress damages may even been considered. *Aiello*, 239 F.3d at 881.

Based on the record evidence, the jury could not reasonably conclude that Ocwen's handling of the March 21, 2014 letter violated any provision of RESPA, or that Marla's Mistake caused Saccameno any damages.

## III.    CONCLUSION

For the reasons shown above, Defendants' Motion for Judgment As A Matter of Law should be granted.

Dated: April 9, 2018                              By:    /s/ *Lynne E. Evans*                           

Alexander D. Bono (Fed. Bar ID 25845)
Lynne E. Evans (Fed. Bar ID 313479)
Kelly K. Huff (Fed. Bar ID 319084)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000

*Attorneys for Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MONETTE E. SACCAMENO, | : |
| | : |
| Plaintiff, | : Case No. 1:15-cv-1164 |
| | : |
| v. | : Hon. Joan B. Gottschall |
| | : |
| OCWEN LOAN SERVICING, LLC, and U.S. | : Magistrate Judge Susan E. Cox |
| BANK NATIONAL ASSOCIATION, *as trustee for* | : |
| C-Bass Mortgage Loan Asset-Backed Certificates, | : |
| Series 2007 RP1, | : |
| | : |
| Defendants. | : |
| | : |

**PROPOSED ORDER**

AND NOW this, _____, day of _____, 2018, upon consideration of Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1's ("***Defendants***") Motion for Judgment As A Matter of Law, and all responses, it is ORDERED that:

1.      Defendants' Motion is GRANTED; and

2.      Plaintiff's Counts I through IV are dismissed, with prejudice.


_____
The Honorable Joan B. Gottschall
United States District Judge