**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MONETTE E. SACCAMENO, | : |
| | : Case No. 1:15-cv-1164 |
| Plaintiff, | : |
| | : |
| v. | : Hon. Joan B. Gottschall |
| | : |
| OCWEN LOAN SERVICING, LLC, and U.S. | : Magistrate Judge Susan E. Cox |
| BANK NATIONAL ASSOCIATION, *as trustee for* | : |
| C-Bass Mortgage Loan Asset-Backed Certificates, | : |
| Series 2007 RP1, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

TO:     Nicholas Wooten, Esq.
         Nick Wooten, LLC
         4935 Bay Hill Drive
         Conway, AR 72034
         Tel: (334) 887-3000
         nick@nickwooten.com

**NOTICE OF DEFENDANTS' MOTION TO AMEND THE JUDGMENT**

Please take notice that pursuant to Local Rule 78.1, on **July 25, 2018 at 9:30 a.m.**, Duane

Morris LLP shall appear before the Honorable Joan B. Gottschall, in Courtroom 2325, U.S.

Courthouse, 219 S. Dearborn St., Chicago, Illinois, and shall present the Motion to Amend the

Judgment of Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as

trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1.

Dated: July 19, 2018                    By:  /s/ *Kelly K. Huff*
                                        Alexander D. Bono (Fed. Bar ID 25845)
                                        Brett L. Messinger (Fed. Bar ID 63020)
                                        Kelly K. Huff (Fed. Bar ID 319084)
                                        **DUANE MORRIS LLP**
                                        30 South 17th Street
                                        Philadelphia, PA 19103
                                        Tel: (215) 979-1000

                                        *Attorneys for Defendants, Ocwen Loan*
                                        *Servicing, LLC and U.S. Bank National*
                                        *Association, as trustee for C-Bass Mortgage*
                                        *Loan Asset-Backed Certificates, Series 2007*
                                        *RP1*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 19, 2018, she caused the foregoing Notice of

Motion to Amend the Judgment to be electronically filed with the Clerk of the U.S. District

Court, using the Court's CM/ECF system, which will send electronic notification of the filing

to those parties who have appeared and are registered as CM/ECF participants in this matter.

Parties may access this filing through the Court's CM/ECF system.

/s/  *Kelly K. Huff*

DM1\8849091.12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MONETTE E. SACCAMENO, | : |
| | : |
| Plaintiff, | : Case No. 1:15-cv-1164 |
| | : |
| v. | : Hon. Joan B. Gottschall |
| | : |
| OCWEN LOAN SERVICING, LLC, and U.S. | : Magistrate Judge Susan E. Cox |
| BANK NATIONAL ASSOCIATION, *as trustee* | : |
| *for* C-Bass Mortgage Loan Asset-Backed | : |
| Certificates, Series 2007 RP1, | : |
| | : |
| Defendants. | : |

**DEFENDANTS' MOTION TO AMEND THE JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 59, Defendants, Ocwen Loan Servicing,

LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed

Certificates, Series 2007 RP1, respectfully move to amend the judgment because the jury's

punitive damage award to Plaintiff Monette E. Saccameno violates due process and is

unconstitutionally excessive.  The Court should reduce any award of punitive damages to

comply with constitutional standards of due process.  In the alternative to reducing the award,

the Court should order a new trial unless Plaintiff accepts a reduced punitive damages award that

complies with constitutional standards of due process.

Dated: July 19, 2018

By: /s/ *Kelly K. Huff*

Alexander D. Bono (Fed. Bar ID 25845)
Brett L. Messinger (Fed. Bar ID 63020)
Lynne E. Evans (Fed. Bar ID 313479)
Kelly K. Huff (Fed. Bar ID 319084)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000

*Attorneys for Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1*

DM1\8849091.12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MONETTE E. SACCAMENO, | : |
| | : |
| Plaintiff, | : Case No. 1:15-cv-1164 |
| | : |
| v. | : Hon. Joan B. Gottschall |
| | : |
| OCWEN LOAN SERVICING, LLC, and U.S. | : Magistrate Judge Susan E. Cox |
| BANK NATIONAL ASSOCIATION, *as trustee for* | : |
| C-Bass Mortgage Loan Asset-Backed Certificates, | : |
| Series 2007 RP1, | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANTS' MEMORANDUM OF LAW SUPPORTING THEIR
MOTION TO AMEND THE JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.     ARGUMENT ...................................................................................................1

