UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONETTE E. SACCAMENO, <br><br> Plaintiff, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC; and U.S. BANK NATIONAL ASSOCIATION, *as trustee for* C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007, RP1, <br><br> Defendants. | Honorable Joan B. Gottschall <br><br> Case No.: 15-cv-01164 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff Monette E. Saccameno, by and through counsel, responds in opposition to the Motion for Judgment as a Matter of Law (DE #314) filed by Defendants Ocwen Loan Servicing, LLC and U.S. Bank National Association, as trustee for C-Bass Mortgage Loan Asset-Backed Certificates, Series 2007 RP1 (hereinafter collectively "Ocwen") as follows:

**INTRODUCTION**

At the close Ocwen's case-in-chief on April 9, 2018, ECF No. 256, defendants moved for a judgment as matter of law. After the Court reserved its ruling on the motion, the jury found in the Plaintiff's favor on each of the four claims brought before it and awarded a grand total of $3,582,000 in damages. These claims included: (1) breach of contract (Count I); (2) violation of the Fair Debt Collection Practices Act ("FDCPA") (Count II); (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count III); and (4) violation of the Real Estate Settlement Procedures Act ("RESPA") (Count IV). Ocwen argues it is entitled to a judgement as a matter of law because there was no legally sufficient evidentiary basis for a

1

reasonable jury to find that Saccameno had proven the necessary elements of her claims.

While Ocwen's counsel's brief is very well written, it is completely detached from the record evidence in this case, like many of the motions and briefs filed by Ocwen in this case beginning with pre-trial motions and continuing through the post-trial filings in this case. Also, it must be noted that Ocwen asserts no challenge to the jury's verdict as to the FDCPA claim, effectively rendering moot its challenge to the compensatory damages awarded in this case.

## STANDARD OF REVIEW

A court should only grant a Rule 50 motion if the moving party shows that no reasonable jury would have returned a verdict against it. *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.,* 666 F.3d 422, 431-32 (7th Cir. 2012). As the Seventh Circuit noted, "[a]ttacking a jury verdict is a hard row to hoe." *Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1043 (7th Cir. 1999). The court should consider the totality of the evidence, and view the evidence in a light most favorable to the non-moving party, and in a light that supports the verdict. *Wallace v. McGlothan,* 606 F.3d 410, 418 (7th Cir. 2010). The court "shall not second-guess the jury's view of the contested evidence; the proper inquiry is whether, given the totality of the evidence, [plaintiff] presented sufficient evidence from which a reasonable jury could find in [her] favor." *David v. Caterpillar, Inc.,* 324 F.3d 851, 858 (7th Cir.2003). *Cygnar v. City of Chi.*, 865 F.2d 827, 834 (7th Cir. 1989). A moving party may be sanctioned for making a frivolous argument that no evidence existed to support a jury's verdict. *Littlefield v. Mack*, 750 F. Supp. 1395, 1404 (N.D. Ill. 1990) *aff'd sub nom. Littlefield v. McGuffey*, 954 F.2d 1337 (7th Cir. 1992) (sanctions against counsel for their frivolous argument that no evidence existed to support the verdict).

**ARGUMENT**

Ocwen's motion argues there was no legally sufficient evidentiary basis for a reasonable jury to find for Saccameno on her breach of contract, RESPA, or ICFA claims. To take this position, Ocwen ignores the explicit findings of the jury and the one-sided nature of the evidence at trial against Ocwen, and repeats the same arguments this Court has rejected multiple times.

**I. OCWEN DOES NOT CONTEST THE JURY VERDICT UNDER THE FDCPA RENDERING ITS CHALLENGES TO THE BREACH OF CONTRACT AND RESPA CLAIMS MOOT**

As the Court is well aware, the verdict form in this case requested that the jury return an award of actual damages upon a finding of liability for Saccameno under the breach of contract, RESPA, and FDCPA counts. The award of damages associated with these counts is a lump sum. Ocwen does not challenge the verdict as to the FDCPA count. As Saccameno argued in response to the motion for remittitur, her injuries arise from a single set of indivisible facts. In this situation, the unchallenged FDCPA verdict moots Ocwen's attack on the RESPA and breach of contract claims. "[W]here several causes of actions are charged and a general verdict results, the verdict will be sustained if there are one or more good causes of action or counts to support it[.]" *Hudson v. City of Chi.*, 881 N.E.2d 430, 451 (2007). Accord, *Kossman v. Ne. Ill. Reg'l Commuter R.R.*, 211 F.3d 1031, 1037 (7th Cir. 2000). "Because there was a lump sum verdict in this case, however, it is impossible to determine to what extent the award was based on any particular claim." *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1017 (N.D. Ill. 2010).