     A.     The Punitive to Compensatory Damages Ratio is Constitutionally Improper.................................................................................................. 2

     B.     The Disparity Between the Punitive Damages Award and the Civil Penalties Imposed in Comparable Cases Shows that the Jury's Award Is Excessive.................................................................................................. 7

     C.     Ocwen's Conduct Was Not So Reprehensible as to Justify the Jury's Award of $3 Million in Punitive Damages. .......................................... 7

II.     CONCLUSION ...........................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Bennett v. American Medical Response, Inc.*, 226 F. App'x 725 (9th Cir. 2007) ..........................4

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) .............................................................. 2, 7-10

*Burruss v. Cook Cty. Sheriff's Office*, No. 08 C 6621, 2013 WL 3754006
    (N.D. Ill. July 15, 2013) ...................................................................................................10

*E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013) ...................................................... 9-10

*Heard v. Ill. Dep't of Corrs.*, No. 06 C 644, 2012 WL 5199616
    (N.D. Ill. Oct. 22, 2012) .....................................................................................................2

*Keeling v. Esurance Ins. Co.*, 660 F.3d 273 (7th Cir. 2011) ...............................................2, 6

*Kim v. Carter's Inc.*, 98 F.3d 362 (7th Cir. 2010) ..........................................................5

*Munro v. Golden Rule Ins. Co.*, 393 F.3d 720 (7th Cir. 2004) ........................................2

*Murphy v. Smith*, Case No. 12-cv-0841-SCW, 2015 WL 13236221
    (S.D. Ill. Sept. 25, 2015) ...................................................................................................2

*Quigley v. Winter*, 598 F.3d 938 (8th Cir. 2010) ...........................................................4

*Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004) ...................................................4

*Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461 (M.D. Pa. 2009) ...........................5

*Stachewicz v. Nat'l Union Fire Ins. Co. of Pittsburg*, No. 3:09-cv-470-JPG,
    2009 WL 3065065 (S.D. Ill. Sept. 23, 2009) ....................................................................6

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ................... 1, 3, 6-8, 10-11, 13

*U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 804 F.3d 889 (7th Cir. 2015) ....................2

*See v. Strunk*, No. 06-2064, 2006 WL 2916819 (C.D. Ill. Oct. 10, 2006) .....................5

*Williams v. ConAgra Poultry Co.*, 378 F.3d 790 (8th Cir. 2004) ...............................3-4

**State Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) ..............................5

*Bates v. William Chevrolet/Geo, Inc.*, 785 N.E.2d 53 (Ill. App. 2003) ...........................6

*Dubey v. Public Storage, Inc.*, 918 N.E.2d 265 (Ill. App. 2009) ...............................3, 6

DM1\8849091.12

*Gehrett v. Chrysler Corp.*, 882 N.E.2d 1102 (Ill. App. 2008) ....................................................3, 5

**Federal Statutes and Rules of Court**

Fair Debt Collection Practices Act ........................................................................................ 4-5

Fair Housing Act.........................................................................................................................4

FED. R. CIV. P. 59(e)...................................................................................................................2

**Other Authorities**

810 ILCS 505/7(b) .....................................................................................................................7

DM1\8849091.12

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1 ("U.S. Bank," together with Ocwen, the "Defendants"), respectfully move to amend the judgment. The Court should reduce any award of punitive damages to comply with constitutional standards of due process. A reduction in the punitive damage award is necessary because the punitive damage award in this case is excessive and violates constitutional guarantees of due process. In the alternative, the Court should order a new trial unless Plaintiff Monette E. Saccameno accepts a reduced punitive damages award that complies with constitutional standards of due process.

## I. ARGUMENT

The only claim on which punitive damages were available in this case was Plaintiff's claim for an alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count III). The jury awarded $3 million in punitive damages for that claim. This punitive damage award is grossly excessive, and thus unconstitutional, in light of the $12,000 economic damage award and $70,000 in non-economic damages awarded to Plaintiff for the same claim.

The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. *Id.* at 417. The Supreme Court has "instructed courts reviewing punitive damages awards to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). If, after

reviewing these factors, remittitur is appropriate, Rule 59(e) of the Federal Rules of Civil Procedure authorizes a court to alter or amend the judgment, reducing the punitive damage award to an amount consistent with due process. *See Heard v. Ill. Dep't of Corrs.*, No. 06 C 644, 2012 WL 5199616, at *1-3 (N.D. Ill. Oct. 22, 2012).