To the extent the Court disagrees and does not adjudicate as moot the challenges to the breach of contract and RESPA verdicts, Saccameno responds as follows.

## II. OCWEN ADMITS BREACHING THE CONTRACT WITH SACCAMENO (COUNT I).

Ocwen's position from the beginning of the litigation through the first day of trial was that all of Ocwen's actions were proper because Saccameno had only paid 40 of 42 post-petition payments during her Chapter 13 bankruptcy case. (R. 125). Ocwen was forced to concede that Saccameno had in fact made all 42 post-petition payments on the mortgage loan account. This was done by Saccameno's counsel walking Ocwen through Ocwen's own accounting records from its system of record. (R. 284-293; P19, P21).

There was no payment default by Saccameno post-discharge. (R. 302-303). Ocwen agrees Saccameno should have been totally current in September of 2013 if the bankruptcy had been processed correctly. (R. 312). However, Saccameno's timely September 2013 payment (post-petition) was rejected because Ocwen's business records were wrong. (R. 306-307). Because of Ocwen's mistakes handling the bankruptcy discharge, from October 2013 through February 2015, Ocwen rejected 17 straight payments from Saccameno. (R. 311). The Seventh Circuit has held improper rejection of tendered mortgage payments is a breach of contract. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 690 (7th Cir. Ill. Jan. 10, 2011).

Ocwen also conceded that there was no provision of the mortgage contract that allowed Ocwen not to apply payments made according to the mortgage contract or to foreclose on a consumer that was not in default. (R. 548-549).

## III. SACCAMENO PRESENTED AMPLE EVIDENCE OF MANY UNFAIR AND DECEPTIVE ACTS OVER SEVERAL YEARS TO SUPPORT THE JURY'S VERDICT

Ocwen lacks a good faith basis to assert in brief there is no evidence of unfair and deceptive acts in this case. Ocwen admitted an ICFA violation in its pretrial stipulations of fact. Ocwen miscoded Saccameno's bankruptcy discharge order and as a result, pursued collections against Saccameno. (DE #174 ¶¶22, 24, 26, 27). Actions are unfair that are "inconsistent with, fail to

4

recognize, or contravene, a final court order." *Hammer* at *68. Actions that attempt to convince a consumer their bankruptcy had no effect on their obligation to pay a discharged debt sufficiently states a claim for unfairness under ICFA. *Czerniak v. Servis One, Inc.*, No. 15-CV-06473, 2017 U.S. Dist. LEXIS 49936, at *15 (N.D. Ill. Mar. 31, 2017).

Saccameno provided voluminous additional amounts of evidence showing Ocwen engaged in both deceptive and unfair practices. Ocwen admits to miscoding Saccameno's bankruptcy as dismissed. (DE #174 ¶¶22, 24, 26, 27). The jury could infer, based on the evidence, Ocwen took this step intentionally to pursue unlawful debt collections. Ocwen admits miscoding Saccameno's bankruptcy was a serious mistake. (R. 141-142). This mistake restarted active collections and a foreclosure that should have been dismissed. (R. 142-145).

By July 23, 2013, Ocwen admits a copy of the bankruptcy discharge order was in its system of record and every employee of Ocwen's mortgage servicing business would be able to see the bankruptcy discharge order. (R. 166, 169-170). Despite this, Ocwen still persisted in collections against Saccameno until this lawsuit was filed in February of 2015. Ocwen ultimately conceded that everything that occurred between July 23, 2013 and February 2, 2015 would not have occurred if Ocwen had raised the bankruptcy discharge flag appropriately on July 23, 2013. (R. 319-320). Raising the bankruptcy flag is simple and takes seconds. (R. 172). There is also evidence Ocwen willfully ignored the bankruptcy court's discharge order on August 8, 2013 when its bankruptcy department refused to raise the bankruptcy discharge flag which would have stopped all collection activity including the foreclosure. (R. 181).

Ocwen conceded that all the communications with Saccameno between the discharge date and August were incorrect because of the miscoding of the loan. Also, all the communications between September of 2013 and February of 2015 were incorrect for the same reason. (R. 538-

539). Ocwen conceded the 17 mortgage statements sent to Saccameno between September of 2013 and February 2015 would have contained inaccurate information because of Ocwen's miscoding of the loan. (R. 347-350).