### A.     The Punitive to Compensatory Damages Ratio is Constitutionally Improper.

The Supreme Court has recognized that punitive damage awards may not be grossly out of proportion to the actual harm suffered or to the reprehensibility of the conduct at issue. *Gore*, 517 U.S. at 575-76. Indeed, anything over a single-digit multiplier is unlikely to pass constitutional muster, especially in "simple economic-loss cases," *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721 (7th Cir. 2004), and "a multiplier of four [may be] close to the constitutional limit." *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011) (citing *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 23-24 (1991), and *Campbell,* 538 U.S. at 425).

Both Seventh Circuit and Illinois precedent establishes that a punitive damage award should be compared only to the compensatory damages awarded on the cause of action that permits punitive damages. Compensatory damages awarded on claims for which punitive damages are unavailable are irrelevant to this analysis. For example, in *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 804 F.3d 889 (7th Cir. 2015), the Seventh Circuit measured the constitutionality of the punitive damages award by comparing the $20 million punitive damages awarded under ICFA to the compensatory damages, or lack thereof, awarded under the same statute. *Id.* at 891-92. The compensatory damages awarded under the breach of contract and breach of warranty claims for related claims were irrelevant. *Id.*; *cf. Murphy v. Smith*, Case No. 12-cv-0841-SCW, 2015 WL 13236221, at *6-7 (S.D. Ill. Sept. 25, 2015) (reviewing excessiveness of and remitting punitive damage awards by comparing the compensatory and punitive damage awards for each separate claim, rather than in the case as a whole).

2

Similarly, the Appellate Court of Illinois, in *Gehrett v. Chrysler Corp.*, 882 N.E.2d 1102 (Ill. App. 2008), recognized that the appropriateness of a punitive damages award is determined by looking at the amount of compensatory damages awarded under ICFA, not the amount awarded in the case as a whole. *Id.* at 1118-19. In that case, the plaintiff recovered $8,527.97 in actual damages under ICFA. *Id.* The court used this amount to determine whether the punitive damage award of $88,168.50 was reasonable. *Id.* at 1111, 1119. In so ruling, the court refused to include an additional $15,570, which was awarded on the breach of warranty claim, in the base calculation of compensatory damages. *Id.* at 1119. The court later reduced the punitive damages award to $59,695.79, so that the ratio of compensatory to punitive damages was approximately 1 to 7. *Id.* at 1121.

The Appellate Court of Illinois engaged in the same analysis in *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265 (Ill. App. 2009). In that case, the court noted that the ratio of punitive damages to compensatory damages for the ICFA claim was 3:1, and therefore constitutional under *State Farm*. *Id.* at 282-83. However, the court separately analyzed the conversion claim, where the ratio of punitive to compensatory damages was 149:1, and remanded the action to the trial court for a new trial on damages solely on the conversion claim. *Id.*

Courts around the country have applied the same principle. In *Williams v. ConAgra Poultry Co.*, 378 F.3d 790 (8th Cir. 2004), the plaintiff asserted claims for both a hostile work environment and wrongful termination. *Id.* at 792. After a remittitur by the district court, the plaintiff recovered $173,156 in compensatory damages and $500,000 in punitive damages on the termination claims, as well as $600,000 in compensatory damages and $6,063,750 in punitive damages on the hostile work environment claim. *Id.* at 793. On appeal, the defendant successfully challenged the punitive damages award for the hostile work environment claim as

3

unconstitutionally excessive.  *Id.* at 798-99.  In examining the ratio of compensatory damages to punitive damages, the court looked only to the compensatory damages for the hostile work environment claim, rather than considering the compensatory damage award as a whole.  *Id.*

The Eighth Circuit again followed the same logic in *Quigley v. Winter*, 598 F.3d 938 (8th Cir. 2010), where the plaintiff was awarded compensatory damages of $13,685 on her Fair Housing Act and corresponding Iowa Civil Rights Act claims, as well as $400 on her breach of contract claim, and $250,000 in punitive damages.  *Id.*  943 & n.1.  When calculating the constitutional limits of the punitive damage award, however, the court only considered the $13,685 compensatory damage award and ignored the $400 that the jury awarded on the breach of contract claim.  *Id.* at 955-56.