Ocwen also testified that after the bankruptcy discharge was entered the foreclosure complaint should have been dismissed. (R. 561). Further, the foreclosure complaint that remained pending in Cook County until March of 2016 sought a personal deficiency judgment "only against parties who have not received a Chapter 7 discharge" and an order of eviction. (R. 562). Ocwen conceded that the foreclosure module would not have remained open and the foreclosure case would not have continued if the bankruptcy discharge had been processed correctly. (R. 574-575).

Despite Ocwen's testimony that the miscoding of Saccameno's bankruptcy was a human error, the employee's judgment error created a big issue. Ocwen admits it did nothing to investigate the scope and severity of the problem or to make sure no other borrowers were affected despite having knowledge since 2011 that Ocwen had deficiencies in its [servicing] platform that require Ocwen to use manual processes. (R. 551-552).

Ocwen also provided evidence that it tampered with evidence during the litigation to cover its own errors. The jury was also shown P24. This is a payment reconciliation history of Saccameno's account through September 27, 2016. This history covered the entirety of Ocwen's servicing of the Saccameno loan through the date of the document. (R. 351). This document has a column on the far left which is titled "last change date." This document revealed that Ocwen was making changes to the payment history of Saccameno's mortgage loan account approximately 18 months into the litigation. (R. 352). For instance, Ocwen changed the beginning balance of the late charges and fees on the loan account on September 27, 2016, more than five years after the July 2011 date Ocwen initially "onboarded" the account into its system of record. (R. 353). This led to

a lengthy discussion of Ocwen's multiple changes to Saccameno's account records years after the fact. Ocwen conceded that there was no information in the document that would tell the reader what was changed or why it was changed. This includes multiple changes to the account records *during* the litigation. (R. 358).

Ocwen also had corporate knowledge of regulatory concerns expressed about problems with its mortgage servicing system of record called REALServicing dating back to at least 2011. These included regulatory findings of deficiencies in REALServicing including failure to keep accurate books and records, failure to verify information on new accounts, servicing functions dependent upon inadequate systems and insufficient controls in place, either manual or automated, to catch all the errors and resolve them. Finally, the regulator found that prior to its review, Ocwen did not take adequate steps to implement reforms that it was legally obligated to implement prior to the 2011 agreement. (R. 361-374).

Ocwen was also caught in numerous instances of deceptive testimony before the jury. Probably the most notable example was the position Ocwen maintained that Saccameno had made only 40 of 42 post-petition payments during her Chapter 13 bankruptcy plan. On the second day of trial Ocwen was forced to concede its position was false and Saccameno had made all 42 post-petition payments on the mortgage loan account required by the bankruptcy plan. (R. 284-293). Ocwen's actual accounting records are in Plaintiff's Exhibits 19 and 21. Ocwen conceded at trial these records were in its possession and readily available at all times relevant to this case. (R. 294).

Ocwen also was forced to concede that Saccameno made all post-discharge payments that were due between July and September of 2013. (R. 302-303). Ocwen had all the information needed to determine Saccameno had paid all amounts due and owing in its records when it was researching Saccameno's account in August 2013. (R. 304). Ocwen was also forced to admit an

7

accurate review of its records in August of 2013 would have stopped everything that happened to Saccameno over the ensuing four years and nine months. (R. 305). Ocwen agrees Saccameno should have been totally current in September of 2013 if the bankruptcy had been processed correctly. (R. 312). Saccameno also made her September 2013 payment timely. However, Ocwen began rejecting Saccameno's tendered mortgage payments because its own records were still wrong and showed Saccameno's account four to five months delinquent. (R. 306-307). From September of 2013 to February 2015 Ocwen rejected 17 straight payments from Saccameno. (R. 311). Ocwen also did not dismiss the foreclosure action until March 2016, more than a year after the lawsuit in this case was filed. (R. 311).

    **IV.    SACCAMENO PRESENTED VOLUMINOUS EVIDENCE SUPPORTING AN AWARD OF PUNITIVE DAMAGES AT TRIAL.**

At the time of trial, Ocwen had run Saccameno through a mental, emotional, and financial meat grinder for more than four years and nine months. The crushing hell Saccameno lived through was born out of Ocwen's arrogance and reckless disregard for the consumers who are unfortunate enough to have Ocwen as their mortgage servicer. Saccameno did not choose Ocwen and cannot escape them no matter how badly Ocwen has mistreated her over all these years.