The Ninth Circuit also employed the same approach in *Bennett v. American Medical Response, Inc.*, 226 F. App'x 725 (9th Cir. 2007), in which the plaintiff succeeded on her FDCPA claim as well as her state-law negligent collection claim.  *Id.* at 727.  The district court awarded $100,000 in compensatory damages, along with $649,000 in punitive damages, on the state law claim.  *Id.* at 728.  The Ninth Circuit determined that the punitive damage award was constitutionally excessive after comparing the ratio of punitive to compensatory damages on the state law claim only.  *Id.* at 728-29.

Thus, the Court may consider only the compensatory damages awarded under ICFA when measuring the excessiveness of the punitive damages award in this case.[1]  Here, the ratio of punitive to compensatory damages under ICFA far exceeds a single-digit multiplier.

---

[1] This Court previously held that Plaintiff failed to show that Ocwen's breach of contract amounted to an independent tort, as required for punitive damages to be awarded on a breach of contract claim under Illinois law.  Minute entry, Dkt. No. 243.  Therefore, Plaintiff could not have recovered punitive damages on her breach of contract claim.  Punitive damages are similarly unavailable for Plaintiff's FDCPA and RESPA claims.  *See Randolph v. IMBS, Inc.*,

ICFA defines "actual damages" to mean "actual pecuniary loss." *Kim v. Carter's Inc.*, 98 F.3d 362, 365 (7th Cir. 2010). In addition, of all the claims Plaintiff asserted here on which the jury made an award, punitive damages are only available for the ICFA claim, and then only available once the plaintiff establishes actual pecuniary damages. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 858-61 (Ill. 2005). As a result, the appropriate ratio for the Court to consider is the actual pecuniary damages on Plaintiff's ICFA claim as compared to the punitive damages on that claim. Here, the jury awarded $12,000 in actual damages on the ICFA claim, and punitive damages that were *250 times that amount*. That ratio is plainly unconstitutional.[2]

Even if the Court were to compare the punitive damages award to all of the compensatory damages on the ICFA claim—instead of just the actual pecuniary damages, as is proper—the punitive damages award cannot stand. The jury awarded a total of $82,000 in compensatory damages on the ICFA claim, *which included $70,000 of non-economic loss*. The jury's punitive damages award was *36.6 times that amount*. Under any measure, that ratio is grossly excessive and unconstitutional. Indeed, in similar cases, both the Seventh Circuit and Illinois courts have only upheld or approved punitive damage awards with ratios of punitive damages to compensatory damages ranging from 4:1 to 7:1 for ICFA claims. *See Gehrett*, 882 N.E.2d at 1121-22 (reducing a punitive damages award so that the ratio of punitive to compensatory damages was

---

368 F.3d 726, 728 (7th Cir. 2004) (noting that "violations of the FDCPA generally lead to small penalties and never to punitive damages"); *See v. Strunk*, No. 06-2064, 2006 WL 2916819, at *10 (C.D. Ill. Oct. 10, 2006) (recognizing the "plain language of the statute indicates that an award of punitive damages is unavailable as a remedy for any violation of the FDCPA"); *Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461, 470 (M.D. Pa. 2009) ("A review of RESPA reveals that punitive damages are not authorized by the statute.").

[2] The jury awarded $12,000 in economic damages under ICFA even though Saccameno only asked for $10,000 and presented no admissible evidence of economic damages beyond her own testimony that she paid $4,000 in attorneys' fees, $4,000 for being out of work for one month, and $2,000 for prescription costs.

7:1); *Keeling*, 660 F.3d at 275 (noting that a multiplier of five would be within constitutional limits); *see also Dubey*, 918 N.E.2d at 282-83 (upholding 3:1 ratio of punitive damages to compensatory damages for ICFA claim, but vacating punitive damage award on conversion claim where ratio of punitive damages to compensatory damages was 149:1); *Bates v. William Chevrolet/Geo, Inc.*, 785 N.E.2d 53, 58-61 (Ill. App. 2003) (upholding ratio of punitive damages to compensatory damages of 7:1); *Stachewicz v. Nat'l Union Fire Ins. Co. of Pittsburg*, No. 3:09-cv-470-JPG, 2009 WL 3065065, at *5-6 (S.D. Ill. Sept. 23, 2009) (noting that a ratio of compensatory damages to punitive damages 1:1.34 would be within constitutional limits) .[3]