Ocwen's utter contempt for its customers like Monette Saccameno is apparent from its complete failure to remedy longstanding defects in its mortgage servicing system of record, RealServicing. Many of these defects are tied directly to the events that transpired in this case. Record evidence demonstrated Ocwen's knowledge of serious deficiencies in REALServicing dating back at least. (R.365). Ocwen had agreed to a number of going forward obligations resulting from regulatory actions. (P42, P44). For instance, Ocwen was obligated to ensure that mortgage files are accurate, complete and reliable and to maintain a system of robust internal controls and oversight with respect to mortgage servicing practices performed by its staff and third-party

vendors to prevent improper foreclosures and maximize struggling borrowers' opportunities to keep their homes. (R. 367). A 2012 targeted exam found Ocwen did not take adequate steps to implement reforms that it was legally obligated to implement prior to the 2011 agreement. (R. 373).

Ocwen acknowledged that it would be hard for anyone working in bankruptcy with even rudimentary knowledge of bankruptcy to confuse a notice of final cure payment with any order whatsoever, much less an order of dismissal (R. 139). Ocwen agrees there is no way to confuse one for the other (R. 139-140). Ocwen admits this was a serious mistake (R. 141-142). Despite acknowledging this was a serious mistake, Ocwen undertook no investigation to determine if any other consumer's loan was miscoded as dismissed instead of discharged (R. 131). Ocwen also did not speak with the employee who Ocwen blamed for the miscoding at any time between June of 2013 and the trial in this matter (R. 132). Ocwen did not even send an email to the employee and ask for an explanation of what caused the "mistake" (R. 132).

By the time of trial, Ocwen had undertaken no investigation to determine if the employee blamed for the miscoding had coded every file she touched improperly or any other file improperly. Ocwen did not know how long the employee had worked for Ocwen when the mistake was made. Ocwen could not say if the employee had worked for Ocwen for ten minutes or ten years when the mistake was made. Ocwen never reviewed the employee's employment file to determine her length of employment. Ocwen did not know if the employee was still with Ocwen at the time of Ocwen's deposition, but believed she was no longer with the company by the trial. Ocwen undertook no investigation to determine whether the mistake was isolated or widespread. Ocwen, in the nearly five years since the mistake occurred, never made any inquiry to see if the mistake in coding happened only to Saccameno or if the same mistake happened a million times. (R. 135-137).

V. **SACCAMENO PRESENTED SUBSTANTIAL EVIDENCE TO SUPPORT A VERDICT ON THE RESPA CLAIM.**

Ocwen next argues that Saccameno did not present sufficient evidence to support the jury's verdict in her favor on the RESPA count. Again, Ocwen ignores the record evidence in this case addressing these very issues. In support of this position, Ocwen cites several cases for inapposite propositions. Judge Bucklo dismissed the RESPA claim in *Lesniak v. Bank of Am., N.A.*, because the plaintiff failed to plead actual damages. See, 169 F. Supp. 3d 766, 773-74 (N.D. Ill. 2015). *Golbeck v. Johnson Blumberg & Assocs., LLC* holds that there is "some support" for the idea that a plaintiff must also suffer a financial loss from the RESPA violation to pursue emotional distress damages. See, 2017 U.S. Dist. LEXIS 112493, at *32 (N.D. Ill. July 19, 2017). However, *Golbeck* cites to *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) which addresses a purported bankruptcy class action for violating the automatic stay. *Golbeck* also cites to *Konieczka v. Wachovia Mortg. Corp.*, 2012 U.S. Dist. LEXIS 42675, 2012 WL 1049910, at *4 (N.D. Ill. Mar. 28, 2012) but, this case, like *Lesniak,* dismisses the RESPA claim for failure to plead actual damages. Likewise, *Lane v. Vitek Real Estate Indus. Grp.,* 713 F. Supp. 2d 1092, 1101 (E.D. Cal. 2010) stands for the well-accepted proposition that a plaintiff must plead a RESPA violation caused actual damages to be viable.

Ocwen fails to discuss the law of the case as set out in the jury instructions which went to the jury without objection. Saccameno has also repeatedly cited to the holding from *Hammer* on this point as well. "Courts have held that the term "actual damages" includes not only pecuniary losses but damages for emotional distress, humiliation or mental anguish as well. See *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1505 (N.D. Ill. 1993). This general holding has been applied specifically to actual damages arising under RESPA. *See, e.g., Catalan*, 629 F.3d at 696("emotional distress damages are available as actual damages under

RESPA"); *see also Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 869-70 (N.D. Ill. 2002) (because "RESPA is a consumer protection statute," the statute's "actual damages provision includes recovery for emotional distress"); *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 815 (N.D. Ill. 2001)(emotional damages should be included in actual damages under RESPA because "such damages will compensate individuals for privacy violations by allowing damages for what, in some instances, may be the only harm resulting from the disclosure of confidential information—namely, emotional distress"). *Hammer* at *86.