Finally, the Supreme Court has explained that, where a compensatory damage award includes damages for emotional distress, a low ratio of punitive damages to compensatory damages is required because an emotional distress award already includes a "punitive element" that is then "duplicated in the punitive damage award." *State Farm*, 538 U.S. at 426. Indeed, in *State Farm*, the Supreme Court noted that "[m]uch of the distress was caused by the outrage and humiliation the [plaintiffs] suffered at the actions of their insurer; and it is a major role of punitive damages to condemn such conduct. Compensatory damages, however, already contain this punitive element." *Id.* The same situation is present here. The jury already awarded Plaintiff $70,000 as compensation for her emotional distress (almost six times the actual pecuniary damages), as it relates to her ICFA claim. Defendants have therefore already been "punished," and any punitive damage award is now duplicative and unconstitutional.

The jury's award of punitive damages in the amount of $3 million, when the compensatory damages were at most $82,000, crosses the line of constitutional impropriety and the "outermost

---

[3] Given Defendants' conduct, as more fully set forth below, if punitive damages are appropriate, the amount should be on the lower end of the allowable ratio.

limit of the due process guarantee." *Id.* at 425. The Court should reduce the punitive damage award consistent with the controlling case law cited here.

**B.**     **The Disparity Between the Punitive Damages Award and the Civil Penalties Imposed in Comparable Cases Shows that the Jury's Award Is Excessive.**

The punitive damages award is also excessive when compared to the civil penalties available for violations of ICFA. When the Attorney General or State's Attorney is the entity bringing suit, § 7 of ICFA limits civil penalties for engaging in "any method, act or practice declared unlawful under" the act to $50,000. 810 ILCS 505/7(b).[4] The punitive damages awarded in this case therefore vastly outweigh any possible civil penalty that could have been assessed against Ocwen for the same behavior. This factor thus further demonstrates the excessiveness of the punitive damages award in this case.

**C.**     **Ocwen's Conduct Was Not So Reprehensible as to Justify the Jury's Award of $3 Million in Punitive Damages.**

Finally, it should be presumed that a plaintiff has been made whole for her injuries by compensatory damages, such that punitive damages should *only* be awarded if the defendant's culpability, after having paid compensatory damages, is "so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm*, 538 U.S. at 419. In addition, a punitive damage award must reflect that "some wrongs are more blameworthy than others." *Gore*, 517 U.S. at 575. Thus, the Supreme Court has repeatedly cautioned that "nonviolent crimes are less serious than crimes marked by violence or the threat of violence," *id.* at 576 (quoting *Solem v. Helm*, 463 U.S. 277, 292-93 (1983)), and that "'trickery and deceit' are

---

[4] This section also allows additional penalties, up to $50,000 per violation, to be imposed when a defendant acts with the intent to defraud. *Id.* However, there is no evidence of fraudulent intent in this case, meaning these additional penalties are inapplicable.

more reprehensible than negligence." *Id.* (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 (1993)).

Based on these principles, the Supreme Court has outlined five factors to consider in determining the reprehensibility of a party: (1) whether "the harm caused was physical as opposed to economic"; (2) whether "the tortious conduct evinced an indifference to a reckless disregard for the health and safety of others"; (3) whether "the target of the conduct had financial vulnerability"; (4) whether "the conduct involved repeated actions or was an isolated incident"; and (5) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. Furthermore, "[t]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.*

In this case, Plaintiff failed to establish that Ocwen's conduct was so reprehensible as to justify a $3 million award of punitive damages against Defendants. Plaintiff established her loan experienced accounting issues, despite the well-intended attempts by Ocwen employees to reconcile them. The evidence showed that problems with Plaintiff's account first started as a result of human error, when one employee incorrectly entered information into Ocwen's computer system stating that Plaintiff's bankruptcy action had been dismissed, when actually Plaintiff's debt had been discharged through the bankruptcy process. This mistake was corrected one month later, only to be compounded by another inadvertent error in closing the bankruptcy module. The failure to close the bankruptcy module was, too, a result of human error. Because of a series of missteps, Ocwen failed to correct the mistakes before Plaintiff filed suit. Defendants recognized the problems with the account at trial and Gina Feezer, a senior loan analyst at Ocwen, testified that she had never seen a situation the one that occurred with Saccameno's account. Trial Tr. 67:24-

68:3 (see Trial Transcripts as Exhibit A). None of Ocwen's behavior constitutes the type of reprehensible behavior that a $3 million punitive damage award is designed to punish and deter.