Ocwen admitted all information needed to determine Saccameno had paid all amounts due and owing was in Ocwen's records as of August 2013 when Ocwen was researching the account. (R. 304). Ocwen also conceded that an accurate review of its records in August of 2013 would have stopped everything that happened to Saccameno over the ensuing four years and nine months. (R. 305). Saccameno also made her September 2013 payment timely. However, that payment was returned because Ocwen's records had not been corrected and still showed the account four to five months delinquent. (R. 306-307). After September of 2013, Ocwen rejected 17 straight payments from Saccameno. (R. 311). Ocwen also did not dismiss the foreclosure action until March 2016, more than a year after the lawsuit in this case was filed. (R. 311). Ocwen agrees Saccameno should have been totally current in September of 2013 if the bankruptcy had been processed correctly. (R. 312). Thus, if Ocwen had properly researched Saccameno's account Ocwen would have realized she was not in default, corrected her account, dismissed the foreclosure and would not have begun rejecting payments in September of 2013.

### A. Ocwen did not comply with RESPA in handling the July 17, 2013 letter.

Ocwen claims that it appropriately reviewed Saccameno's July 17, 2013 QWR, adequately investigated the concerns and made appropriate corrections. This position is clearly contradicted

by the record. By July 23, 2013, Ocwen admits that there is no doubt Ocwen had a copy of the bankruptcy discharge order. (R. 166, 169). Ocwen admitted that after July 23, 2013, any employee of Ocwen would have been able to see that the bankruptcy had been discharged instead of dismissed. (R. 169-170). On July 25, 2013, Ocwen claimed it raised the bankruptcy discharge flag on Saccameno's account to indicate to any employee reviewing the file that the Chapter 13 bankruptcy had discharged. Ocwen also claimed this had the effect of unwinding the miscoding of the bankruptcy as dismissed. (R. 171). Ocwen was later forced to admit it did not raise the bankruptcy flag on this date because, as Ocwen ultimately conceded, if the bankruptcy flag is up the foreclosure module is placed on hold and cannot proceed. (R. 315-318). Ocwen ultimately conceded that everything that occurred between July 23, 2013 and February 2, 2015 would not have occurred if Ocwen had raised the bankruptcy flag appropriately on July 23, 2013. (R. 319-320).

Still on July 25, 2013, Ocwen took numerous other steps intended to correct the errors from the miscoding of Saccameno's loan. (R. 173-176). However, at the end of this process, Ocwen still claimed that Saccameno was sixty days past due and due for the May 1, 2013 payment. (R.177). Ocwen admits that its bankruptcy department was aware of Saccameno's bankruptcy discharge by this time. Ocwen believed Saccameno missed two payments during the Chapter 13 bankruptcy prior to discharge. Ocwen knew it could not collect those two payments because it did not respond to the Notice of Final Cure Payment from the Bankruptcy Court. (R. 177). Even with explicit knowledge of the bankruptcy discharge, Ocwen refused to raise the bankruptcy discharge on August 8, 2013 because it claimed Saccameno had only made 40 post petition payments. (R. 181). Also, the August 2013 statement to Saccameno showed a past due balance exceeding $5,000 and attempted to collect the two payments that Ocwen believed were missing from the post-petition

payments. In fact, in August, Ocwen applied a current mortgage payment from Saccameno to one of the two payments Ocwen previously admitted was discharged in bankruptcy. (R. 186-187). Ocwen agreed it could not collect those payments. (R. 276).

This evidence shows Ocwen did not comply with 12 U.S.C. §2605(e)(2)(A) which requires Ocwen to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit the borrower a written notification of such correction…. Here, Ocwen completely bungled the correction(s) to Saccameno's account including (1) miscounting the number of post-petition payments made, (2) failing to raise the bankruptcy flag, (3) misapplying a current payment to a payment Ocwen believed was past due. There is sufficient evidence of each of these failures, including Ocwen's concession of each of them, to support the RESPA verdict.