An examination of the Supreme Court's reprehensibility factors bolsters this conclusion. The first two factors, which relate to physical harm or reckless disregard as to the health and safety of others, are inapplicable in this case. Both of these factors reflect the Supreme Court's reminder that economic harm is less reprehensible than physical harm or the potential for such physical harm. *Gore*, 517 U.S. at 576. Thus, in *Gore*, where the reprehensible conduct involved undisclosed, refinished damages to new cars, the Court found it notable that "[t]he presale refinishing of the car had no effect on its performance or safety features, or even its appearance for at least nine months after his purchase. BMW's conduct evinced no indifference to or reckless disregard for the health and safety of others." *Id.* While recognizing that there are some instances where economic injury can warrant punitive damages, the Court ***cautioned*** that "this observation does not convert all acts that cause economic harm into torts that are sufficiently reprehensible to justify a significant sanction in addition to compensatory damages." *Id.*

The Seventh Circuit's opinion in *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013), by contrast, demonstrates the type of physical injury and reckless disregard for the health and safety of others that these factors are meant to address. In that case, the Court upheld an award of punitive damages accompanying a verdict on a disability discrimination case where: (1) the plaintiff "suffered severe, and ultimately disabling, pain"; and (2) "AutoZone's conduct demonstrated a reckless disregard for [the plaintiff's] health," since "AutoZone was aware that [the plaintiff] suffered from a back injury but did not adequately accommodate his disability and required him to mop the floors anyway." *Id.* at 839.

DM1\8849091.12

This case resembles *Gore*, rather than *AutoZone*. As in *Gore*, there is no evidence in this case that Defendants intended to cause any physical harm to Plaintiff. Similarly, and unlike in *AutoZone*, Defendants here did not demonstrate the type of reckless disregard for Plaintiff's health and safety that justifies such a significant punitive damage award. *See also Burruss v. Cook Cty. Sheriff's Office*, No. 08 C 6621, 2013 WL 3754006, at *12 (N.D. Ill. July 15, 2013) (reducing a punitive damage award after recognizing that the decision to disband an elite team of correctional officers as political retaliation did not "appear[] to impinge on the health or safety of others in any direct way"). Thus, these two factors weigh against a significant punitive damage award in this case.

The fourth factor—whether this was an isolated incident or involved repeated actions—also weighs against a finding of reprehensibility. The Supreme Court recognized that, as in *Gore*, punitive damages may be appropriate based on the particular reprehensibility of BMW's "nationwide pattern of tortious conduct." *Gore*, 517 U.S. at 576. The Court thus explained that "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Id.* at 576-77. The Court reasoned that punitive damages for such a pattern of misconduct mirrors the harsher punishments authorized for recidivists in the criminal context. *Id.*

However, the Supreme Court has since cautioned that a significant punitive damage award is only appropriate based on this recidivism theory where there are multiple examples of the *same* reprehensible conduct. *State Farm*, 538 U.S. at 422. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* Thus, courts must remember that punitive damages can only punish a defendant "for the

10

conduct that harmed plaintiff, not for being an unsavory individual or business." *Id.* at 423. Indeed, "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.*

Here, this factor too weighs against a significant punitive damage award. The unrebutted testimony in this case reveals that Plaintiff's account was an outlier. Although this does not lessen the frustration Plaintiff may have felt in trying to rectify Ocwen's mistakes, there is no evidence that Defendants need to be punished or deterred based on similar, widespread failures. Moreover, to the extent that Plaintiff relies on the consent orders (Ex. 42 and 44, see as Exhibits B and C to this Motion) to establish Defendants' reprehensibility, this reliance is misplaced.[5] The consent orders were irrelevant to, and bear no direct relation to, the bankruptcy discharge miscoding and accounting mistakes that occurred on Plaintiff's account.