Saccameno clearly provided evidence of both pecuniary and non-pecuniary damages arising from Ocwen's failure to comply with RESPA. This includes prescription costs arising from Saccameno's treatment for depression and anxiety (R. 206, 209-210), loss of time spent attempting to resolve these issues (R. 730-731, 772, 814, 819), loss of a job because of the distraction created by this problem. (R. 788-789, 889-890). In addition, Saccameno was diagnosed with depression and anxiety contemporaneously with Ocwen's renewal of the foreclosure process and its rejection of her mortgage payments. (R. 200-212). Witnesses described Saccameno as devastated (R. 730), very upset, tearful, anxious, fearful (R.514-515), depressed, isolated (R. 741-742), agitated and distracted (R. 891-893). This is ample evidence to support both economic and non-economic loss under RESPA.

After ignoring all of the record evidence that contradicts its position on this point, Ocwen takes the position that *Aiello* requires financial loss before emotional distress damages can be

13

awarded. This is simply not the *Aiello* holding. In fact, *Aiello* is not even a RESPA case. According to Judge Posner the issue in *Aiello* was whether the term actual damages under §362(h) of the Bankruptcy Code is intended to include damages for purely emotional injury. RESPA is not even mentioned in *Aiello.* To make this argument Ocwen completely ignores the law of the case. This Court previously ruled at page 984 of the record and, as encompassed in the jury charges, that Saccameno had to show actual damages which could include nonpecuniary damages. The Court specifically cited to *Stevens v. Capital One*, 2016 Westlaw 4697986, Northern District of Illinois, 2016, a Judge Dow opinion, for this proposition. Ocwen does not mention the Court's ruling in its brief on this point.

### B. Ocwen Did Not Comply with its RESPA Obligations in the Handling of Correspondence After January 2014.

Ocwen also contends it properly handled the letter it received on March 21, 2014 that was sent by Susan Van Sky (P33). Van Sky testified she sent the letter along with all attachments to Ocwen at that time. (R. 505). Ocwen claims that D13 and 14 were responses to the Van Sky QWR at P33. Ocwen argues that, as a matter of law, its answer was sufficient. However, the Court submitted these issues to the jury and the jury found that Ocwen violated RESPA. D 14 is the letter from Ocwen dated April 9, 2014 that identified the borrower as Michelle Ruby rather than Monette Saccameno. Susan Van Sky also testified that she never received anything from Ocwen that explained why Ocwen disagreed with her position. (R. 510-511). Van Sky also testified she could not extrapolate from Ocwen's written responses what Ocwen believed happened. (R. 511). D12 was also mailed to the wrong address (*Id.)*. Van Sky further testified that D14 was not helpful to resolve the specific request that Van Sky had made to Ocwen and that the letter appeared to be a cut and paste that misidentified the borrower as Michelle Ruby instead of Monette Saccameno (R. 512-513). D 14 also failed to explain Ocwen's position with respect to the documents Van Sky

had sent to Ocwen in her QWR. (P33) (R. 513). Futhermore, Van Sky sent a correspondence to Ocwen on April 28, 2014 which Saccameno contended was a QWR (P34). Ocwen never responded to that correspondence does not argue here that P34 is not a QWR or that Ocwen adequately responded to P34 as required by RESPA. Therefore, even if Ocwen were correct as to P33, the jury could have found for Saccameno on P34 and Ocwen has raised no challenge to P34 either as to its status as a QWR or alleging any response to that QWR. Therefore, this issue is either waived or moot according to the authority in *Hudson v. City of Chi., supra.*

## CONCLUSION

Ocwen's Motion for Judgment as a Matter of Law is premised upon ignoring the record evidence, ignoring the uncontested FDCPA verdict, and rehashing arguments rejected numerous times by this Court before and during this trial and by the jury at trial. The sheer number of trees sacrificed to repeat these borderline frivolous arguments is an embarrassment. As this Court has done repeatedly, it should reject these same old ill-founded, baseless arguments. This is especially true in light of the overwhelming and one-sided nature of the evidence in this case during trial.

Dated: September 29, 2018.   Respectfully Submitted,

*/s/ Nick Wooten*
Nick Wooten, Esq.
Nick Wooten, LLC
4935 Bay Hill Drive
Conway, AR 72034
Phone (334) 887-3000
Email:  nick@nickwooten.com

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 29, 2018, a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO OCWEN'S MOTION FOR JUDGEMENT AS A MATTER OF LAW (DE 314)** was served upon counsel of record via electronic filing:

*/s/ Nick Wooten*
Nick Wooten