Finally, there is absolutely ***no*** evidence in this case that the harm here was a result of any intentional malice, trickery, or deceit by Ocwen. While it has been determined, in hindsight, that the first employee's mistake created an internal accounting issue with Plaintiff's loan, which was later remedied, only to be compounded by another error that prevented the foreclosure module from closing, the evidence shows that these were inadvertent mistakes caused by human error. There is no evidence that Ocwen was deliberately ignoring Plaintiff or the errors in her account. Ocwen's comment log instead shows that multiple, well-intentioned Ocwen employees attempted to resolve the issues. P18. Albeit in hindsight, while these attempts were unsuccessful, the

---

[5] Defendants maintain that these exhibits should not have been admitted into evidence in the first place. *See* Defendants' Motion for New Trial, being filed concurrently with this motion. However, in the event that the Court disagrees with Defendants on this issue, the orders still cannot substantiate a $3 million punitive damage award.

evidence cannot be reasonably interpreted to show any intent to mislead or deceive on the part of Defendants.

Moreover, every single letter and account statement sent by Ocwen included the bankruptcy "heads up" language, which put Plaintiff on notice that: "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However*, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt*." *See* Tr. 431:25-447:23; *see also* D1 to D17; P16; P17; P29; P30; P31; P32; P68. Plaintiff therefore had express written notice every time she got a letter that those letters were ***not*** an attempt to collect from her since she ***knew*** she had a bankruptcy discharge. Consequently, nothing in the record shows that Plaintiff's harm was the result of anything more than inadvertent mistakes.

Even the one factor that is arguably at issue here—Plaintiff's financial vulnerability—does not show the type of reprehensibility necessary for a punitive damage award to comply with constitutional limits. Plaintiff's own evidence shows that Ocwen ***never*** took advantage of Plaintiff's financial vulnerability. Indeed, there was no evidence that Plaintiff overpaid any monthly payments or paid any improper late fees, corporate advances, or inspection fees. Rather, Ocwen's business records show that any fees that were applied to Plaintiff's account were either reversed/credited back to her, or never actually collected. P24 (showing transaction history); Tr. 470:16-471:17, P18 at 2318 (reversal of fees during bankruptcy reconciliation); Tr. 649:12-20 ($1,800 returned to Plaintiff); Tr. 650:23-651:3 (write off of corporate advances). The evidence shows that the monthly payments were returned to Plaintiff every month, rather than being applied to her mortgage obligations, and Plaintiff testified that she was able to use the money, in part, to install a new roof and windows on her home. Trial Tr. 749:5-15, 876:14-877:7.

Accordingly, none of the reprehensibility factors support a finding of the type of conduct necessary for a punitive damage award to comport with due process. Because "the absence of all of [the reprehensibility factors] renders any award suspect," *State Farm*, 538 U.S. at 419, this Court should grant Defendants' motion and reduce the punitive damage award to a level that does not violate the due process guarantees in the Constitution.

## II.  CONCLUSION

For the reasons shown above, the Court should grant Defendants' Motion to Amend the Judgment and reduce the award of punitive damages to an amount that complies with constitutional standards of due process. In the alternative, the Court should order a new trial unless Plaintiff Monette E. Saccameno accepts a reduced punitive damages award that complies with constitutional standards of due process.

Dated: July 19, 2018

By: /s/ *Kelly K. Huff*
Alexander D. Bono (Fed. Bar ID 25845)
Brett L. Messinger (Fed. Bar ID 63020)
Kelly K. Huff (Fed. Bar ID 319084)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000

*Attorneys for Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1*

DM1\8849091.12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MONETTE E. SACCAMENO, | : |
| | : |
| Plaintiff, | : Case No. 1:15-cv-1164 |
| | : |
| v. | : Hon. Joan B. Gottschall |
| | : |
| OCWEN LOAN SERVICING, LLC, and U.S. | : Magistrate Judge Susan E. Cox |
| BANK NATIONAL ASSOCIATION, *as trustee for* | : |
| C-Bass Mortgage Loan Asset-Backed Certificates, | : |
| Series 2007 RP1, | : |
| | : |
| Defendants. | : |
| | : |

**PROPOSED ORDER**

AND NOW this, _____, day of _____, 2018, upon consideration of

Defendants, Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-

Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1's ("Defendants") Motion to

Amend the Judgment, and all responses, it is ORDERED that:

      1.     Defendants' Motion is GRANTED; and

      2.     The punitive damages award will be reduced to $_____.


                          _____
                          The Honorable Joan B. Gottschall
                          United States District Judge